IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **The Little Hocking Water Assn, Inc.,**  Plaintiff,  v.  **E. I. du Pont de Nemours and Company,**  Defendant. | Case No. 2:09-cv-1081  **Judge Smith**  **Magistrate Judge King** |

**E. I. DU PONT DE NEMOURS AND COMPANY'S MOTION
FOR COURT TO DECLINE EXERCISE OF
SUPPLEMENTAL JURISDICTIONOVER STATE LAW CLAIMS
OR, IN THE ALTERNATIVE, PARTIAL MOTION TO DISMISS PLAINTIFF'S
CLAIMS FOR CONVERSION AND COMMON-LAW INDEMNIFICATION,
AND MOTION TO STAY DISCOVERY ON STATE LAW
<u>CLAIMS PENDING DECISION ON SUPPLEMENTAL JURISDICTION</u>**

Defendant E. I. du Pont de Nemours and Company ("DuPont") respectfully moves this Court to decline to exercise supplemental jurisdiction over the state law causes of action found in Count II through Count VIII of Plaintiff Little Hocking Water Association, Inc.'s ("LHWA") Complaint. In the alternative, DuPont requests this Court to dismiss Count VI (Conversion) and Count VIII (Common-Law Indemnification) as a matter of law, pursuant to Federal Rule of Civil Procedure 12(c). Furthermore, DuPont moves this Court to stay discovery on LHWA's state law claims (Count II through Count VIII) pending its decision on supplemental jurisdiction. A Memorandum In Support of this motion is attached, and an Exhibit to the Memorandum is being filed separately.

Respectfully submitted,

**E. I. DU PONT DE NEMOURS AND COMPANY**

/s/ Eric E. Kinder
Eric E. Kinder (0063984)
Niall A. Paul (Admitted Pro Hac Vice)
Spilman Thomas & Battle, PLLC
300 Kanawha Boulevard, East (Zip 25301)
P.O. Box 273
Charleston, WV 25321-0273
Tel: 304.340.3800
Fax: 304.340.3801
npaul@spilmanlaw.com

/s/ C. Craig Woods
C. Craig Woods (0010732)
Squire, Sanders & Dempsey L.L.P.
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
Tel: 614.365.2700
Fax: 614.365.2499
cwoods@ssd.com

Michael W. Steinberg (Admitted Pro Hac Vice)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave.
Washington, D.C. 20004
Tel: 202.739.5141
Fax: 202.739.3001
msteinberg@morganlewis.com

## **MEMORANDUM IN SUPPORT**

### I.    INTRODUCTION

Plaintiff LHWA invokes supplemental jurisdiction over its state law claims in this case. *See* Complaint ¶ 17 (invoking 28 U.S.C. § 1367).  This Court should decline to exercise jurisdiction over those claims because nearly identical claims are pending in Ohio state court, and it would constitute a waste of judicial resources to concurrently litigate these claims in this forum.

Plaintiff previously filed suit in state court raising substantially similar state law claims, not once, but twice, and these claims are still pending in Ohio state court.  Plaintiff has now chosen the federal forum to, once again, assert virtually the same claims, against the same Defendant, based upon the same alleged facts, and largely seeks the same relief sought in state court.  Consideration and adjudication of these same state law claims in this forum would waste judicial resources and constitutes the type of exceptional circumstance that should lead this Court to decline supplemental jurisdiction.

In the alternative, Defendant E. I. du Pont de Nemours and Company ("DuPont"), pursuant to Federal Rule of Civil Procedure 12(c), moves the Court to dismiss Counts VI (Conversion) and VIII (Common-Law Indemnification) of Plaintiff's Complaint.  LHWA's claim for the conversion of real property is not recognized under Ohio law, and its claim for alleged conversion of groundwater is barred because there is no interference with LHWA's use of the groundwater underlying its Wellfields.  Plaintiff has failed to plead sufficient facts to support a claim for common-law indemnification – specifically, that there has been a finding that DuPont is primarily liable for the alleged contamination, or that Plaintiff has been compelled to discharge a claim, judgment, or liability for which DuPont is at fault.  Accordingly, if the Court

elects to exercise supplemental jurisdiction over these claims, Counts VI and VIII of LHWA's Complaint should be dismissed on the merits.

