IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**THE LITTLE HOCKING
WATER ASSOCIATION, INC.,**

      **Plaintiff,**

  v.                                          Case No. 2:09-CV-1081
                                                  JUDGE SMITH
                                                  MAGISTRATE JUDGE KING

**E.I. DUPONT DE NEMOURS
AND COMPANY,**

      **Defendant.**

## **OPINION AND ORDER**

This matter is before the Court for consideration of Defendant's *Motion to Stay Proceedings*, Doc. No. 25.  For the reasons that follow, that the motion is denied.

### **I.**

Plaintiff, The Little Hocking Water Association, Inc. ["Plaintiff"], brings this action against E.I. DuPont DeNemours and Company ["Defendant"], for alleged violation of the Resource Conservation and Recovery Act ["RCRA"], 42 U.S.C. § 6972(a)(1)(B), in connection with the treatment of hazardous wastes at Defendant's Washington Works Plant, located in Washington, West Virginia.  Plaintiff also asserts state law claims for nuisance, negligence, trespass, conversion and unjust enrichment.

Plaintiff is a non-profit Ohio corporation that supplies water to eight townships in Washington County, Ohio and to two townships in Athens County, Ohio.  *First Amended*

*Complaint*, Doc. No. 23, at ¶ 21.  Plaintiff owns wellfields consisting of approximately forty-five (45) acres of land as well as the soil and groundwater beneath the land.  *Id.* at ¶ 26.  The wellfields are located in the State of Ohio, directly across the Ohio River from Defendant's Washington Works Plant.  *Id.* at ¶ 29.  The wellfields include four production wells which Plaintiff claims "have been and continue to be contaminated by DuPont's release of [h]azardous [w]astes."  *Id.* at ¶ 32.  Plaintiff also claims that the hazardous wastes have contaminated Plaintiff's water distribution system, which consists of pipes, pumps and storage tanks.  *Id.* at ¶ 3.

The alleged hazardous wastes consist of "perfluorinated compounds (including perfluorinated acids, sulfonates, phosponates, and telomer alcohols), precursors to perflourinated compounds and/or other toxic and hazardous materials that may be released with these perfluorinated compounds."  *Id.* at ¶ 5.  The foregoing are collectively referred to as "PFCs."  PFCs are synthetic carbon chain compounds that contain fluorine and which are used in the manufacture of numerous consumer products.  *Id.* at ¶ 42.  According to Plaintiff, DuPont uses at least one PFC, ammonium perfluorooctanoate (APFO) in connection with its Teflon® related products.  *Id.* at ¶ 44.   As explained in the *Amended Complaint*, APFO is the ammonium salt of "PFOA," the acronym used to identify the chemical commonly referred to as "C8."  *Am. Complaint*, Doc. No. 23 at ¶ 48.  Plaintiff claims that Defendant has used PFOA at its Washington Works plant from at least 1951 to the present.  *Id.* at ¶ 46.

According to Plaintiff, Defendant has known of the "bio-persistence and toxicity of PFOA" for some time.  *Id.* at ¶ 52.  While Plaintiff concedes that Defendant is under no obligation to cease the production, purchase or use of PFOA, the release of such "hazardous

wastes" endangers the safety, health and welfare of the community – in particular, Little Hocking's water users.  As detailed in the *Amended Complaint*, exposure to PFOA has been identified by the United States Environmental Protection Agency ["EPA"] as potentially harmful to human health.  *Id.* at ¶¶ 91-96.  Plaintiff claims that Defendant was aware of the harmful effects of exposure to PFOA on its employees as early as 1981.  *Id.* at ¶¶ 60-67.  Plaintiff further claims that Defendant was aware of contamination to Plaintiff's wellfields and distribution system as early as 1984.  *Id.* at ¶ 68.  Plaintiff apparently did not become aware of the presence of PFOA in its wellfields, or of its alleged consequent threat to the public at large, until January 2002, during a West Virginia Department of Environmental Protection meeting.  *Id.* at ¶ 81.

