IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


THE LITTLE HOCKING WATER ASSN., INC.,

      Plaintiff,


    vs.                        Civil Action 2:09-cv-1081
                                  Judge Smith
                                  Magistrate Judge King

E.I. DU PONT DE NEMOURS & CO.,

      Defendant.


## OPINION AND ORDER

      This matter is before the Court on *Defendant E.I. Du Pont De Nemours and Company's Motion to Compel Testimony Regarding LHWA's Factual Basis for Its Claims*, Doc. No. 155 ("*Motion to Compel*").  For the reasons that follow, the *Motion to Compel* is **GRANTED**.

I.    **BACKGROUND**

      On December 5 and 6, 2012, counsel for defendant E.I. Du Pont De Nemours and Company ("DuPont") deposed Robert Griffin, the Fed. R. Civ. P. 30(b)(6) corporate designee of plaintiff Little Hocking Water Association, Inc. ("Little Hocking").  *See Exhibits 1* and *2*, attached to *Motion to Compel*.  During the deposition, Little Hocking's counsel, David Altman, instructed Mr. Griffin not to answer certain questions by which DuPont intended to discover facts underlying Little Hocking's claims.  *See*, *e.g.*, *Motion to Compel*, p. 2.  More specifically, Mr. Altman instructed the witness not to answer any question if any information in the answer came from a litigation consultant or expert.

*See*, *e.g.*, *Exhibit 1*, pp. 91, 239, 283, 287-92; *Exhibit 2*, pp. 338-39, 341).

Q.   Okay. But in terms of the entire real property holdings of Little Hocking, are you aware of any appraisal of the value of the real property holdings of Little Hocking?

MR. ALTMAN:    And if there's anything with respect to litigation consultants or experts, you're not to testify. But anything else you certainly can go ahead. . . . And I'm saying . . . – if you've learned of anything from a litigation consultant or an expert, you're not to testify about it, but anything else you can.

*              *              *

MR. ALTMAN:    --if you've learned of anything from a litigation consultant or an expert, you're not to testify about it, but anything else you can.

*Exhibit 1*, p. 91.

Q.   Okay.  And what have you done to determine that that's attributed to C-8?

MR. ALTMAN:    And again, don't testify— and [DuPont counsel Niall Paul] Niall's not asking you to-- about any expert or litigation consultant.

Q.   Well, I am asking you this: If you know of any facts which support your conclusion that the decreased volume is attributed to C-8, I do want you to tell me. I don't care where you got it from. If you think there's facts that support that conclusion, I don't care who told it to you.

MR. ALTMAN:    Well, I'm instructing you, if you have any information from any litigation consultant or expert, you're not to testify about it. But any other facts you certainly can testify to.

Q:   Okay.  And I want to be clear.  Again, if it's a fact, not the opinion of a litigation consultant, but an underlying fact upon which that consultant might base his opinion, right, and you're aware of those facts, even if derived from the litigation consultant, I want to know about the facts.

MR. ALTMAN:    And I'm--

2

Q:   And I know that he's telling you not to [answer] at this point.

MR. ALTMAN:      You heard the instruction.

*Id*. at 239-40.

Q.   Okay. And you haven't undertaken any study to determine whether or not there -- whether or not C-8 caused a decrease in people to come to live in Little Hocking's water service area?

MR. ALTMAN:      Objection. To the extent your answer implicates any expert knowledge you have gotten or litigation consultant information that you may have gleaned, you're not to testify about it.  But, otherwise, you can answer the question.

*Id*. at 283.

Q.   Okay. What's the value of any rent you believe is owed to Little Hocking?

MR. ALTMAN:      Objection. To the extent that it gets into expert or litigation consultant information.

*Id*. at 287-88.

MR. ALTMAN:      Anything that you might know about from litigation consultant or a[n] expert, we -- you're not to talk about it. But other than that –

MR. PAUL:  You know what? And I'm going to make it very clear again, I don't care if it came from an expert or lawyer.  If it represents a known anthropogenic chemical property that's in your well fields now or in the past and you know it, and it's a fact, I don't care where it came from. He's in –

MR. ALTMAN:      You've –

MR. PAUL:  --he'll tell you if it came from -- go ahead.

MR. ALTMAN:      You've heard my instruction.

MR. PAUL:  Yes. Okay.

MR. ALTMAN:      I mean, if you know about anything other than from a[n] expert or a litigation consultant, you certainly can testify about that.

MR. PAUL:  And, David, your objections based on what?

3

    MR. ALTMAN:     I am telling you that it's based on the
law, on the law, the rulings –

    MR. PAUL:  Of what[?]

    MR. ALTMAN:     -- that any -- the same as I've been
advising.

*Id*. at 289-90.

    MR. ALTMAN:     The case law is very clear, in not only
this circuit but all over, concerning information that is
learned from an expert or a litigation consultant.  That is
the basis for the instruction which I've been giving all
day.

*Id*. at 291.

    MR. ALTMAN:     It also -- it also implicates work
product and it also implicates -- depending on the
circumstances.  But I am telling him that if he knows about
any information . . . in any way other than that, he should
-- he can testify about it.

