IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


THE LITTLE HOCKING WATER ASSN., INC.,

       Plaintiff,


    vs.                           Civil Action 2:09-cv-1081
                                 Judge Smith
                                 Magistrate Judge King

E.I. DU PONT DE NEMOURS & CO.,

       Defendant.


## OPINION AND ORDER

     This matter is before the Court on *Little Hocking's Motion to Determine the Sufficiency of Responses to Requests for Admission*, Doc. No. 197 ("*Motion to Determine Sufficiency*"). For the reasons that follow, the *Motion to Determine Sufficiency* is **GRANTED in part and DENIED in part**.

**I.  BACKGROUND**

     Plaintiff, the Little Hocking Water Association, Inc. ("Little Hocking"), supplies water to townships in Washington County, Ohio and in Athens County, Ohio. *First Amended Complaint*, Doc. No. 23, at ¶ 21 ("*Amended Complaint*"). Little Hocking owns wellfields that are located in the State of Ohio, directly across the Ohio River from defendant E.I. Du Pont de Nemours & Co.'s ("DuPont") Washington Works plant. *Id.* at ¶¶ 26, 29. Little Hocking alleges that DuPont's waste disposal practices have resulted in the migration of hazardous perfluorinated compounds (collectively, "PFCs") into Little Hocking's

1

wellfields.  *Id*. at ¶¶ 3, 5.  According to Little Hocking, DuPont uses at least one PFC, ammonium perfluorooctanoate ("APFO") in connection with its Teflon® related products.  *Id*. at ¶ 44.  APFO is the ammonium salt of "PFOA," the acronym used to identify the chemical Perfluorooctanoic acid commonly referred to as "C8."  *Id*. at ¶¶ 45 n.1, 48.  Little Hocking alleges that DuPont has used PFOA at its Washington Works plant from at least 1951 to the present.  *Id*. at ¶ 46.  Little Hocking alleges that DuPont has known of the "bio-persistence and toxicity of PFOA" for some time.  *Id*. at ¶ 52.

On December 7, 2012, Little Hocking served its first set of requests to admit on DuPont.  *Declaration of Justin D. Newman*, ¶ 3, attached as *Exhibit B* to *Motion to Determine Sufficiency* ("*Newman Declaration*").  After DuPont responded on January 4, 2013, Little Hocking notified DuPont that certain responses were insufficient under Fed. R. Civ. P. 36.  *Id*. at ¶¶ 4-5.  *See also Exhibit A*, PAGEID# 5962 – 5974, attached to *Motion to Determine Sufficiency* (DuPont's answers to Little Hocking's First Requests for Admissions, Nos. 1-30).

On December 12, 2012, Little Hocking served its second set of requests to admit on DuPont.  *Id*. at ¶ 3.  Again, Little Hocking believed that the responses, which were served on January 9, 2012, were deficient.  *Id*. at ¶ 6.  *See also Exhibit A*, PAGEID# 5975 – 5981, attached to *Motion to Determine Sufficiency* (DuPont's answers to Little Hocking's Second Requests for Admissions, Nos. 31-42).  Although the parties discussed the sufficiency of DuPont's responses to both sets of requests to admit on at least three occasions, they were unable to resolve their dispute extrajudicially.  *Id*. at ¶¶ 7-12.

2

Therefore, on March 29, 2013, Little Hocking filed the *Motion to Determine Sufficiency*.  DuPont opposes the motion, *Defendant E.I. du Pont de Nemours and Company's Response in Opposition to Little Hocking's Motion to Determine the Sufficiency of Responses to Requests for Admission*, Doc. No. 201 ("*Memo. Contra*"), and Little Hocking has filed a reply, *Little Hocking's Rely in Support of Its Motion to Determine the Sufficiency of Responses to Requests for Admission*, Doc. No. 204 ("*Reply*").

## II.   STANDARD

The Federal Rules of Civil Procedure authorizes a party to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . ."  Fed. R. Civ. P. 26(b)(1).  Relevance for discovery purposes is extremely broad.  *Lewis v. ACB Business Services, Inc.*, 135 F.3d 389, 402 (6th Cir. 1998).  However, "district courts have discretion to limit the scope of discovery where the information sought is overly broad or would prove unduly burdensome to produce."  *Surles ex rel. Johnson v. Greyhound Lines, Inc.*, 474 F.3d 288, 305 (6th Cir. 2007) (citing Fed. R. Civ. P. 26(b)(2)).  In determining the proper scope of discovery, a district court balances a party's "right to discovery with the need to prevent 'fishing expeditions.'"  *Conti v. Am. Axle & Mfg.*, No. 08-1301, 326 Fed. Appx. 900, at *907 (6th Cir. May 22, 2009) (quoting *Bush v. Dictaphone Corp.*, 161 F.3d 363, 367 (6th Cir. 1998)).

Little Hocking has filed a motion related to DuPont's answers to Little Hocking's requests to admit.  "The functional purpose of utilizing requests to admit in litigation is to facilitate proof and

narrow the issues presented at trial." *Piskura v. Taser Int'l*, No. 1:10-cv-248, 2011 U.S. Dist. LEXIS 141443, at *5 (S.D. Ohio Nov. 7, 2011) (citing Fed. R. Civ. P. 36 advisory comm. note (West 1970)).

Rule 36 of the Federal Rules of Civil Procedure, which governs requests to admit, provides, in pertinent part, as follows:

> A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to:
>
>> (A) facts, the application of law to fact, or opinions about either; and
>>
>> (B) the genuineness of any described documents.

Fed. R. Civ. P. 36(a)(1). Rule 36 also addresses the response to a request to admit:

> If a matter is not admitted, the answer must specifically deny it or state in detail why the answering party cannot truthfully admit or deny it. A denial must fairly respond to the substance of the matter; and when good faith requires that a party qualify an answer or deny only a part of a matter, the answer must specify the part admitted and qualify or deny the rest. The answering party may assert lack of knowledge or information as a reason for failing to admit or deny only if the party states that it has made reasonable inquiry and that the information it knows or can readily obtain is insufficient to enable it to admit or deny.