DuPont also requests a stay of discovery regarding these claims pending resolution of whether this Court will exercise supplemental jurisdiction over Plaintiff's state law claims.

## II.     BACKGROUND

Plaintiff filed suit against DuPont in Ohio state court in *The Little Hocking Water Association v. E. I. du Pont de Nemours and Company*, Civ. No. 060T97 (Ct. Common Pl. Washington Co. Ohio) ("*Little Hocking I*") in May of 2006.[1]  LHWA filed a second lawsuit against DuPont on or about September 4, 2007 in state court captioned *The Little Hocking Water Association v. E. I. du Pont de Nemours and Company*, Civ. No. 070T312 (Ct. Common Pl. Washington Co. Ohio) ("*Little Hocking II*").[2]

As further described herein, the seven state law claims asserted by Plaintiff in this action are essentially identical to the seven claims asserted in *Little Hocking II*, the pending state court litigation.  The analysis this Court would undertake would be identical to that applied in the pending Ohio state court action.  In short, the two actions assert what are effectively the same claims, by the same Plaintiff, against the same Defendant, governed by the same law.  This Court should decline to exercise supplemental jurisdiction.

However, if the Court elects to exercise supplemental jurisdiction, it should dismiss two of Plaintiff's state-law claims.  The instant action, which tracks the state court action, arises from DuPont's purported emissions of perfluorooctonoic acid ("PFOA") from its manufacturing operations at the Washington Works plant ("Washington Works") in Wood County, West Virginia.  *See* Complaint at ¶¶ 2, 6, 35, 41.  The gravamen of Plaintiff's Complaints is that,

---

[1] At Plaintiff's request, *Little Hocking I* was dismissed without prejudice on October 31, 2006.

4

through DuPont's use of PFOA at Washington Works, DuPont has contaminated Plaintiff's Wellfields and Distribution System, located in Ohio on the opposite side of the Ohio River from Washington Works. *Id*. at ¶ 26. Plaintiff has asserted, among other theories of recovery, claims for conversion of real property and groundwater (Count VI) and common-law indemnification (Count VIII).

Plaintiff alleges that it "owns property, including the Wellfields, located in Washington County, Ohio and the Distribution System, located in Ohio's Washington and Athens counties." *Id*. at 21. The Wellfields consist of "approximately 45 acres of land and the soil and the groundwater beneath the land," *id*. at 23, while the Distribution System is comprised of the "pipes, pumps, and storage tanks" that transport finished water to Plaintiff's customers. *Id.* at ¶ 3. The Complaint alleges that as a result of DuPont's use of PFOA at Washington Works, "soil in the Wellfields . . . contains substantial amounts of . . . PFOA," *Id*. at ¶¶ 118, 138, and the groundwater has been similarly contaminated. *Id.* at ¶ 1.

Because of the alleged contamination of real property, Plaintiff further alleges that its customers, frequenters of surrounding properties, and the general public are or will be directly exposed to "PFOA and other PFC's" released from Washington Works. *Id*. at ¶¶ 110, 180, 244. To that end, Plaintiff alleges that "[t]he presence of the [c]ontamination has exposed Plaintiff to litigation risks related to the contamination of its property," and Plaintiff "has and/or will . . . incur costs related to the risk of third-party lawsuits and administrative actions." *Id*. at ¶¶ 166, 174(f). As a result of the alleged contamination, Plaintiff asserts that it "has had to spend and will have to spend significant financial resources to take mitigative and remedial actions . . ." *Id.* at ¶¶ 244, 246.

---

[2] The Complaint in *Little Hocking II* is attached hereto as Exhibit 1. Plaintiff has indicated that it intends to seek a stay in *Little Hocking II*.

5

DuPont has paid for the construction of a state-of-the-art granular activated carbon ("GAC") filtration system for Plaintiff.[3] *Id*. at ¶ 130. DuPont also pays for operation and maintenance of the system. The GAC filtration system removes PFOA from the finished water ultimately provided to Plaintiff's customers. *Id*. at ¶¶ 130, 163(a).