According to Plaintiff, recipients of water supplied by Plaintiff "have some of the highest non-worker PFOA blood levels of any reported in the United States or Canada to date - ranging from approximately 112 ppb to, at least, 1950 ppb." *Id.* at ¶ 113.  The average level for persons in the United States is 5.6 ppb.  *Id.* at ¶ 114.  Plaintiff claims that the release of hazardous wastes by Defendant also adversely affects the "air, soils, sediments, surface water and groundwater, and biota used by or accessible to Little Hocking, its water users, and/or the surrounding community." *Id.* at ¶ 118.  Plaintiff claims that the levels of PFOA in its wellfields are "the highest known in any public water supply in the world." *Id.* at ¶ 119.

In 2005, Defendant entered into a Memorandum of Understanding with the U.S. EPA to assess the past and current release of PFOA from the Washington Works Plant.  *Am. Complaint* at ¶ 130.  According to Plaintiff, the Final Report was inconclusive due to omissions in data supplied by Defendant.  *Id.*  Plaintiff claims that the release of hazardous wastes by Defendant has affected not only human health and the environment but also the operations of its business.

*See Am. Complaint* at ¶¶ 148-180.

Plaintiff's first claim in this action is filed pursuant to the citizen suit provision of RCRA, 42 U.S.C. § 6972(a)(1)(B). In particular, Plaintiff alleges that, as a result of the release of PFOA, Defendant "has contributed to and will continue to contribute to the past and present handling, storage, treatment, transportation and/or disposal of solid or hazardous waste which may present an imminent and substantial endangerment to health and/or the environment . . . ." *Id.* at ¶ 184. Plaintiff further alleges that conditions "at and about the [w]ellfields . . . may present an imminent and substantial endangerment to health and/or the environment: via open pathways resulting in routes of exposure, including direct dermal contact, ingestion of water and soils, and inhalation; and via continued migration of [c]ontamination in groundwater at or near the [w]ellfields." *Id.* at ¶ 185.

Plaintiff seeks injunctive relief to remedy Defendant's release of hazardous waste. Plaintiff requests an order compelling Defendant to

> (a) fund and/or undertake comprehensive environmental investigations, testing, and assessment to fully delineate the nature and the extent of the endangerment;
> (b) permanently abate the threat caused to health and the environment, including the air, soil, sediments, and groundwater at and about the [w]ellfields;
> (c) clean up the [c]ontamination; and
> (d) develop and implement strategies to prevent future releases of [h]azardous [w]astes that threaten harm to health or the environment. . . .

*Id.* at ¶ 186.

In addition to the claim under RCRA, Plaintiff also alleges that Defendant's actions with respect to the release of allegedly hazardous wastes amount to a public and private nuisance; negligence; trespass; abnormally dangerous or ultrahazardous activity; conversion; and unjust enrichment. *See* Claims 2-8, *First Am. Complaint*. Plaintiff seeks compensatory and injunctive

relief as to these claims.

Defendant moves to stay proceedings in this Court, pursuant to the doctrine of primary jurisdiction, arguing that the EPA is actively engaged in addressing the alleged problems with respect to the release of PFOA from the Washington Works Plant. Plaintiff opposes the motion and argues that this Court should resolve the issues presented in the *Amended Complaint*. The Court now considers the merits of Defendant's motion.

## II.

Section 7002(a)(1)(B) of RCRA authorizes a citizen suit "against any person . . . who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment . . . ." 42 U.S.C. § 6972(a)(1)(B). RCRA was enacted by Congress "to end the environmental and public health risks associated with the mismanagement of hazardous waste." *U.S. v. Commonwealth of Kentucky*, 252 F.3d 816, 822 (6th Cir. 2001). The term "hazardous waste" is defined as follows:

> [A] solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may –
> (A) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or
> (B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed.