    MR. PAUL:  Great.  And you know what I'm asking you.  I
don't care where you got it.

*Id*. at 291-92.

    Q.    Have you ever been informed that C-8 from your
property has reached anyone else's property?

       MR. ALTMAN:     Objection. And again, same -- if you
have learned anything from lawyers or litigation
consultants or experts in this case, you are not to testify
about it.

*Id*. at 297-98.

    Q.    Has anyone told you there's an increase in animal
deaths caused by C-8?

    A.    No.

    Q.    Okay. And when you say "no," are you excluding
information or refusing to answer that question in any
manner, or is that your complete answer?

       MR. ALTMAN:     I am directing you not to respond in
any fashion about anything you've learned from litigation
consultants and experts in this case.

*Exhibit 2*, p. 338.

> MR. ALTMAN:    I am directing him not to, through the
> back door, tell you what he has learned or hasn't learned
> or hasn't learned from litigation consultants. You can find
> out what he knows about information that he's acquired
> other than litigation consultants, experts -- and experts,
> if, in fact, he has learned anything.
>
> BY MR. PAUL:
>
>     Q:   And I have already asked the question several
> ways that I can't know whether—how you're answering it.  I
> don't know whether you're excluding information that you
> know or not.  But let me ask it this way.
>
>     Are you aware of any facts that cause you to believe
> that there's an increase in deaths caused by C-8?
>
> MR. ALTMAN:      Same direction, Bob.

*Id*. at 339.

>     Q:   We went through a series of questions about your
> knowledge of any facts relating to current or future deaths
> caused by C-8 in the aquifer to wildlife. My question is
> the same:  Relating to harm, are you aware of any facts?
>
>     A:   No.
>
>     MR. ALTMAN:  Bob, you've got to wait and let me
> interpose an objection.
>
>     I'm objecting as to the form, relevance, and
> instructing you not to answer based on the -- if any part
> of your -- if your answer is based on information learned
> from litigation consultants and experts.

*Id*. at 341.

On January 24, 2013, the *Motion to Compel* was filed, seeking an

order overruling Little Hocking's objections and ordering Little

Hocking's Rule 30(b)(6) designee to answer questions regarding

underlying facts irrespective of the source of that information.

Little Hocking has opposed the *Motion to Compel*.  *Plaintiff Little*

*Hocking's Memorandum in Opposition to Defendant E.I Du Pont de Nemours*

5

*and Company's Motion to Compel Testimony Regarding Little Hocking's Factual Basis for Its Claims*, Doc. No. 162 ("*Memo. in Opp.*"). With the filing of *Defendant E.I Du Pont de Nemours and Company's Reply to Plaintiff The Little Hocking Water Association, Inc.'s Response to DuPont's Motion to Compel Testimony Regarding Little Hocking's Factual Basis for Its Claims*, Doc. No. 166 ("*Reply*"), this matter is now ripe for resolution.

**II. STANDARD**

The Federal Rules of Civil Procedure grant parties the right to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . ." Fed. R. Civ. P. 26(b)(1). Relevance for discovery purposes is extremely broad. *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 402 (6th Cir. 1998). However, "district courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce." *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (citing Fed. R. Civ. P. 26(b)(2)). In determining the proper scope of discovery, a district court balances a party's "right to discovery with the need to prevent 'fishing expeditions.'" *Conti v. Am. Axle & Mfg.*, No. 08-1301, 326 Fed. Appx. 900, at *907 (6th Cir. May 22, 2009) (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998)).

Rule 37 authorizes a motion to compel where "a deponent fails to answer a question asked under Rule 30 or 31." Fed. R. Civ. P. 37(a)(3)(B)(i). In addition, Rule 37(a) expressly provides that "an evasive or incomplete disclosure, answer, or response must be treated

as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

Finally, the party moving to compel discovery must certify that it "has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). *See also* S.D. Ohio Civ. R. 37.2. Although DuPont has not technically complied with this prerequisite, it is clear from the deposition testimony, as well as the positions of the parties during the status conference held on February 21, 2013, that the parties have reached an impasse in this matter. Therefore, based on the circumstances in this particular case, the Court will consider the merits of the *Motion to Compel*.

**III. DISCUSSION**

In seeking to compel Mr. Griffin's response to questions regarding underlying facts regardless of whether he may have learned the facts from a litigation consultant or an expert, DuPont argues that facts are discoverable irrespective of the source of that information. *Motion to Compel*, pp. 1-2. DuPont contends that neither the attorney client privilege nor the work product doctrine insulates these underlying facts from discovery. *Id.* at 2, 5.

Little Hocking disagrees, taking the position that Fed. R. Civ. P. 26(b)(4)(D) protects from discovery facts known by or opinions held by an expert who has been retained or specially employed in anticipation of litigation or for trial. *Memo. in Opp.*, pp. 1-3. Little Hocking also contends that this protection extends to facts know to or opinions held by non-testifying litigation consultants.