Fed. R. Civ. P. 36(a)(4). Therefore, "an answering party must conduct a reasonable inquiry and answer a [request to admit] if the information is readily obtainable, even though the answering party has no personal knowledge of the facts." *Drutis v. Rand McNally & Co.*, 236 F.R.D. 325, 331 (E.D. Ky. 2006). *See also Diederich v. Department of Army*, 132 F.R.D. 614, 619 (S.D. N.Y. 1990) (stating that a "reasonable inquiry" "includes investigation and inquiry of any of defendant's officers, administrators, agents, employees, servants,

4

enlisted or other personnel, who conceivably, but in realistic terms, may have information which may lead to or furnish the necessary and appropriate response" as well as "relevant documents and regulations").

Upon motion to determine the sufficiency of an answer or objection, "[u]nless the court finds an objection justified, it must order that an answer be served." Fed. R. Civ. P. 36(a)(6). If the court determines that "an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served." *Id*. "A matter admitted under this rule is conclusively established [only for that proceeding] unless the court, on motion, permits the admission to be withdrawn or amended." Fed. R. Civ. P. 36(b).

## III. DISCUSSION

Little Hocking moves the Court for an order: (1) deeming admitted matters addressed in 25 requests to admit; and (2) directing DuPont to amend its responses to certain requests to admit. *See Motion to Determine Sufficiency*, p. 1 (citing disputed responses to Request to Admit Nos. 1, 6, 9, 10, 12, 14, 18-32, 39, 42).

### A.    Compliance with *Opinion and Order*, Doc. No. 194

As an initial matter, DuPont asks this Court to deny the *Motion to Determine Sufficiency* for failure to comply with the Court's prior order. *Memo. Contra*, pp. 2-3. As way of background, on March 25, 2013, the Court ordered that, "[a]s it relates to nondispositive motions, any party referring to or arguing about any discovery request or testimony of a witness or designee, must, at the earliest

5

opportunity . . . (a) identify the discovery request by number and describe the content of the request . . . [A] **failure to comply with any of these limitations MAY RESULT IN THE DENIAL OF A NONDISPOSITIVE MOTION**." *Opinion and Order*, Doc. No. 194, p. 58 (emphasis in original). *See also id*. at 3 (advising that the Court has no obligation to sift through the record to cobble together facts on behalf of a moving party).

In opposing the *Motion to Determine Sufficiency*, DuPont argues that Little Hocking failed to comply with this directive in that Little Hocking did not describe the contents of requests to admit numbers 10, 12, 14, 19, 21, 23, 40 and 41. *Memo Contra*, p. 3 (citing *Motion to Determine Sufficiency*, p. 6, which states that these requests "asked DuPont to admit certain specific facts"). Little Hocking disagrees, contending that it sufficiently described the cited requests and attached a copy of the requests. *Reply*, p. 2 (explaining, *inter alia*, that not all requests to admit seek the admission of certain specific facts because they can also relate to the application of law to facts, etc.).

Although the Court agrees with DuPont that a more detailed description of these disputed requests to admit would have been helpful, the Court cannot say that Little Hocking's description of the particular requests is so deficient as to run afoul of the *Opinion and Order*, Doc. No. 194, and warrant the denial of the *Motion to Determine Sufficiency* on this ground. The Court therefore now turns to the merits of this motion.

**B.    Requests to Admit Related to Authentication (Nos. 9, 18, 20, 22 and 39)**

In Request to Admit Nos. 9, 18, 20, 22 and 39, Little Hocking asked DuPont to admit that the exhibit referred to in each request "is an authentic and accurate copy of a business record of DuPont prepared and kept in the regular course of business of DuPont." *Exhibit A*, PAGEID# 5965, 5969, 5970 and 5977), attached to *Motion to Determine Sufficiency*. *See also Exhibits C-G*, attached to *Motion to Determine Sufficiency* (exhibits referenced in each of these Requests to Admit). DuPont responded to each of these requests as follows:

> DuPont admits that [the referenced exhibit] appears to be
> an authentic and accurate copy of a record created by a
> DuPont employee.  DuPont denies the admissibility or
> relevance of the document to this action, or that this
> document constitutes an exception to the hearsay rule.  All
> other aspects of the Request are denied.

*Exhibit A*, PAGEID# 5965, 5969, 5970 and 5977, attached to *Motion to Determine Sufficiency*.

Little Hocking argues that DuPont's answers in this regard establish that DuPont has not conducted the requisite "reasonable inquiry" to determine whether the documents are actually authentic. *Motion to Determine Sufficiency*, p. 4.  Little Hocking therefore seeks an order deeming admitted these matters. *Id*.

In response, DuPont contends that its responses are sufficient, representing that it "does not contest the origin of the documents at issue" in these requests for purposes of Rule 36(a)(1)(B).[1]  *Memo. Contra*, p. 3.  According to DuPont, Little Hocking's motion in this

---

[1] "A party may serve on any other party a written request to admit, for purposes of the pending action only, the truth of any matters within the scope of Rule 26(b)(1) relating to . . . the genuineness of any described documents."  Fed. R. Civ. P. 36(a)(1)(B).

regard attempts to establish – not the authenticity of the exhibits – but the eventual admissibility of the exhibits into evidence. *Id*. at 3-4. DuPont contends that such an attempt is improper. *Id*. at 4 (citing *Sommerfield v. City of Chicago*, 251 F.R.D. 353, 355 (N.D. Ill. 2008)).

Little Hocking replies that its use of Rule 36 "to establish the elements of the business records exception"[2] is not improper and is, indeed, commonplace. *Reply*, pp. 2-3 (citing *Oakley v. McCabe*, No. 06-4073, 2007 WL 2752175 (S.D. Ill. Sept. 21, 2007); *Linde v. Arab Bank PLC*, No. CV-04-2799, 2009 WL 8691096 (E.D. N.Y. June 1, 2009)). Moreover, Little Hocking points out that the parties previously agreed to "unlimited requests to establish that documents are business records." *Id*. at 3 (citing *Exhibit A* (excerpt from parties' Rule 26(f) report, Doc. No. 15-2), attached thereto).[3] Little Hocking therefore takes the position that DuPont's responses that the referenced exhibits "appear to be" authentic are evasive and frivolous. *Id*.