### III. ARGUMENT

**A. The Court Should Decline To Exercise Supplemental Jurisdiction Under 28 U.S.C. § 1367(c).**

**1. The Statute Confers Discretion On The Court To Decline To Exercise Supplemental Jurisdiction.**

A Court may exercise supplemental jurisdiction under 28 U.S.C. §1367 "over all other claims" that are so related to the federal claims in the action that they should logically be considered together. *See* § 1367(a). However, it is within the court's discretion to decline to exercise such supplemental jurisdiction in any particular case. *See* § 1367(c). This statutory grant of discretion carries forward principles that pre-date the enactment of 28 U.S.C. § 1367. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966) ("It has consistently been recognized that [supplemental] jurisdiction is a doctrine of discretion, not of plaintiff's right").

Under the express language of § 1367(c), the court may decline to exercise supplemental jurisdiction over a state law claim under certain conditions. Specifically, the court may decline to exercise supplemental jurisdiction if "(1) the claim raises a novel or complex issue of State law; (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has

---

[3] The GAC Plant – a four million dollar state-of-the-art facility – was designed and constructed at DuPont's sole cost and expense in 2007 pursuant to a settlement agreement. The GAC Plant has been operational since November 2007 and effectively removes PFOA from the groundwater underlying the Wellfields before the groundwater is distributed to LHWA's customers as finished water. Because of where LHWA's Wellfields are situated in relation to the Ohio River, DuPont was required to purchase land adjoining the Wellfields before it could construct the GAC Plant, also at DuPont's sole cost and expense.

original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c).

Plaintiff's state law claims warrant scrutiny under § 1367(c)(4) in particular, and directly implicate interests of judicial economy, inconsistent rulings and fairness to the parties.[4] *See Baskin v. Bath Township Board of Zoning Appeals*, 1996 U.S. App. LEXIS 30686, *19 (6th Cir. 1993); *see also Gibbs*, 383 U.S. at 726 (justification for pendent jurisdiction "lies in considerations of judicial economy, convenience and fairness to litigants."). Considerations of judicial economy favor declining supplemental jurisdiction in this case, given that the state claims before this Court have been pending in a state court in Ohio for over two years and it is more appropriate that those continue to be litigated there. *See* Exhibit 1.

### 2. The Court Should Decline Supplemental Jurisdiction Because Of The Parallel Claims Pending In State Court.

The pendency of parallel claims in a state court proceeding initiated by Plaintiff presents "exceptional circumstances" and "compelling reasons" under §1367(c)(4) for this Court to decline supplemental jurisdiction. Numerous federal courts have declined to exercise supplemental jurisdiction over state claims pursuant to Section 1367(c)(4) where, as here, identical or similar claims are pending in state court. *Che*, 342 F.3d at 37; *See Hays County Guardian v. Supple*, 969 F.2d 111, 125 (5th Cir. 1992); *Fox v. Poole*, 2007 U.S. Dist. LEXIS 64779, *36 (W.D.N.Y. 2007); *West Coast, Inc. v. Snohomish County*, 33 F. Supp. 2d 924, 925-26 (W.D. Wash. 1999); *Blue Dane Simmental Corp. v. American Simmental Ass'n.*, 952 F. Supp.

---

[4] From a purely numerical standpoint, the state law claims asserted in this case also "predominate," within the meaning of § 1367(c)(2), over the lone federal law claim raised by Plaintiff. Analysis under that subsection generally involves, in addition to quantitative considerations, qualitative considerations as well. *See* 13D CHARLES ALAN WRIGHT, ARTHUR R. MILLER, EDWARD H. COOPER & RICHARD D. FREER, FEDERAL PRACTICE AND PROCEDURE § 3567.3 ("In making the predomination inquiry, the court should look to qualitative, rather merely quantitative, factors."). Considering all the circumstances, at least one court has concluded that the pendency of a prior state court proceeding justified declining to exercise supplemental jurisdiction under both § 1367(c)(2) and § 1367(c)(4). *See Che v. Mass. Bay Trans. Auth.*, 342 F.3d 31, 37 (1st Cir. 2003).

7

1399, 1414 (D. Neb. 1997); *Polaris Pool Sys. v. Letro Prods., Inc.*, 161 F.R.D. 422, 425 (C.D. Cal. 1995).