42 U.S.C. § 6903(5).

The doctrine of primary jurisdiction provides for a stay of proceedings in federal court in instances where a claim involves issues within the "special competence of an administrative

5

body." *United States v. Western Pacific R.R. Co.*, 352 U.S. 59, 64 (1956). There is no fixed formula for determining whether the doctrine of primary jurisdiction should apply; rather, the court, in its discretion, must consider the uniformity that may result should an administrative agency be permitted to first makes its determination and the opportunity for the application of the expert and specialized knowledge of the agency. *Id.* "In every case, the question is whether the reasons for the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *Id.*

In this case, Defendant argues that a stay of proceedings is appropriate because the EPA is actively engaged in researching, analyzing and regulating PFOA in drinking water. In its *Motion to Stay*, Defendant details the EPA's activities in studying PFOA as well as Defendant's participation in EPA's activities. As Defendant notes, EPA's Office of Pollution Prevention and Toxics ["OPPT"] initiated a priority review of PFOA in September 2002. In April 2003, OPPT issued a preliminary risk assessment for PFOA and sought participation from industry to identify and study the sources of PFOA and pathways for human exposure. *See* 68 Fed. Reg. 18,626; 18,628; 18, 630-32 (April 16, 2003). In 2005, OPPT submitted a draft risk assessment for formal peer review by EPA's Science Advisory Board. According to Defendant, the EPA's study of PFOA in this regard is ongoing.

In 2009, EPA's Office of Water, which issues regulations regarding ground water and drinking water systems, included PFOA on the "Contaminant Candidate List." The Office of Water also issued a Provisional Health Advisory for PFOA and related compounds, offering guidance to regulators and public health officials on the maximum permissible level of contaminants in drinking water. The Office of Water has established a nationwide limit of 0.4

ppb PFOA concentration in drinking water. *See Provisional Health Advisory* 20009 at 1, 4.

In its *Motion to Stay*, Defendant states that, since 2001, it has worked with EPA to identify disposal sites for PFOA waste generated at the Washington Works Plant. Defendant has monitored ground and surface water in the vicinity of the sites and has offered alternate drinking water for users and water systems where the water supplies contain PFOA at level exceeding the 0.4 ppb level. *Id.,* at 9.

As Plaintiff notes in the *Amended Complaint*, Defendant entered into a Memorandum of Understanding with the EPA in 2005 regarding the release of PFOA from the Washington Works Plant. In addition, pursuant to a 2006 Order on Consent, Defendant agreed to a level of 0.50 ppb PFOA concentration in drinking water. Defendant also agreed to install and operate a "granular activated carbon (GAC) treatment system to address the PFOA issue." *Id.* at 10. Defendant's most recent Order on Consent with EPA, dated 2009, establishes a PFOA level of 0.40 ppb in drinking water.

In seeking a stay of the instant action, Defendant argues that it is in compliance with the Consent Orders regarding PFOA. Defendant notes that Plaintiff does not allege any violation of EPA rules in this action. Defendant characterizes Plaintiff's lawsuit as an attempt "to usurp EPA's role" and to persuade this Court to "divine new regulations" respecting PFOA. *Motion to Stay*, Doc. No. 25 at 15. Defendant points out that, while PFOA has been added to the Contaminant Candidate List ["CCL"], EPA has not classified PFOA as a "hazardous waste" under RCRA. According to Defendant, although Plaintiff desires a PFOA level lower than 0.40 ppb in drinking water, the Court "is in no position to divine . . . alternative standards." *Id.* at 17. Thus, Defendant argues that this Court should defer regulation of PFOA to the EPA under the

doctrine of primary jurisdiction.