*Id.* at 3.   Therefore, Little Hocking argues, its objections and instructions during Mr. Griffin's deposition properly protected information under Rule 26(b)(4)(D) and non-testifying litigation consultant information.  *Id.* at 3-6.  Little Hocking goes on to argue that, at one point during Mr. Griffin's deposition, its counsel properly instructed the witness about responding to a question that "directly implicated" "actual lawyer-client and litigation consultant communications."  *Id.* at 5.

In reply, DuPont explains that it did not discuss Rule 26(b)(4)(D) in the *Motion to Compel* because the rule is irrelevant to the relief sought by DuPont.  *Reply*, p. 1.  DuPont seeks to discover facts known by the plaintiff, Little Hocking, and does not seek to discover the facts or opinions known to or held by its experts or attorneys know.  *Id.*  According to DuPont, Little Hocking's cited cases are inapposite because they address the protection afforded a non-testifying expert's knowledge, not a party's knowledge.  *Id.* at 2. DuPont therefore takes the position that Rule 26(b)(4)(D) does not serve to protect facts known by parties regardless of the source of that knowledge;  otherwise a party "could insulate itself from disclosing all facts known to it in discovery simply by claiming that an unidentified expert consultant was there at the time the fact was learned, or learned of the fact and conveyed it to the party."  *Id.* DuPont emphasizes that it simply seeks to discover the factual basis for Little Hocking's claims.  *Id.* at 2-4.

DuPont's arguments are well-taken.  As an initial matter, this Court previously noted that there is some ambiguity in the record

regarding Little Hocking's "litigation consultants," including whether they were hired to perform business-related consulting work rather than work in anticipation of litigation. *See*, *e.g.*, *Opinion and Order*, Doc. No. 168, pp. 42-43.  In its filing related to the present motion, Little Hocking still has not shown that the "experts" or "litigation consultants" referenced in Mr. Griffin's deposition were retained or specially employed in anticipation of litigation or for trial preparation as opposed to work in the ordinary course of plaintiff's business.  Based on this record, the Court cannot conclude that Rule 26(b)(4)(D) limits discovery of facts known by them.  *See*, *e.g.*, *Quality Time, Inc. v. West Bend Mut. Ins. Co.*, No. 12-1008, 2012 U.S. Dist. LEXIS 161703, at *37-39 (D. Kan. Nov. 13, 2012) (concluding that Rule 26(b)(4)(D) did not limit discovery of opinions of or facts known to a non-disclosed consultant where defendants had "not shown that his [the consultant's] retention or employment was in anticipation of litigation or for trial preparation").

In any event, however, DuPont does not seek to discover information or opinions held by Little Hocking's experts, consultants or counsel.  Rather, DuPont seeks to discover the factual basis of Little Hocking's claims, *i.e.*, information that is within the knowledge of Little Hocking's representative. Little Hocking has not established that the discoverability of the facts underlying its claims and within Little Hocking's knowledge is dependent on the source of that information.  *Cf. Graff v. Haverhill North Coke Co.*, No. 1:09-cv-670, 2012 U.S. Dist. LEXIS 162013, at *161-62 (S.D. Ohio Nov. 13, 2012) ("[N]either the attorney-client privilege nor the work

product doctrine applies to prevent the disclosure of underlying facts, *regardless of who obtained those facts*.") (citing *Upjohn Co. v. U.S.*, 449 U.S. 383, 389 (1981)) (emphasis added); *Gokare v. Fed. Express Corp.*, No. 2:11-cv-02131, 2012 U.S. Dist. LEXIS 106913, at *5 (W.D. Tenn. Aug. 1, 2012) ("Rule 26(b)(4)(D) does not bar the disclosure of [] the identity of a witness, and it *does not negate the requirements under* Rule 26(a)(1) and *Rule 26(b)(1)* that the identity of an individual that provides factual allegations in the complaint must be provided.") (emphasis added); *Kingdom Auth. v. City of Rockford*, No. 09 C 50240, 2011 U.S. Dist. LEXIS 7331, at *10 (N.D. Ill. Jan. 26, 2011) ("[T]he doctrine [within Rule 26(b)(4)(D)] exists to ensure that a party cannot freely benefit from expert *legal information* obtained at the expense of an adversarial party in anticipation of litigation.") (emphasis added).

   **WHEREUPON**, *Defendant E.I. Du Pont De Nemours and Company's Motion to Compel Testimony Regarding LHWA's Factual Basis for Its Claims*, Doc. No. 155, is **GRANTED**.  Little Hocking is **ORDERED** to produce its Rule 30(b)(6) witness, Robert Griffin, for continued deposition on the underlying factual issues addressed *supra,* on a date mutually convenient for both parties but in no event any later than twenty-one (21) days of the date of this *Opinion and Order*.  The deponent is **ORDERED** to respond to questions regarding facts underlying Little Hocking's claims, regardless of the source of those facts.  The deposition shall be limited to no more than four (4) hours.[1]

---

[1] If the parties, after exhausting extrajudicial efforts, are unable to agree upon a date for the deposition, they are directed to contact the Court. Similarly, the Court will consider extending the length of the anticipated

February 26, 2013                          *s/Norah McCann King*
                                         Norah M<sup>c</sup>Cann King
                                 United States Magistrate Judge

---

deposition upon a showing of good cause or upon the mutual agreement of the
parties.