At least one court has interpreted Rules 26 and 36 of the Federal Rules of Civil Procedure to authorize requests to admit that certain documents qualify as business records, reasoning that such requests are consistent with the interest underlying Rule 36, *i.e.,* the facilitation of proof at trial. *See Lockheed Martin Corp. v. L-3 Communs. Corp.*, No. 1:05-CV-902-CAP, 2007 U.S. Dist. LEXIS 101872, at

---

[2] *See* Fed. R. Evid. 803(6).

[3] This excerpt provides that: "The parties have agreed that interrogatories and requests for admissions solely to establish that a document is authentic and/or a business record will not count toward any interrogatory and request for admission limit agreed upon by the parties." *Exhibit A*, p. 3, attached to *Reply*.

*4-5 (N.D. Ga. Oct. 10, 2007) ("Requests which seek to establish whether a document is hearsay in the first instance, or falls within one of the exceptions to the hearsay rule, *e.g.*, records of regularly conducted activity (Fed. R. Evid. R. 803(6)), unquestionably relate to the 'nature' of the document within the meaning of the Rule 26(b)(1)."). Moreover, the parties' own joint *Rule 26(f) Report*, Doc. No. 15, suggests that the parties contemplated that requests to admit would properly be used to "establish that a document is authentic and/or a business record[.]" *Appendix B*, attached to *Rule 26(f) Report*, Doc. No. 15. Accordingly, the Court concludes that Little Hocking's resort to Rule 36 to establish that certain exhibits are authentic and qualify as business records kept in the regular course of DuPont's business is not improper.

As it relates to Requests to Admit Nos. 9, 18, 20, 22 and 39, the *Motion to Determine Sufficiency* is therefore **GRANTED**.

### C. Answers to Requests to Admit Stating That Certain Documents "Speak for Themselves" (Nos. 10, 12, 14, 19, 21, 23, 24, 25, 26, 27, 28, 29, 40, 41)

#### 1. Answers Regarding the C8 Science Panel's Findings (Nos. 24, 25, 26, 27, 28, 29)

In Request to Admit Nos. 24-29, Little Hocking asked DuPont to "[a]dmit that the C8 Science Panel[4] concluded that there is a probable link between exposure to C8 (also known as PFOA) and" six different human diseases. *See Exhibit A* PAGEID# 5971 (No. 24, thyroid disease; No. 25, testicular cancer; No. 26, kidney cancer) and 5972 (No. 27, pregnancy-induced hypertension; No. 28, ulcerative colitis; and No.

---

[4] Little Hocking explains that this panel "was created as part of the settlement of a class action filed by area residents against DuPont in West Virginia state court." *Motion to Determine Sufficiency*, p. 4 n.1.

29, high cholesterol), attached to *Motion to Determine Sufficiency*.
*See also Exhibit H* (findings of C8 Science Panel), attached to *Motion to Determine Sufficiency*.

DuPont responded, essentially, that each conclusion of the C8 Science Panel "speaks for itself." *See Exhibit A*, PAGEID# 5971-5972 (DuPont's responses to Request to Admit Nos. 24-29), attached to *Motion to Determine Sufficiency*. For example, in response to Request to Admit No. 24, which asked DuPont to admit that the C8 Science Panel found a probable link between C8 and thyroid disease, DuPont answered:

> DuPont admits that the Request restates a portion of the Conclusion section of the "Probable Link Evaluation of Thyroid disease" issued by the C8 Science Panel on July 30, 2012. The full text of that document, which applies terms and definitions of the *Leach* Class Action Settlement Agreement,[5] speaks for itself. DuPont denies the statements in the Request not specifically admitted.

*See Exhibit A*, PAGEID# 5971, attached to *Motion to Determine Sufficiency*.

Little Hocking argues that DuPont's response that a document "speaks for itself" violates Rule 36. *Motion to Determine Sufficiency*, p. 5 (citing *Robert Weiler Co. v. Kingston Twp.*, No. 2:07-cv-0760, 2008 WL 4758682, at *5 (S.D. Ohio Oct. 27, 2008); *Old Reliable Wholesale, Inc. v. Cornell Corp.*, No. 5:06-CV-02389, 2008 WL 2323777, at *2 (N.D. Ohio June 4, 2008); *FDIC v. Halpern*, 271 F.R.D. 191, 195-96 (D. Nev. 2010)). Little Hocking also contends that DuPont's response is particularly deficient here, where the "C8 Science Panel's findings resulted from a settlement to which DuPont

---

[5] *Leach v. E.I. du Pont de Nemours and Company*, No. 01-6-608 (Cir. Ct. Wood County W. Va.), filed in August 2001, was a PFOA-related class action filed against DuPont alleging common law tort claims and a claim for medical monitoring. *See Opinion and Order*, Doc. No. 169, pp. 5-6.

was a party" and where "DuPont has even confirmed the probable link filings in its own public filings." *Id.* (citing *Exhibit I* (DuPont's Form 10-K, dated December 31, 2012 and filed with the Securities and Exchange Commission ("SEC")), PAGEID# 6113 ("The C8 Science Panel found probable links, as defined in the settlement agreement, between exposure to PFOA and pregnancy-induced hypertension, including preeclampsia; kidney cancer; testicular cancer; thyroid disease; ulcerative colitis; and diagnosed high cholesterol (hypocholesterolemia)"), attached to *Motion to Determine Sufficiency*. Little Hocking therefore seeks an order deeming admitted the matters addressed in Request to Admit Nos. 24-29. *Id.*

DuPont, however, argues that it properly answered these requests by admitting that "the C8 Science Panel made a particular finding, and that the specific finding was published in a report for that specific disease endpoint." *Memo. Contra*, p. 4. DuPont further contends that its Form 10-K filed with the SEC is consistent with its responses to these requests to admit. *Id.* at 4 n.1. DuPont also distinguishes Little Hocking's cited cases by arguing that those cases relate to situations where the responding party's only answer "is a refusal to admit or deny on the basis that a document 'speaks for itself.'" *Id.* at 4-5. DuPont goes on to explain that the *Leach* Settlement Agreement defined the scope of the C8 Science Panel's research, which requires reference to the terms and definitions in that agreement. *Id.* at 4-5.