The logic behind such decisions is clear and is present in the underlying action. For example, in *Hays County Guardian*, the Court of Appeals for the Fifth Circuit upheld the District Court's decision to dismiss the state law claims entirely under 28 U.S.C. § 1367(c)(4). *See* 969 F.2d at 125. Plaintiffs in *Hays* brought suit against defendants in their individual capacity in federal court, while the official-capacity claims were adjudicated in state court. *Id.* The Court of Appeals explained, "[w]e find such 'exceptional circumstances' and 'compelling reasons' here [under 28 U.S.C. § 1367(c)(4)]. Adjudicating state-law claims in federal court while identical claims are pending in state court would be a pointless waste of judicial resources." *Id.*

Similarly, in *Fox*, the plaintiff asked the District Court to exercise jurisdiction over his pending state court action; the District Court declined, finding "exceptional circumstances" and "compelling reasons" under § 1367(c)(4). 2007 U.S. Dist. LEXIS at *36. The *Fox* court reasoned "[p]laintiff, in effect, seeks removal of his pending New York State Court of Claims action." *Id.* The court further stated that "the Court declines to exercise supplemental jurisdiction over a pending state action." *Id.*[5]

There is no question that Plaintiff's state law claims in this Court are nearly identical to the state law claims currently pending in the *Little Hocking II*. *See* Exhibit 1. The claims in the two complaints are as follows:

---

[5] The *Fox* court went on to observe that "[t]his is an instance where federal court abstention is appropriate," 2007 U.S. Dist. LEXIS at *36, suggesting a non-statutory, analytically distinct basis for declining jurisdiction over state-law claims.

| Federal Complaint | State Complaint |
|---|---|
| Public and Private Nuisance (*See* Complaint, Count II) | Nuisance (*See* Exhibit 1, Count II) |
| Trespass (*See* Complaint, Count IV) | Trespass (*See* Exhibit 1, Count III) |
| Negligence (*See* Complaint, Count III) | Negligence (*See* Exhibit 1, Count I) |
| Abnormally dangerous or ultra hazardous activity (*See* Complaint, Count V) | Abnormally dangerous or ultra hazardous activity (*See* Exhibit 1, Count IV) |
| Conversion (*See* Complaint, Count VI) | Conversion (*See* Exhibit 1, Count V) |
| Unjust Enrichment (*See* Complaint, Count VII) | Restitution (*See* Exhibit 1, Count VI) |
| Common law indemnity (*See* Complaint, Count VIII) | Common law indemnity (*See* Exhibit 1, Count VII) |

The state law claims in both cases are almost identically pled, involving the same parties, operative facts and legal theories. Plaintiff has undeniably filed duplicative litigation in different venues asserting the same basic claims. Plaintiff chose the state forum and had already filed and then dismissed the litigation in state court prior to refiling in 2007. Under Ohio law, a party may dismiss without prejudice only once. Here, LHWA seeks to exempt itself from this rule by filing these claims for a third time in this Court.

The pendency of parallel state litigation obviously raises broader concerns of judicial economy, which are properly considered in analyzing § 1367(c)(4). A number of courts including appellate courts have found exceptional circumstances justifying a decision to decline to exercise supplemental jurisdiction under § 1367(c)(4) where the exercise of federal jurisdiction would frustrate judicial economy. *See Baskin* at *19 (6th Cir. 1993); *see also SST Global Technology, LLC v. Chapman*, 270 F. Supp. 2d 444, 463 (S.D.N.Y. 2003); *Hays County Guardian,* 969 F.2d at 125; *Philip Morris v. Heinrich*, 1998 U.S. Dist. LEXIS 3258, at *5-6 (S.D.N.Y. 1998) (declining to extend supplemental jurisdiction over third-party plaintiff's claim pursuant to § 1367(c)(4) where there was another action pending in New Jersey state court for

9

the same claims in the federal complaint). In *Fitzpatrick v. Dufford*, the district court declined to exercise supplemental jurisdiction over state claims because it found that it never had original jurisdiction over any of the claims in the action. 2006 U.S. Dist. LEXIS 19188 at *13 (N.D. W.Va. 2006). However, the court explained that even if it could exercise supplemental jurisdiction over the state law claims pending in state court, it would not do so pursuant to §1367(c)(4) because it "would not be judicially economical and could undermine both the state and federal proceedings." *Id.*