In response, Plaintiff contends that the doctrine of primary jurisdiction does not apply in this case. Plaintiff concedes that Defendant is not in violation of any EPA directive but maintains that, whether the presence of PFOA poses an "imminent and substantial endangerment to health or the environment" is a question that should be resolved by the Court. Plaintiff cites several cases in which courts have declined to defer resolution of such a question under the doctrine of primary jurisdiction. *See National Resources Defense Council, Inc. v. County of Dickson, Tennessee*, No. 3:08-0229, 2010 WL 1408797 (M.D. Tenn. April 1, 2010); *Spillane v. Commonwealth Edison Co.*, 291 F.Supp.2d 728 (N.D. Ill. 2003); *DMJ Assoc., LLC v. Capasso*, 228 F.Supp.2d 223 (E.D. N.Y. 2002); *Wilson v. Amoco Corp.*, 989 F.Supp. 1159 (D. Wyo. 1998); *Craig Lyle Limited Partnership v. Land O'Lakes, Inc.*, 877 F.Supp. 476 (D. Minn. 1995).

The Court agrees with the foregoing authority. As stated by the court in *Craig Lyle Limited Partnership v. Land O'Lakes, Inc.*, 877 F.Supp. at 483, "[a]pplying the primary jurisdiction doctrine in citizen suit actions would greatly reduce the instances in which a plaintiff could pursue a citizen suit action. . . . [This] would be inconsistent with RCRA's statutory language." As these courts have observed, Congress has specifically authorized a citizen suit action to determine whether a hazardous waste presents an imminent and substantial endangerment to health or the environment. RCRA specifically authorizes a citizen action so long as a plaintiff has given notice to the EPA Administrator, the State and the person who is the subject of the suit. *See* 42 U.S.C. § 6972(a)(2)(A). Plaintiff has complied with this provision. *See First Am. Complaint*, Doc. No. 23 at ¶ 188. Further, citizen actions are prohibited in only limited circumstances, not applicable here. *See* 42 U.S.C. § 6972(a)(2)(C).

This Court recognizes that Defendant has cooperated with EPA's apparent desire to pursue regulation of PFOA. Nevertheless, in view of the clear Congressional authority for citizens to pursue actions such as the case at bar, this Court finds no reason to defer the exercise of jurisdiction in this case. This action is unlike those in which the doctrine of primary jurisdiction has been applied. For example, in *Kocolene Oil Corp. v. Ashland Oil, Inc.*, 509 F.Supp. 741 (S.D. Ohio 1981), this Court applied the doctrine of primary jurisdiction in an action where the plaintiff oil company sought recovery of overcharges resulting from defendant's calculation of cost of the purchased product. The issue presented to this Court at that time involved the meaning of the word "purchase" as used in the Code of Federal Regulations. The issue was then currently under review by the Department of Energy. This Court concluded that deference to the administrative agency was appropriate in order to ensure uniformity in regulation and because the matter presented fell within the unique expertise of the agency. 509 F.Supp. at 743-44.

Similarly, the doctrine of primary jurisdiction has been applied to bar litigation relating to telephone carriers' rates and practices, *see In re Long Distance Communications Litig.*, 831 F.2d 627 (6th Cir. 1987), and to bar claims under the Railroad Revitalization and Regulatory Reform Act in light of the oversight of railway rates by the Interstate Commerce Commission. *See Consol. Rail Corp. v. Nat'l Assoc. of Recycling Indus.,Inc.*, 449 U.S. 609 (1981).

In this case, although Defendant has entered into a Consent Order with the EPA regarding the presence of PFOA in drinking water, the question of whether PFOA is a hazardous waste and whether it presents an imminent and substantial endangerment to health or the environment can properly be determined by this Court, especially in view of the authority

granted by Congress for citizens to pursue such claims. Contrary to Defendant's argument, Plaintiff's claim does not call upon the Court to establish a nationwide regulation on PFOA; rather, the Court is called in this case to answer specific issues of alleged violation of RCRA. Under these circumstances, the Court concludes that, because the purposes underlying the doctrine of primary jurisdiction would not be served by a stay of this action, Defendant's motion to stay must be denied.

      **WHEREUPON** the *Motion to Stay Proceedings*, Doc. No. 25, is **DENIED**.


August 30, 2010                                        *s/ Norah McCann King*
                                                               Norah McCann King
                                                               United States Magistrate Judge