In reply, Little Hocking denies that DuPont admitted that the C8 Science Panel made findings linking C8 exposure to these diseases, characterizing DuPont's responses as admitting only that Little

Hocking accurately quoted the cited documents.  *Reply*, p. 3.  In light
of DuPont's evasion and present concession that it is admitting that
the C8 Science Panel made particular findings, Little Hocking argues
that the Court should deem admitted the matters raised in the disputed
requests.  *Id*. at 4.

This Court had concluded – as have other courts – that it is
generally impermissible to merely state, in response to a request to
admit, that a document "speaks for itself."  *See*, *e.g.*, *Robert Weiler
Co.*, 2008 WL 4758682, at *5 (agreeing that a response that a document
"speaks for itself" is not a permissible answer under the federal
rules); *Old Reliable Wholesale, Inc.*, 2008 WL 2323777, at *2 (finding
that a response that an exhibit "states" something "avoids the issue"
and that "[a]dmitting what was not requested in an effort to dodge the
request creates confusion and frustration during the discovery
process, and leads to needless Court intervention"); *Halpern*, 271
F.R.D. at 195-96 (finding that, where the plaintiff provides no reason
why it cannot admit or deny certain requests, responses to those
requests that certain documents "speak for themselves" are "evasive
because they do not fairly respond to the substance of the matters
that Defendants request be admitted"); *Adobe Sys. v. Christenson*, No.
2:10-cv-00422, 2011 U.S. Dist. LEXIS 16977, at *29-30 (D. Nev. Feb. 7,
2011) (stating that, where a party responded to a request to admit
that "the document speaks for itself," that party should admit or deny
the request).

This Court disagrees with DuPont's characterization of its
responses, *i.e.*, that the responses "admitted that the C8 Science

Panel made a particular finding[.]"  Fairly read, DuPont's responses simply admit that each particular request "restates a portion" of the C8 Science Panel's conclusions.  Nevertheless, the Court concludes that the request of Little Hocking that the matters addressed in these requests be admitted is unwarranted.  DuPont is **ORDERED** to serve an amended answer, consistent with Rule 36(a)(4), to Request to Admit Nos. 24, 25, 26, 27, 28 and 29 within ten (10) days of the date of this *Opinion and Order*.

> ## 2.  Answers Citing Other Documents (Nos. 10, 12, 14, 19, 21, 23, 40, 41)

In several requests, Little Hocking asked DuPont to admit the following facts:  DuPont employees agreed to consider alternatives for eliminating air emissions of PFOA from the Washington Works facility (Request No. 10); air emissions of PFOA from the Washington Works facility "more than doubled" between 1980 and 1989 (Request No. 12); DuPont employees set a goal of drastically reducing the amount of PFOA discharged into the Ohio River by the first or second quarter of 1984 (Request No. 14); statements attributed to DuPont's Medical Director, Bruce W. Karrh, M.D. (Request Nos. 19, 21, 23); and DuPont's awareness, at least in 1991, of the alleged impact on humans and animals of exposure to C8 (Request Nos. 40, 41).  *See Exhibit A*, PAGEID# 5965-5967 (Nos. 10-14), PAGEID# 5969 (No. 19), PAGEID# 5970 (Nos. 21, 23), PAGEID# 5978 (Nos. 40-41), attached to *Motion to Determine Sufficiency*.

In response, DuPont admitted that each request summarized and restated text from a particular document, which was referenced in a preceding request, and stated that the text "speaks for itself."  *Id.*

13

For example, in response to Request to Admit No. 10, which asked DuPont to admit that, "in 1983, DuPont employees agreed to consider alternatives for eliminating air emissions of PFOA from the Washington Works Facility," *Id.* at PAGEID# 5965, DuPont stated:

> Objection.  DuPont admits that this Request summarizes and restates some of the text of Exhibit A, paragraph 5 of the page Bates stamped 176-2012-0001177, which was written 29 years ago.  The text of that document speaks for itself.  DuPont denies the statements in the Request not specifically admitted.

*Id.*  In response to Request to Admit No. 12, which asked DuPont to admit that, "between 1980 and 1989, air emissions of PFOA from the Washington Works Facility more than doubled," *Id.* at PAGEID# 5966.  DuPont stated as follows:

> DuPont admits that according to the summary of estimated PFOA air emissions from the mass balance estimates reflected in Table 3-3 of the ChemRisk assessment identified in Request for Admission No. 15, estimated air emissions of PFOA from the Washington Works Facility increased from approximately 14,358 pounds in 1980 to approximately 32,308 pounds in 1989. DuPont further admits that estimated air emissions of PFOA from the Washington Works Facility decreased from approximately 32,308 pounds in 1989 to approximately 7,383 pounds in 2003. As articulated in the ChemRisk assessment, there are uncertainties in the estimated air emissions of PFOA due to particulate size distribution, meteorological data, and the impact of wind speed and wind direction on model predictions and stack height parameters. DuPont denies the remaining allegations contained in this Request.

*Id.*

Little Hocking argues that answers such as these are improper under Rule 36 because they do not fairly address the substance of the requests.  *Motion to Determine Sufficiency*, p. 6.  Little Hocking therefore seeks an order directing DuPont to amend its answers to Request to Admit Nos. 10, 12, 14, 19, 21, 23, 40, 41.  *Id.*

14

In response, DuPont explains that the requests at issue ask merely whether the paraphrased language is accurate, considering that these requests contain language paraphrased from an exhibit identified in another request to admit. *Memo. Contra*, p. 5 (representing that Request Nos. 10 and 14 contain language paraphrased from Exhibit A (identified in Request No. 9); Request No. 19 contains language paraphrased from Exhibit B (identified in Request No. 18); Request No. 21 contains language paraphrased from Exhibit C (identified in Request No. 20); Request No. 23 contains language paraphrased from Exhibit D (identified in Request No. 22); Request Nos. 40 and 41 contain language paraphrased from Exhibit A (identified in Request No. 39)). In indicating that the paraphrasing of each exhibit was correct, DuPont argues, its responses were proper. *Id*. at 5-6. In support of this position, DuPont points to Little Hocking's imprecise approach highlighted in Request to Admit No. 12, which paraphrases language from a ChemRisk article identified in Request to Admit No. 15. *Id*. at 6. *See also Exhibit A*, PAGEID# 5966 (Request to Admit No. 12: "Admit that between 1980 and 1989, air emissions of PFOA from the Washington Works Facility more than doubled."); PAGEID# 5967 (Request to Admit No. 15: "Admit that DuPont did not knowingly withhold information that was needed from DuPont for ChemRisk, Inc. to prepare the article entitled "A Methodology for Estimating Human Exposure to Perflurooctanoic Acid (PFOA):  A Retrospective Exposure Assessment of a Community (1951-2003)," Journal of Toxicology and Environmental Health, Part A, 70:  28-57, 2007."). DuPont goes on to explain that there are certain qualifiers to the figures appearing in the ChemRisk

15

assessment, which therefore prevent it from admitting more than that ChemRisk made certain findings and that those findings are reflected in a published study.  *Id*.