This Court should decline to exercise supplemental jurisdiction in this case. Many other cases have found "exceptional circumstances" and "compelling reasons" where an action is pending in state court, asserting claims substantially identical to those asserted in the federal action, based upon the principle that considerations of judicial economy have an important role in determining the existence of "exceptional circumstances" under § 1367(c)(4). The state court case in the Court of Common Pleas, Washington County, Ohio has been ongoing for more than two years; that court should continue to supervise the litigation of Plaintiff's claims in the interest of judicial economy. There is no logical or compelling reason to litigate the same issues in two fora. In fact, simultaneously litigating the same state law claims in both cases could result in a "race to judgment" with the potential to create substantial confusion that could undermine both the state and federal proceedings. Under these circumstances, DuPont respectfully requests that the Court decline to exercise supplemental jurisdiction over Plaintiff's state law claims under § 1367(c).

> **B.  If The Court Exercises Supplemental Jurisdiction, LHWA's Claims For Conversion In Count VI And Common-Law Indemnity In Count VIII Must Be Dismissed In Their Entirety.**
>
> **1. Standard Of Review**

If the Court entertains Plaintiff's state law claims, two of those claims should be dismissed. Although DuPont's motion to dismiss is framed on the pleadings under Rule 12(c), the applicable standard is that of Rule 12(b)(6). *Reed Elsevier, Inc. v. Thelaw.Net Corp.*, 269 F. Supp. 2d 942 (S.D. Ohio 2003). In considering a Rule 12 motion to dismiss, a district court "must construe the complaint in the light most favorable to the plaintiff" as the nonmoving party, and accept as true all of the plaintiff's factual allegations. *Gardner v. Randall Mortg. Services, Inc.,* 2009 WL 3756340, *3 (S.D. Ohio 2009) (quoting *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009)).

The court need "not accept as true legal conclusions or unwarranted factual inferences," *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2008), and "[c]onclusory allegations or legal conclusions masquerading as factual allegations will not suffice." *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).[6]

In reviewing the sufficiency of a complaint under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.] Factual allegations must be enough to raise a right to relief above the speculative level . . .." *Howard v. City of Girard, Ohio*, 2009 WL 2998216, *1  (6th Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Indeed, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.

---

[6] *See Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (holding that "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

For that reason, "a complaint will be dismissed. . . only if there is no law to support the claims made, or if the facts alleged are insufficient to state a claim, or if on the face of the complaint there is an insurmountable bar to relief." *Burda v. Wendy's Intern, Inc.*, 2009 WL 3064668, *3 (S.D. Ohio 2009); *In re Travel Agent Com'n Antitrust Litigation,* 583 F.3d 896, 903 (6th Cir. 2009)).

### 2. LHWA's Claim For Conversion In Count VI Must Be Dismissed In Its Entirety.

LHWA's claim for the conversion of real property is not an actionable tort under Ohio law. Additionally, LHWA's claim that DuPont converted the groundwater underlying LHWA's Wellfields fails as there is an insurmountable bar to LHWA's claim, the GAC filtration system, which remediates any alleged PFOA contamination. Accordingly, LHWA's claim for conversion must be dismissed in its entirety.

#### a. LHWA's claim for conversion of real property is not recognized under Ohio law.

LHWA's claim for the conversion of real property is not a viable cause of action under Ohio law and must be dismissed. Plaintiff alleged that "[b]y its unauthorized acts and omissions . . . DuPont has and continues to exercise dominion or control over LHWA's property, including the Wellfields and the Distribution System." *See* Complaint at ¶ 229.

Ohio state courts and this court have consistently rejected a cause of action for the conversion of real property. In Ohio, "existing law generally allows actions for conversion to be based only upon the taking of **identifiable, tangible personal property**." *Landskroner v. Landskroner*, 154 Ohio App. 3d 471, 484 (Ohio App. 8th Dist. 2003) (quoting *Wiltberger v. Davis*, 110 Ohio App. 3d 46, 55 (Ohio App. 10th Dist. 1996)) (emphasis added); *See Firstar Bank, N.A. v. Prestige Motors, Inc.*, 2005 WL 2049174 (Ohio App. 6 Dist. 2005) (recognizing that "[a]ctions for conversion are generally based only upon the taking of identifiable, tangible

personal property"); *Morgan v. Del Global Technologies Corp.*, 2007 WL 3227068 (S.D. Ohio 2007) (finding that "[e]xisting [Ohio] law generally allows actions for conversion to be based only upon the taking of identifiable, tangible personal property."); *Davis v. Flexman*, 109 F. Supp. 2d 776, 808 (S.D. Ohio 1999) (same).