Little Hocking denies that the disputed requests ask whether a document is accurately quoted, but instead ask DuPont to admit the various facts in those requests (described *supra*).  *Reply*, p. 4. Little Hocking argues that DuPont had a duty to conduct a reasonable inquiry into whether the stated matters were true, that its responses are insufficient and that DuPont should provide amended answers consistent with Rule 36.  *Id*.

Fairly read, these requests do not seek merely to confirm whether language purportedly paraphrased from various exhibits is accurate; rather, the requests seek to confirm whether the facts stated in those requests are true.  Accordingly, as it relates to Request to Admit Nos. 10, 12, 14, 19, 21, 23, 40, 41, the *Motion to Determine Sufficiency* is **GRANTED**.  DuPont is **ORDERED** to serve amended answers in response to Request to Admit Nos. 10, 12, 14, 19, 21, 23, 40, 41 within ten (10) days of the date of this *Opinion and Order*.[6]

> **D. Answers Denying Requests that Little Hocking Believes DuPont's Answers Otherwise Admit (Nos. 1 and 6)**
>
> **1. Request to Admit No. 1**

In Request to Admit No. 1, Little Hocking asks DuPont to admit that, "in 1984, DuPont detected the presence of PFOA in drinking water

---

[6] In so ordering, the Court recognizes that there may be "caveats and conditions," *Memo. Contra*, p. 6, to the matters addressed in a given request. If so, DuPont may raise appropriate objections so long as those objections are consistent with Rule 36 and so long as its responses otherwise fairly address the substance of the matters addressed in the requests.  *See* Rule 36(a)(4), (a)(5); *Lakehead Pipe Line Co.*, 177 F.R.D. at 457; *Halpern*, 271 F.R.D. at 195-96.

supplied by Little Hocking." *Exhibit A*, PAGEID# 5962, attached to *Motion to Determine Sufficiency*. In response, DuPont answered:

> Denied. DuPont states that in March 1984, PFOA was detected at 0.8 ppb in a water sample taken from a tap believed to be serviced by the Little Hocking Water Association. DuPont further states that PFOA was not detected in a June 1984 water sample taken from a tap believed to be serviced by the Little Hocking Water Association, and therefore, based on Little Hocking's own standards, DuPont denies this Request for Admission. DuPont states that PFOA was not detected in a 1987 water sample taken from a tap believed to be serviced by the Little Hocking Water Association, and that PFOA was not detected in a May 1988 water sample taken from a tap believed to be serviced by the Little Hocking Water Association. DuPont denies the statements in the Request not specifically admitted.

*Id.* at PAGEID# 5962-5963.

Little Hocking argues that this response is deficient because, notwithstanding DuPont's initial denial, DuPont goes on to admit that it detected PFOA in drinking water supplied by Little Hocking. *Motion to Determine Sufficiency*, p. 9. Little Hocking also contends that DuPont's responses to interrogatories and testimony during a Rule 30(b)(6) deposition confirm the detection of PFOA. *Id.* (citing *Exhibit N* (DuPont's supplemental response to Interrogatory No. 66 stating that one sample taken from Little Hocking's wellfield "contained 0.6 ppb [parts per billion] of PFOA in 1984") and *Exhibit O* (Deposition of Robert W. Rickard, Ph.D., taken on January 11, 2013, PAGEID# 6199, stating that he was aware of 0.6 ppb of PFOA in 1984), attached thereto). Little Hocking therefore seeks an order deeming admitted the matter addressed in Request to Admit No. 1.

DuPont takes the position that its qualified response to Request to Admit No. 1 was both appropriate and necessary because "there was more than one sampling event in 1984[,]" including a June 1984

sampling in which PFOA was not detected. *Memo. Contra*, p. 8.  To require DuPont to admit the matter addressed in Request to Admit No. 1 would "create[] the unfair inference that PFOA was constantly present in Little Hocking's water *even though* sampling results from June 1984 did not detect PFOA." *Id*. (emphasis in original).

Little Hocking replies that, because DuPont concedes that C8 was detected in a March 1984 water sample, DuPont's answer should not be a denial, but rather an admission with a qualification. *Reply*, p. 9. This Court agrees.  As it relates to Request to Admit No. 1, the *Motion to Determine Sufficiency* is **DENIED** to the extent that it seeks an order deeming admitted the matter addressed in that request. DuPont is **ORDERED** to serve an amended answer in response to Request to Admit No. 1, consistent with the foregoing, within ten (10) days of the date of this *Opinion and Order*.

### 2.    Request to Admit No. 6

Request to Admit No. 6 asked DuPont to admit "that during the period from 1984 through at least 2001 DuPont did not inform Little Hocking that PFOA from the Washington Works Facility had been deposited on Little Hocking's Wellfields." *Exhibit A*, PAGEID# 5964, attached to *Motion to Determine Sufficiency*.  In response, DuPont answered:

> Objection. DuPont objects to the term "deposited" as it is undefined and vague in this context.  DuPont further objects to this Request as it suggests that DuPont should have advised Little Hocking of a negative proposition. DuPont is not aware of communications between 1984 and 2001 from DuPont to Little Hocking informing Little Hocking that PFOA emissions from the Washington Works Facility did or did not result in the presence of PFOA in Little Hocking's Wellfields.  DuPont denies the statements in the Request not specifically admitted.

*Id.*

Little Hocking construes DuPont's response as an admission that DuPont did not inform Little Hocking of C8 disposal on Little Hocking's wellfields. *Motion to Determine Sufficiency*, p. 10. Little Hocking therefore seeks an order deeming this fact admitted.