Inasmuch as an action for conversion is predicated upon identifiable, tangible personal property, this court, as well as Ohio state courts, has expressly recognized that "**[r]eal property is not the proper subject of a conversion claim**" under Ohio law. *Baker v. Chevron USA, Inc.*, 2009 WL 3698419, *3 n. 4 (S.D. Ohio 2009) (emphasis added). The same principle was recognized in *Federal Land Bank Assoc. v. Walton*, 1995 WL 359856, *4 n. 1 (Ohio. App. 3rd Dist. 1995). In *Sandy v. Rataiczak*, the court held that "[a] conversion claim [for real property] is not justiciable because conversion only applies to personal property," not real property. 2008 WL 5059371,*2 (Ohio. App. 7th Dist. 2008). *See First Federal Bank v. Angelini*, 2007 WL 4090767, *3 (Ohio App. 3rd Dist. 2007) ("[i]f [t]he subject matter of [a] conversion claim is real property," the claim must fail because "real property is not a proper subject matter for a conversion claim").[7]

The law in Ohio is clear – the conversion of real property is not a justiciable cause of action. Accordingly, dismissal is warranted. *See Twombly*, 550 U.S. at 570; *Burda*, 2009 WL 3064668, at *3.

---

[7] That Ohio law does not recognize a claim for the conversion of real property is traceable to the seminal 19th century Ohio Supreme Court decision in *Atlantic and Great Western Railroad Company v. Robbins*, 35 Ohio St. 531 (1880). In *Robbins*, the Ohio Supreme Court ruled that "the [alleged] unlawful and wrongful conversion and use of land, against the will of the owner, and under such circumstances that he is not prevented or estopped from recovering possession, will not entitle such owner, while the title still remains in him, to maintain an action to recover a judgment for the value of the land." *Robbins*, 35 Ohio St. at 540. *See also Platt v. Pennsylvania Co.*, 43 Ohio St. 228, 241 (1885); *Lakeshore & Michigan Southern Railway Co. v. Brown*, 9 Ohio Dec. 37, *13 (6th Cir. 1896).

### b.     The GAC Facility Is An Insurmountable Bar To LHWA's Claim For Conversion Of Groundwater.

LHWA's claim that DuPont has converted the groundwater underlying the Wellfields fails as a matter of law and should be dismissed. In 2007, DuPont, with Plaintiff's permission and oversight, paid for the construction of a GAC filtration system to remove PFOA from the groundwater underlying LHWA's Wellfields. *See* Complaint at ¶ 130. The GAC filtration system removes PFOA from the groundwater that is processed by LHWA and provided to its customer base. *Id.* at ¶¶ 130, 163(a).

In *Baker v. Chevron USA, Inc.*, 2009 WL 3698419, *3 (S.D. Ohio 2009), this Court noted that "a party may . . . assert a claim for conversion of groundwater," but *only* "**to the extent that the defendant interferes with the property owner's use of his or her groundwater**." (emphasis added). As a "non-profit Ohio corporation whose business is supplying potable water to its customers," *id.* at ¶ 20, the manner by which LHWA uses the groundwater is clear: LHWA supplies finished, drinkable water to its customers. *Id.* at ¶¶ 20, 129.

To prevail on a claim for conversion of the groundwater underlying the Wellfields, however, LHWA would need to demonstrate an interference with its ability to provide the groundwater, as finished water, to its customer base. LHWA has not, and cannot, plead such an interference due to the operation of the GAC filtration system. Even accepting LHWA's allegation of contamination as true (which DuPont expressly denies), any contamination caused by DuPont is remedied by the GAC filtration system and thus does not interfere with LHWA's ability to use the groundwater for its chosen purpose: providing finished, potable water to its customers.

A complaint will be dismissed "pursuant to Rule 12(b)(6) . . . if on the face of the complaint there is an insurmountable bar to relief." *Burda*, 2009 WL 3064668, at *3; *In re*

*Travel Agent*, 583 F.3d at 903. Here, such a bar exists. The GAC system facilitates, rather than interferes with, LHWA's ability to use the groundwater underlying the Wellfields. LHWA concedes as much in its Complaint, a fact that bars recovery for the conversion of the groundwater underlying the Wellfields. Accordingly, LHWA's claim for the conversion of groundwater should be dismissed.