DuPont responds that it properly objected to the term "deposited," which is undefined and subject to varying interpretations. *Memo. Contra*, p. 9 (noting that even Little Hocking replaced the word "deposited" with "disposed of") (citing *Motion to Determine Sufficiency*, p. 10). Although DuPont is unaware of "official communications" between DuPont and Little Hocking between 1984 and 2001, DuPont concedes the possibility that, at some point during that period, some DuPont employee may have, unbeknownst to DuPont, communicated with Little Hocking regarding the presence (or absence) of PFOA in Little Hocking's wellfields. *Id.*

The Court agrees that Little Hocking's use of the term "deposited" is both undefined and objectionable. *See*, *e.g.*, *Motion to Determine Sufficiency*, p. 10 (replacing term "deposited" with "disposed of" when discussing this request); *Exhibit A* (copies of requests to admit, which do not define term "deposited"), attached thereto. As it relates to Request to Admit No. 6, the *Motion to Determine Sufficiency* is therefore **DENIED**.

**E.    Remaining Disputed Answers to Requests to Admit (Nos. 30, 31, 32, 42)**

**1.    Request to Admit No. 30**

In Request to Admit No. 30, Little Hocking asks DuPont to admit that "PFOA is extremely persistent and can last hundreds of years in the environment." *Exhibit A*, PAGEID# 5964, attached to *Motion to Determine Sufficiency*. In response, DuPont "denies this Request as phrased but admits a general awareness that PFOA remains in the environment and human blood for some period of time." *Id*.

Little Hocking contends that, because DuPont has used C8 and studied its effects for years and because its Rule 30(b)(6) witness testified that C8 may last hundreds or thousands of years in the environment, *Motion to Determine Sufficiency*, p. 7 (citing *Exhibit J* (excerpt of deposition of Robert Craig Buck, Ph.D. taken on January 10, 2013), attached to *Motion to Determine Sufficiency*), DuPont's response to this request is insufficient.[7]  Little Hocking therefore

---

[7]Dr. Buck testified to the following:

> Q:    This may be a gigantically simplistic question, but what is the half-life of PFOA in the environment?
>
>      MR. ATKINSON:  Objection to form.
>      You can answer.
>
>      THE WITNESS:  The half-life is determined by the matrix that PFOA is in, water or air or whatever. For all inten[t]s and purposes, our scientific knowledge is that PFOA does not degrade in the environment.  So there is no half-life.
>
> BY MR. ALTMAN:
>
> Q:    Okay.  So it could last hundreds of years in the environment.
>
> A:    Yes.

seeks an order deeming admitted the matter addressed in Request to Admit No. 30.  *Id*.

DuPont defends its response to this request, first explaining that "extremely persistent" is not a recognized or quantifiable standard of measurement.  *Memo. Contra*, p. 6.  DuPont also contends that Dr. Buck's testimony refutes Little Hocking's assertion that DuPont failed to undertake reasonable inquiry.  *Id*.  Specifically, DuPont explains that Dr. Buck's testimony that there is no half-life of PFOA in the environment means that PFOA's persistence cannot be calculated.  *Id*.  Accordingly, DuPont argues that it appropriately admitted that PFOA can remain in the environment "for some period of time" because testimony about its potential persistence, such as hundreds of years, is speculative.  *Id*.

Little Hocking replies that DuPont did not object to the term "extremely persistent" when responding to this request and therefore has waived that objection.  *Reply*, p. 5 (citing *Wagner v. St. Paul Fire & Marine Ins. Co.*, 238 F.R.D. 418, 423 (N.D. W.V. 2005) (implying a waiver provision from Rules 33 and 34 to Rule 36 and concluding that

---

Q:    Okay.  And that's my understanding, but that's immaterial.  I just want to make sure I have your understanding.

I've even heard it said it could last over a thousand years in the environment.

MR. ATKINSON:  Objection to form.

BY MR. ALTMAN:

Q:    Would you agree with that or disagree?

A:    Based on what I know, sure, it could last for a thousand years in places in the environment, yes.

*Exhibit J*, PAGEID# 6118-6119, attached to *Motion to Determine Sufficiency*.

"arguments against a request for admission not first raised in a
timely objection are waived, unless the objecting party can show good
cause for their failure"). Little Hocking goes on to argue that
DuPont is bound by Dr. Buck's testimony even though DuPont now tries
to characterize that testimony as "speculative." *Id*. at 5-6 (citing
*Smith v. Gen'l Mills*, No. C2 04-705, 2009 WL 2525462, at *6 (S.D. Ohio
Apr. 13, 2009)). Little Hocking also contends that DuPont's argument
in this regard misses the mark because Request No. 30 does not address
the half-life of PFOA. *Id*. at 6.

Although it is true that a corporation may be bound by the
testimony of its Rule 30(b)(6) designee, that testimony is not
"tantamount to a judicial admission" and "does not unequivocally bind"
the corporation to the exclusion of other evidence that may explain or
explore that testimony. *See*, *e.g.*, *Coupled Prods., LLC v. Component
Bar Prods.*, No. 09-12081, 2011 U.S. Dist. LEXIS 122579, at *8 n.1 (6th
Cir. Oct. 24, 2011).[8] Moreover, although DuPont's response did not
specifically object to the phrase "extremely persistent," DuPont did
deny the request "as phrased[,]"and went on to admit to a "general
awareness that PFOA remains in the environment and human blood for
some period of time." Under these circumstances, the Court cannot say
that DuPont's answer did not "fairly respond to the substance of the
matter[.]" Fed. R. Civ. P. 36(a)(4). Accordingly, as it relates to

---

[8] To the extent that Little Hocking suggests that *Smith*, 2009 WL 2525462, at
*6, stands for a contrary proposition or otherwise dictates a favorable
resolution of the present dispute, the Court rejects that suggestion. *See
Id*. at *5-6 (distinguishing the testimony of a witness as an individual and
as a Rule 30(b)(6) witness and concluding that "the fact that individually
named witnesses have testified concerning a subject is generally no obstacle
to a 30(b)(6) deposition on the same subject").

Request to Admit No. 30, the *Motion to Determine Sufficiency* is **DENIED**.