### 3. LHWA's Claim For Common-Law Indemnification In Count VIII Must Be Dismissed In Its Entirety.

LHWA has failed to plead facts sufficient to support a claim for common-law indemnification – specifically, that LHWA has been compelled to discharge a claim, judgment, or liability for which DuPont is primarily at fault. Accordingly, Count VIII of the Complaint should be dismissed.

Under Ohio law, "indemnity . . . aris[es] 'from contract, either express or implied, and is the right of a person who has been compelled to pay what another should have paid to require complete reimbursement.'" *Wagner-Meinert, Inc. v. EDA Controls Corp.*, 444 F. Supp. 2d 800, 803 (N.D. Ohio 2006) (quoting *Worth v. Aetna Cas. & Sur. Co.*, 513 N.E.2d 253 (Ohio 1987)). The imperative is that the person claiming indemnity must have incurred liability before any claim for indemnity against another party can be properly asserted.

In *Krasny-Kaplan Corp. v. Flo-Tork, Inc.*, the Ohio Supreme Court articulated the material elements of a claim for common-law indemnity:

> [t]he concept of indemnity embraces aspects of primary and secondary liability. Indemnification occurs when one who is primarily liable is required to reimburse another who has ***discharged a liability*** for which that other is only secondarily liable.

609 N.E.2d 152, 154 (Ohio 1993) (emphasis added). *See Reiner v. Kelley*, 457 N.E.2d 946, 951 (Ohio App. 10th Dist. 1983) ("[o]ne who through the tort of another has been required to act in

15

the protection of his interests by bringing or defending an action against a third person is entitled to recover . . ."); *see also Ohio Cas. Ins. Co. v. Ford Motor Co.*, 502 F.2d 138, 139-40 (6th Cir. 1974) ("[t]his rule applies not only when a formal judgment is rendered, . . . but also when the party vicariously or secondarily liable is compelled to settle a claim, after giving notice and an opportunity to defend to the party primarily liable.") (citing *Maryland Cas. Co. v. Frederick*, 53 N.E.2d 795 (Ohio 1944)).

This Court has also repeatedly recognized the narrow circumstances in which a claim for indemnification may be brought:

> 1. Where a person injured through the violation of a common duty owed by two persons, sues and recovers from one of the persons owing the common duty and such person against whom recovery is had did not participate in the act or omission causing the injury, such latter person is only secondarily liable and upon payment of the judgment and expenses is entitled to indemnity from the one primarily liable, *i.e.*, the one whose act or omission gave rise to the right of action.
>
> 2. Where judgment in a tort action is had against a party only secondarily or vicariously liable for the violation of a common duty owed by two persons, upon the payment of such judgment and necessary expenses by such party, there arises an implied contract of indemnity in favor of the party secondarily liable against the person (or persons) primarily liable.

*Baggott v. Piper Aircraft Corp.*, 101 F. Supp. 2d 556 (S.D.Ohio 1998) (quoting Syl. pts. 1 & 2, *Maryland Cas. Co. v. Frederick Co.*, 53 N.E. 2d 795 (Ohio 1944)) (emphasis added).

Moreover, in "any discussion of an implied right of indemnity is the concept that one of the codefendants must be at fault in causing a plaintiff's injuries. In fact, **absent [a finding of] fault, there is no basis for indemnification**, since one party must be chargeable for the wrongful act of another as a prerequisite for indemnity." *Rannals v. Diamond Jo Casino*, 250 F. Supp. 2d 829, 837-38 (N.D. Ohio 2003) (quoting *O'Neill v. Showa Denko K.K.*, 655 N.E.2d 767,

16

769 (Ohio Ct. App. 8th Dist. 1995)) (emphasis added) (internal quotations omitted). Here, "no liability of either [party – DuPont or LHWA] to a [third party] was found. Therefore, **the traditional understanding of indemnity cannot apply, because [DuPont] was never determined to be primarily liable**." *O'Neill*, 655 N.E.2d at 768 (emphasis added).