### 2.   Request to Admit No. 31

In Request to Admit No. 31, Little Hocking asked DuPont to admit that "the Washington Works Facility started using C8 as early as 1951." *Exhibit A*, PAGEID# 5975, attached to *Motion to Determine Sufficiency*.  In response, DuPont admitted "that certain manufacturing processes at the Washington Works Facility are believed to have used some amount of AFPO [sic] as early as 1951.  DuPont denies the remaining allegations in this Request." *Id*.

Little Hocking argues that DuPont's response is impermissibly vague and insufficient, especially in light of the fact that a study, funded by and relied upon by DuPont, indicates that the Washington Works facility used C8 in 1951. *Motion to Determine Sufficiency*, p. 7 (citing *Exhibit K* (article entitled, "A Methodology for Estimating Human Exposure to Perfluoroctanoic Acid (PFOA):  A Retrospective Exposure Assessment of a Community (1951-2003)," stating that the Washington Works facility "was established in the 1940s and began using APFO in some of its manufacturing processes in 1951"), PAGEID# 6121, 6123, attached thereto).  Little Hocking seeks an order deeming admitted the matter addressed in Request to Admit No. 31. *Id*.

In response, DuPont notes that, although the "Definitions" section of Little Hocking's second set of requests to admit uses the terms PFOA, APFO and C8 interchangeably, these are different compounds. *Memo. Contra*, pp. 6-7.  Based on this definition (*i.e.*, that the term "C8" also refers to C8, APFO and PFOA), DuPont contends

23

that Request to Admit No. 31 is an inaccurate statement. *Id*. at 7. Accordingly, DuPont argues that it appropriately admitted that APFO was used in certain manufacturing processes at Washington Works as early as 1951. *Id*.

Little Hocking replies that, in light of DuPont's failure to earlier register its objection, DuPont has waived any objection based on Little Hocking's definitions; in any event, Little Hocking argues, the terms "APFO" and "C8" are used interchangeably. *Reply*, p. 6 (citing *Exhibit 11*, PAGEID# 6121, attached to *Motion to Determine Sufficiency*). Little Hocking also argues that DuPont should have, at a minimum, admitted without qualification that APFO was used as early as 1951. *Id*.

This Court agrees that DuPont's response does not unequivocally admit to the use of APFO as early as 1951. However, the Court is not persuaded that the issue as formulated by Little Hocking, *i.e.*, referencing C8 instead of APFO, should be deemed admitted. To that extent, the *Motion to Determine Sufficiency* is **DENIED**. However, DuPont is **ORDERED** to serve an amended answer consistent with Rule 36(a) and the foregoing within ten (10) days of the date of this *Opinion and Order*.

### 3. Request to Admit No. 32

Request to Admit No. 32 asked DuPont to admit that "leachate[9]

---

[9] "Leachate is the liquid that has percolated through soil or other medium." *Charter Twp. of Van Buren v. Adamkus*, 965 F. Supp. 959, 965 n.5 (E.D. Mich. 1997) (citing Webster's New Int'l Dictionary 1282 (3d ed. 1986)).

from the Landfill Leachate Ponds[10] is released to the Ohio River through Washington Works No. 1 Outfall." *Exhibit A*, PAGEID# 5976, attached to *Motion to Determine Sufficiency*. In response, DuPont admitted that "since November 1997 leachate from 'the local landfill,' that being the landfill adjacent to the Washington Works Facility, may be discharged into the Ohio River through Washington Works No. 1 Outfall. DuPont denies the remaining allegations in this Request." *Id*.

     Little Hocking objects to this response, particularly because one of its Rule 30(b)(6) witnesses, Andrew Hartten, testified that, since 1997, leachate from the Local Landfill has been piped to Outfall 001 and into the Ohio River. *Motion to Determine Sufficiency*, p. 8 (citing *Exhibit L*, PAGEID# 6153-6155 (excerpt of deposition of Andrew Hartten, taken on January 10, 2013), attached to *Motion to Determine Sufficiency*). Specifically, Mr. Hartten testified as follows:

> Q: All right. Leachate from the local landfill is, I think, the last topic for the morning.
>
> Are you aware that since at least 1997 the leachate from the local landfill was piped through the West Virginia facility to Outfall 001 for discharge into the Ohio River?
>
> A: Yes. I- -
>
> Q: You testified about that?
>
> A: That pipe was installed under my direction.
>
> Q: And that was done in 1997; correct?
>
> A: Yes.

---

[10] Little Hocking explains that the term "Landfill Leachate Ponds" refers to "the Local Landfill— a source of C8 associated with the Washington Works facility." *Motion to Determine Sufficiency*, p. 8.

Q:   And the leachate from the local landfill is not treated to remove C-8 before it goes into the river; correct?

A:   No.

Q:   No, what?

A:   It is not treated.

Q:   Oh, I thought you meant no, it is treated.  Okay.  No, it's not treated.

*Exhibit L*, PAGEID# 6153-6154, attached to *Motion to Determine Sufficiency*.  Little Hocking therefore seeks an order deeming admitted the matter addressed in Request to Admit No. 32.  *Motion to Determine Sufficiency*, p. 8.

DuPont denies that its response to Request to Admit No. 32 is evasive because Little Hocking inaccurately identified the "local landfill" as "Landfill Leachate Ponds." *Memo. Contra*, p. 7.  DuPont further defends its use of the phrase "may be discharged" "because there is not a constant stream of effluent discharged through the No. 1 Outfall that is attributable to the local landfill." *Id*.  According to DuPont, this request to admit inaccurately suggests that all the leachate stored in the local landfill is discharged through the No. 1 Outfall and that DuPont's correct description of the discharge process is not evasive. *Id*.  DuPont also disagrees that Mr. Hartten's testimony, *i.e.,* that leachate from the local landfill has been and is discharged through the No. 1 Outfall, contradicts DuPont's response to Request to Admit No. 32. *Id*.

Little Hocking replies that DuPont's *Memo. Contra* offers an untimely objection that the "local landfill" cited in the disputed request was misidentified, resulting in a waiver of this objection.

26

*Reply*, p. 7. Little Hocking goes on to insist that DuPont's use of the phrase "may be discharged" is evasive in light of Mr. Hartten's testimony. *Id*. Little Hocking therefore asks that the matter addressed in Request to Admit No. 32 be deemed admitted. *Id*. at 7-8.