To survive a motion to dismiss, "the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Eidson*, 510 F.3d at 634. LHWA's Complaint fails to meet this standard. LHWA has failed to plead that it was forced to bring or defend an action against a third party, *Reiner*, 457 N.E.2d at 951, compelled to pay damages, discharge a liability, or to settle a claim for which DuPont is at fault, *Ohio Cas. Ins.*, 502 F.2d at 139-40, or that a finding of primary and secondary liability has ever been apportioned between LHWA and DuPont. *Krasny-Kaplan*, 609 N.E.2d at 154.

LHWA's conclusory statement that DuPont is liable, or otherwise "primarily responsible," for the alleged contamination (and thus to unspecified third parties), is a legal conclusion. Legal conclusions are afforded *no weight* in determining the sufficiency of LHWA's claim for common-law indemnity as pled. *See Jones*, 521 F.3d at 559 (the district court should "not accept as true legal conclusions or unwarranted factual inferences"). Instead, LHWA has only alleged that it has been "exposed . . . to litigation **risks** [and] . . . has and/or will . . . incur costs related to the **risk** of third-party lawsuits and administrative actions." *See* Complaint at ¶¶ 118, 138. Such claims, which allege not what *has* occurred, but what *might* occur in the future, fail, by their very nature, to "raise a right to relief above the speculative level . . . [to] a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. Accordingly, Count VIII should be dismissed.

### C. The Court Should Stay Discovery Regarding Plaintiff's State Law Claims Pending Its Decision Regarding Supplemental Jurisdiction.

"Trial Courts have broad discretion and inherent power to stay discovery until preliminary questions that may dispose of the case are determined." *Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999) (citing *Landis v. North Am. Co.*, 299 U.S. 248, 254-55 (1936)). There is no question of the Court's power to stay discovery, in whole or in part, in appropriate circumstances, whether the preliminary issue involves the entire case or only portions thereof. *See, e.g.,* 6 MOORE'S FEDERAL PRACTICE § 26.105[c][3] (". . . courts may exercise an important option by staying discovery pending the outcome of a motion or other determination.").

A stay of discovery as to designated claims is particularly appropriate where, as here, it would not preclude all discovery between the parties on the subject claims, but only preclude *duplicate* discovery on those claims. The parties will have the opportunity to take discovery relevant to Plaintiff's state claims in the pending state court case. Even if this Court ultimately decides to exercise supplemental jurisdiction over those state law claims, there is no reason discovery from the Ohio state case could not be used in this proceeding. As a result, there is no prejudice to Plaintiff if discovery on state law claims is stayed in this proceeding.

The Court has the authority, if not the duty, to tailor discovery in each case to the legitimate needs of that proceeding. Rather than allow duplicative and wasteful discovery, the Court should stay discovery in this case directed to Plaintiff's state law claims until it determines whether to exercise supplemental jurisdiction.

### IV. CONCLUSION

The Court should decline Plaintiff's invitation to exercise supplemental jurisdiction over state law claims already pending in state court. However, if the Court exercises such jurisdiction, LHWA has failed to state claims upon which relief can be granted with respect to its

claims for conversion and common-law indemnification.  Accordingly, Counts VI and VIII as pleaded should be dismissed with prejudice under Federal Rule of Civil Procedure 12(c).

Respectfully submitted,

**E. I. DU PONT DE NEMOURS AND COMPANY,**

/s/ Eric E. Kinder
Eric E. Kinder (0063984)
Niall A. Paul (Admitted Pro Hac Vice)
Spilman Thomas & Battle, PLLC
300 Kanawha Boulevard, East (Zip 25301)
P.O. Box 273
Charleston, WV 25321-0273
Tel: 304.340.3800
Fax: 304.340.3801
npaul@spilmanlaw.com

/s/ C. Craig Woods
C. Craig Woods (0010732)
Squire, Sanders & Dempsey L.L.P.
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
Tel: 614.365.2700
Fax: 614.365.2499
cwoods@ssd.com

Michael W. Steinberg (Admitted Pro Hac Vice)
Morgan, Lewis & Bockius LLP
1111 Pennsylvania Ave.
Washington, D.C. 20004
Tel: 202.739.5141
Fax: 202.739.3001
msteinberg@morganlewis.com

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Motion was electronically filed with this Court's CM/ECF system on this 29th day of January 2010 and was thus served automatically upon all counsel of record for this matter.


/s/ C. Craig Woods
C. Craig Woods (0010732)