In the view of the Court, DuPont's clarification of the "local landfill" as provided in its response was improper. However, DuPont's explanation for its use of the phrase "may be discharged," instead of simply admitting that leachate is discharged or is released or is piped through, etc., is unpersuasive. To the extent that Little Hocking seeks an order deeming admitted the matter addressed in Request to Admit No. 32, the *Motion to Determine Sufficiency* is **DENIED**. However, DuPont is **ORDERED** to serve an amended answer to this request consistent with the foregoing and Rule 36(a)(4) within ten (10) days of the date of this *Opinion and Order*.

### 4.   Request to Admit No. 42

In Request to Admit No. 42, Little Hocking asked DuPont to admit that, "through at least 2001, no permits issued to DuPont's Washington Works Facility authorizing releases of pollutants to the environment contained specific limitations on the amount of C8 that was allowed to be released to the environment." *Exhibit A*, PAGEID# 5979, attached to *Motion to Determine Sufficiency*. DuPont responded:

> Objection. "Pollutants" is an undefined term and is both vague and ambiguous. DuPont admits that PFOA has not been regulated by the United States Environmental Protection Agency or West Virginia Department of Environmental Protection and that neither agency imposed any regulations on PFOA or other PFCs. DuPont denies the remaining allegations in this Request.

*Id*.

Little Hocking complains that DuPont's failed to indicate whether any such permits contained limits on C8 emissions was improper inlight of DuPont's earlier agreement to such restrictions "in a consent decree with the West Virginia Department of Environmental Protection in November 2001." *Motion to Determine Sufficiency*, pp. 8-9 (citing *Exhibit M*, PAGEID# 6160, ¶ 4 ("Consent Order Issued Pursuant to Articles 5 and 12, Chapter 22 and Article 1, Chapter 16 of the West Virginia Code," dated November 14, 2001, finding that, *inter alia*, "[n]o permits issued to DuPont authorizing releases of pollutants to the environment contain specific limitations on the amount of C8 that may be released to the environment") ("Consent Order"), attached thereto). Little Hocking therefore seeks an order deeming admitted the matter addressed in Request to Admit No. 42. *Id*. at 9.

DuPont defends its objection because Little Hocking did not define the term "pollutants," which is subject to different meanings and interpretations. *Memo. Contra*, p. 7. According to DuPont, its answer also appropriately addressed the remainder of the request to admit which addresses historic discharge limitations on PFOA. *Id*. at 7-8. DuPont also disagrees that the Consent Order requires DuPont's admission because (1) the "Findings of Fact" in that Consent Order are not binding on DuPont in this action (citing *Exhibit M*, PAGEID# 6157 ("DuPont retains the right to controvert in any other proceedings . . . the validity of the findings of fact and conclusions of law set forth herein."); (2) the Consent Order's language does not remedy the vagueness of Little Hocking's request; and (3) the request to admit unfairly implies that "at some point *after* 2001, PFOA was subject to

discharge limitations by state or federal agencies." *Id*. (emphasis in original).

Little Hocking replies that DuPont's objection to the term "pollutants" does not justify DuPont's failure to respond to the substance of this request, including the narrower request regarding the issuance of permits. *Reply*, p. 8. Little Hocking also takes the position that the Consent Order establishes "the narrower matter—-that C8 was not regulated via environmental permits[.]" *Id*.

This Court agrees that DuPont's response improperly failed to address the issue of permits. However, the Court concludes that DuPont's objection to the term "pollutants" was not inappropriate, a conclusion that even Little Hocking appears to concede. *Motion to Determine Sufficiency*, pp. 8-9; *Reply*, p. 8. Thus, to the extent that Little Hocking seeks an order deeming admitted the matter addressed in Request to Admit No. 42, the *Motion to Determine Sufficiency* is **DENIED**. However, DuPont is **ORDERED** to serve an amended answer to this request consistent with the foregoing and Rule 36(a)(4) within ten (10) days of the date of this *Opinion and Order*.

### F.    REQUEST FOR FEES AND EXPENSES

Little Hocking also seeks an award of its reasonable expenses, including attorneys' fees, incurred in connection with the *Motion to Determine Sufficiency*. Rule 36 provides that "Rule 37(a)(5) applies to an award of expenses." Fed. R. Civ. P. 36(a)(6). Where answers to requests for admission are insufficient and where a court deems admitted the matters addressed in the requests or orders the responding party to serve amended answers, the court must award

reasonable expenses, including attorneys' fees, unless the "nondisclosure, response, or objection was substantially justified" or "other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A)(ii), (iii). This "substantially justified" standard is satisfied if "'there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'" *Doe v. Lexington-Fayette Urban County Gov't*, 407 F.3d 755, 765 (6th Cir. 2005) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S. Ct. 2541, 101 L. Ed. 2d 490 (1988)). *See also* Fed. R. Civ. P. 37 advisory comm. note (1970) (stating that where "the dispute over discovery between the parties is genuine," "the losing party is substantially justified in carrying the matter to court"). In addition, if a motion is granted in part and denied in part, it is within the Court's discretion to apportion reasonable expenses for the motion. Fed. R. Civ. P. 37(a)(5)(C).

Here, the Court deemed admitted certain of the disputed requests and ordered DuPont to serve amended answers to certain additional disputed requests. To the extent that the Court ruled in favor of Little Hocking in this regard, the Court nevertheless concludes that an award of expenses is unwarranted. More specifically, DuPont's responses or objections were substantially justified in light of the record and language used in the requests in this case. In addition, the Court is not persuaded that DuPont acted in bad faith or otherwise intended to improperly evade substantive response to Little Hocking's requests. Under these circumstances, the Court therefore concludes that an award of expenses would be unjust. Accordingly, to the extent

that Little Hocking seeks expenses, including attorneys' fees, the *Motion to Determine Sufficiency* is **DENIED.**

      **WHEREUPON**, *Little Hocking's Motion to Determine the Sufficiency of Responses to Requests for Admission*, Doc. No. 197, is **GRANTED in part and DENIED in part** consistent with the foregoing.


April 26, 2013               *s/Norah McCann King*
                              Norah M$^c$Cann King
                     United States Magistrate Judge