**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **THE LITTLE HOCKING WATER ASSOCIATION, INC.,** | : | **Case No. 2:09-cv-1081** |
| Plaintiff | : | **Judge Smith** |
| v. | : | **Magistrate Judge King** |
| **E.I. DU PONT DE NEMOURS AND COMPANY**, | : | |
| Defendant | : | |

**LITTLE HOCKING'S REPLY IN SUPPORT OF ITS MOTION FOR SANCTIONS RELATING TO DUPONT'S VIOLATIONS OF COURT ORDERS REQUIRING DUPONT TO PROVIDE EXPERT DISCLOSURES**

I. Introduction.

The Opposition (Doc. 221) fails to justify DuPont's ongoing decision to deprive Little Hocking of full expert disclosures for nearly 4 months and dodge compliance with 3 Court Orders. In fact, the Opposition gives unvarnished testimony to the willfulness of this misconduct by, e.g.: (a) cloaking a rogue case devoid of reasoning as the "Sixth Circuit position"; (b) asserting that months of Little Hocking's written and verbal extrajudicial efforts did not provide DuPont with enough time to comply; and, (c) blaming Little Hocking for relying on DuPont's actual words and conduct (including the statement of its spokesman) as evidence that compliance was not forthcoming. Next, as if to emphasize its disdain for the rule requiring that *opinions and facts* be disclosed, DuPont attaches a *non-compliant* third set of disclosures, Doc. 221-4. After these months of waiting and the expenditure of tens of thousands of dollars of time attempting to secure compliance, the only adequate remedy is to bar any expert testimony by the 3 witnesses at issue and order that DuPont pay Little Hocking's compliance-related costs.

II. The Opposition ignores the plain text of the Rule and case law from this District.

DuPont's contention that its refusal to provide expert opinions and facts does not violate multiple Court orders and Rule 26(a)(2)(C) flies in the face of the plain meaning of the Rule and case law from around the country, ***including from this District***. The weight and quality of this authority give lie to DuPont's accusation that Little Hocking cited a "rogue" opinion and ignored the "Sixth Circuit position" on Rule 26(a)(2)(C). Indeed, it is DuPont which ignores the legal standards of this District and it is DuPont that relies on the "rogue" decision – a decision that ignores the actual requirements of the Rule.

The Opposition is premised on the fallacy that DuPont satisfied Rule 26(a)(2)(C) by providing only the general subjects about which the experts may testify. The Rule could not be any clearer — both the "subject matter" *and* "the facts and opinions" must be provided. *See*, Fed. R. Civ. P. 26(a)(2)(C)(i),(ii). DuPont's February 15 (Doc. 209-2) and April 2nd disclosures (Doc. 209-6) provide no facts and no opinions for Dr. Barton and Dr. Rickard and fail to provide any factual support for Mr. Hartten. The Opposition does not contend, let alone offer any proof, to the contrary.

To sustain its argument, DuPont had to dispose of the *Meredith* decision — a well-reasoned decision on Rule 26 (a)(2)(B) and (a)(2)(C) that is consistent with decisions from this District.[1] The reasoning of *Meredith* is unassailable since it simply applies the text of the Rule. The decision requires that opinions *and* facts be provided, so does the Rule. *Meredith v. Int'l Marine*, 2011 WL 1466436, * 7. It is not the rogue decision of some runaway judge, as DuPont contends. In fact, case law from this District requires that *both* the facts *and* opinions be provided. *See*, *Burgess v. Fischer*, 2012 WL 1856586, * 1 (S.D. Ohio March 2, 2012) (the court-ordered Rule 26(a)(2)(C) disclosures shall "include the facts and opinions to which each [Rule

[1] *Meredith v. International Marine Underwriters*, 2011 WL 1466436 (D. Md. April 18, 2011).

26(a)(2)(C) expert] is expected to testify”); *see also*, *Bishop v. Children’s Center for Developmental Enrichment*, 2011 WL 6752421, * 3-4 (S.D. Ohio December 23, 2011) (holding that disclosure which only stated the subject matter violated Rule 26(a)(2)(C) because the rule also requires opinions and facts). To be clear, this District has already rejected DuPont’s position that the precise opinions and factual support need not be provided for Rule 26(a)(2)(C) experts. ***Of course, the Opposition ignores this authority.***

Indeed, case law from throughout the country (save the one rogue *Chesney* opinion upon which DuPont relies) interprets Rule 26(a)(2)(C) as the court did in *Meredith*:

(1) *Skyward Bound Ranch v. City of San Antonio*, 2011 WL 2162719, * 2-4 (W.D. Tex. June 1, 2011) (excluding experts because the disclosures only contained general statements of subjects and no opinions or facts);

(2) *Pineda v. City and County of San Francisco*, 280 F.R.D. 517, 522-523 (N.D. Cal. 2012) (finding that expert disclosure violated Rule 26(a)(2)(C) because the disclosure did not “include any facts on which their non-retained experts will rely… [and did not] state the opinions to which [the experts] are expected to testify”);

(3) *Davis v. GEO Group*, 2012 WL 882405, * 3 (D. Colo. March 15, 2012) (expert disclosures that only stated subject matter violated Rule 26(a)(2)(C) because opinions and facts must also be provided);

(4) *Tyler v. Pacific Indemnity Co.*, 2013 WL 183931, * 2-3 (E.D. Mich. Jan. 17, 2013) (granting motion to exclude expert testimony for failure to provide opinions and facts);

(5) *Brown v. Providence Medical Center,* 2011 WL 4498824, * 1 (D. Neb. September 27, 2011) (finding that disclosures that failed to provide the opinions did not comply with Rule 26(a)(2)(C)); and

(6) *Jennings v. Dow Corning Corp*., 2013 WL 625591, * 1-2 (E.D. Mich. Feb. 20, 2013) (granting motion to strike expert where untimely expert disclosure failed to provide facts and opinions).

Again, the Opposition fails to cite any of this authority.

In fact, 4 cases that ***DuPont (rather curiously) cites in its Opposition*** interpret the Rule in precisely the same manner as *Meredith*— the decisions require that the actual facts and opinions, and not just subjects, be provided. *See*, *Barack v. American Honda Motor*, 2013 WL 1688873, *1, 4 (D. Conn. April 18, 2013) (making clear that disclosures which provide nothing other than subject matter, *i.e*., fail to provide actual facts and opinions, are woefully deficient and violate Rule 26(a)(2)(C)); *Estate of Stuller v. United States*, 2013 WL 1287402, * 2-3 (C.D. Ill. March 27, 2013) (holding that expert disclosure met requirements because expert affidavit set forth both opinions and supporting facts); *Currie v. Cundiff*, 2012 WL 2120002 (S.D. Illinois June 11, 2012) (making clear that facts and opinions must be provided – the expert disclosure in that case included both); and, *Saline River Properties, LLC v. Johnson Controls*, 2011 WL 6031943, * 6 (E.D. Mich. Dec. 5, 2011) (disclosure found to be sufficient only because facts and opinions, unlike here, were actually disclosed—e.g., it was disclosed that the experts would testify that an environmental assessment was conducted in accordance with administrative obligations that were identified in the disclosure). ***DuPont's contention that the Second and Seventh Circuits only require a disclosure of the subject matter (and not facts and opinions) is meritless, just like DuPont's characterization of the "Sixth Circuit position."***[2]

[2] *Downey v. Bob's Discount Furniture Holdings, Inc*., 633 F.3d 1, 8 (1st Cir. 2011) does not reach the level of detail necessary in a Rule 26(a)(2)(C) disclosure.

This leaves DuPont clinging to the *Chesney* decision[3], which is — as demonstrated above — the true anomaly in Rule 26(a)(2)(C) case law. To follow *Chesney* would be to ignore the plain text of the Rule by allowing parties to escape from the requirement to provide facts and opinions. Moreover, *Chesney* contains no analysis of Rule 26(a)(2)(C)'s requirement to provide opinions and facts and, with all due respect, was wrongly decided. Therefore, it is clear that DuPont violated multiple Court orders and the expert disclosure requirements.

III. <u>Little Hocking made substantial extrajudicial efforts to obtain the expert disclosures to which they were entitled nearly 4 months ago.</u>

The Opposition makes the false claim that Little Hocking did not make adequate efforts to coax DuPont to comply with this Court's orders. Little Hocking made the following efforts (which are ignored by the Opposition) to obtain proper disclosures and avoid filing a Rule 37 motion: (1) informally raising DuPont's deficient expert disclosures during the February 21 status conference; (2) writing a detailed March 1, 2013 letter following up on the deficient disclosures; (3) writing another letter (on March 15, 2013), stating that DuPont was, at the very least, required to provide a summary of the opinions and facts upon which each opinion was based for each expert; (4) again informally raising DuPont's deficient expert disclosures during the March 26 status conference with the Court; and, (5) sending yet another letter (on April 16, 2013) providing a comprehensive analysis of the deficiencies in DuPont's April 2, 2013 expert disclosures. (*Newman Decl*., Doc. 209-1, ¶ 9, 10, 12, 14, and 17.[4]

The April 16 letter (Doc. 209-7) asked DuPont to provide its position on the deficiencies (that had lingered since February 15) by April 18 and to correct the disclosure by no later than April 22, ***since DuPont was in violation of multiple Court Orders and the disclosures were***

[3] 2011 WL 2550721 (E.D. Tenn., June 21, 2011).

[4] In contrast to Little Hocking's providing a declaration, DuPont did not provide sworn evidence to support its key assertions, including that it was purportedly considering taking another crack at the disclosures when Little Hocking filed the Motion for Sanctions. Of course, DuPont's 3rd round of disclosures, which as discussed below still violate the Rule, simply underscore why sanctions should be imposed.

***already months overdue***. (*April 16 letter*, Doc. 209-7). DuPont did ***not*** honor the request to let Little Hocking know DuPont's position by April 18 and did ***not*** cure the deficiencies by April 22. Instead, DuPont sent an April 19 email stating that DuPont somehow still needed to review the disclosures issue. (Doc. 209-1, ¶ 18). There was nothing more until the April 25 email saying that DuPont still felt its disclosures were appropriately made. (*Newman Decl*., Doc. 209-1, ¶ 19). After that representation, Little Hocking filed its Motion. ***Writing three particularized letters, raising the issue during two status conferences, and then giving DuPont additional time to correct violations of multiple Court orders far exceed any duty Little Hocking had to extra-judicially resolve this issue.*** Under DuPont's view of the law, Little Hocking should have perhaps "begged" for compliance. But the case law is clear; exhausting extrajudicial avenues of resolution does not require a party to "*beg* for reasonable discovery…" *Star Lock Systems, Inc. v. Dixie-Narco, Inc*., 2006 WL 2265886, *1 (S.D. Ohio Aug. 8, 2006).

Finally, DuPont's attack on Little Hocking for relying on the statement of Mr. Paul exemplifies DuPont's indifference to the prejudice caused by non-compliance. Little Hocking ***should*** be able to rely on statements of opposing counsel indicating that DuPont feels its expert disclosures were appropriately made — especially when such statements are made after the extensive extrajudicial attempts by Little Hocking that are described above. Further delay in filing was not warranted, but Mr. Paul's words confirmed the futility of further discussion.

IV. The Opposition ignores the sanctions factors, an analysis of which makes clear that exclusion and an award of costs are warranted.

The Opposition entirely ignores the Sixth Circuit sanctions factors for order violations.[5]

[5] These factors include: (1) whether the noncompliance was willful or due to inability to comply; (2) whether the adverse party was prejudiced by the noncompliance; (3) whether the sanctioned party appreciated (or was "worried") that the violation could lead to potential sanctions; and (4) whether less drastic sanctions were considered. *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067, 1079 (6th. Cir. 1990). What is more, DuPont does not provide any evidence to demonstrate that its failure to provide proper disclosures was substantially justified or

The Opposition does nothing to rebut the facts that show DuPont's violations were willful. Indeed, DuPont's misrepresentations of case law (i.e., misrepresentations to this Court about the so-called "Sixth Circuit position") go beyond proper advocacy. So do the Opposition's attempts to attack Little Hocking for relying on statements by DuPont's lead attorney. DuPont's behavior evidences a flagrant disregard for this Court's Orders, the Civil Rules, and Little Hocking's discovery rights. Further, DuPont provides no evidence that it was unaware that non-compliance could lead to sanctions. The multiple court orders provide evidence to the contrary. Nor was any evidence provided that less harsh sanctions can still make Little Hocking whole.

Particularly egregious is DuPont's attempt to sidestep the mounting, cumulative prejudice to Little Hocking caused by DuPont's discovery abuse. Little Hocking had to unjustifiably expend substantial time and financial resources futilely attempting to obtain expert disclosures (that should be automatic) it was entitled to in February, 2013. The failure to make proper disclosures — along with DuPont's failure to provide other basic discovery directly related to these opinions[6]— all have the intended consequence of ensuring that this case will not be tried on the merits. The sanctions sought are the only way to correct the injustice perpetrated.

Nor does DuPont's third failure to provide proper disclosures (Doc. 221-4) alleviate the prejudice to Little Hocking. (Opposition, Doc. 221 p. 8) (suggesting that Little Hocking's concerns are "laid to rest" by the 5/24/13 disclosures). Even if DuPont had now made disclosures that satisfied the expert disclosure rules (which DuPont has not), Little Hocking has still been unable for nearly 4 months to: (a) consult with non-testifying experts about the unidentified

harmless. *See*, Fed. R. Civ. P. 37(c)(1). In fact, the record on prejudice and willfulness demonstrates that DuPont's behavior was not substantially justified and has irreparably harmed (absent exclusion and costs) Little Hocking.

[6] e.g. Little Hocking was forced to compel ***DuPont to admit that DuPont's own documents were authentic***, *see 4/26/13 Order*, Doc. 206 p. 7-9, DuPont failed to provide pumping data that DuPont clearly knew about long before it purportedly "found" the media in April 2013 (indeed, the "found" CDs was offered to the Department of Justice in 2005), and DuPont has committed ongoing violations of the February 19 Order, which will be the subject of an extensive motion for sanctions.

opinions and facts, (b) secure rebuttal experts to rebut the unidentified opinions, (c) identify in fact discovery or otherwise facts that corroborate the opinions or their bases, and (d) rebut the unidentified opinions and their factual bases. (Doc. 209-1, ¶ 21).

What is worse, the 3rd set of disclosures (Doc. 221-4) still does not satisfy the requirement to identify the actual opinions and facts. DuPont's latest attempt at a proper disclosure for Dr. Barton states that "…Dr. Barton may opine on the properties of PFOA that may be relevant to the measurement of PFOA in the atmosphere, and air modeling and dispersion as it relates to Little Hocking's Wellfields and facilities." (Doc. 221-4 p. 11(using Clerk's blue pagination)).[7] Little Hocking is left to guess what properties of PFOA Ms. Barton believes are relevant and what opinion on air measurement of PFOA in the atmosphere, air modeling, and dispersion Ms. Barton intends to offer. In short, the actual opinion is not identified.

Further, the May 24, 2013 disclosure (Doc. 221-4) for Rickard is devoid of any actual opinion. First, the Rickard disclosure states that Rickard will testify that "…DuPont acted reasonably and appropriately in reviewing, assessing, and responding to the literature and scientific data regarding potential health and environmental effects of exposure to PFOA." (Doc. 221-4 p. 8 (using Clerk's blue pagination)). However, the disclosure does not identify what data and literature Rickard is going to opine about or what DuPont did to review, assess, or respond to the unnamed literature that was so reasonable. What is more, the Rickard disclosure states, for the second "opinion" that Rickard will testify "…DuPont's decisions regarding PFOA were

[7] The other purported opinion for Dr. Barton is so vague as to be meaningless. *See*, Doc. 221-4, p. 10, using Clerk's pagination ("Dr. Barton may opine that the air modeling performed by DuPont for Washington Works, including air sampling and modeling of PFOA, was conducted reasonably, reliably, and in a scientifically acceptable and appropriate manner."). For example, there is no detail regarding what the models, according to Ms. Barton, show, including about migration of PFOA. Indeed, because Ms. Barton's proffered "opinion" is so vague, Little Hocking simply has no idea what Ms. Barton intends to say about the models other than they were "reasonable," "acceptable," and "appropriate."

made to a reasonable degree of scientific certainty…" (*Ibid.*). There is no description as to which decisions Rickard is talking about, leaving Little Hocking to guess which of thousands of PFOA-related decisions Rickard may opine about. The disclosure rules are designed to eliminate such prejudicial guesswork.

Mr. Hartten's May 24, 2013 disclosures (Doc. 221-4) also still violate Rule 26(a)(2)(C). First, many of the "facts" underlying his opinions are not facts at all; they are themselves opinions. For example, Mr. Hartten supports his opinion that the "migration of any such PFOA releases would not have occurred through underground water migration" with the following "fact": "[t]here is no subriver pathway from Washington Works to the Wellfields." (Doc. 221-4, p. 3-4 (using the Clerk's blue pagination)). This clearly violates Rule 26(a)(2)(C)'s requirement of a "summary of *the facts and opinions* to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C) (emphasis added). The factual "disclosures" are further deficient in that they refer to thousands of pages of information without identifying which facts Mr. Hartten actually relies on, such as by referring to "[f]actual information identified in the November 3, 2005 Memorandum of Understanding (MOU) between DuPont and the United States Environmental Protection Agency (EPA)…" The factual information "identified" in the MOU documents spans thousands of pages. To be sure, this type of indiscriminate fact dump violates Rule 26(a)(2)(C). *See, e.g., Nicastle v. Adams County Sheriff's Office,* 2011 WL 1674954, at *1 (Dist. Colo. May 3, 2011) ("Designation of such a prodigious volume of material does not constitute a summary of the facts to which the witnesses will testify within the meaning and requirements of Rule 26(a)(2)(C).").

Further, it is now clear that opinions for Rickard and Barton, which are not identified in any meaningful way, relate to the perceived ***reasonableness*** of DuPont's actions. (Doc. 221-4, p.

8 and 10 using Clerk's pagination). Opinions about "reasonableness" relate to standard of care and therefore were certainly formed in anticipation of litigation. Such opinions should have been the subject of a full 26(a)(2)(B) report. *See, Meredith*, 2011 WL 1466436, at *4 (An expert "must submit a report regarding any opinions formed specifically in anticipation of the litigation…"). Being without such full reports for months further demonstrates the severity of the prejudice.

Finally, DuPont's contention (Doc. 221 p. 6) that prior depositions of the witnesses cure the prejudice is a sham. DuPont did not provide a shred of evidence that anything in the depositions formed the factual basis of any opinion. If there were such opinions and facts, DuPont had a duty to disclose them. It did not. The expert disclosure rules exist so that Little Hocking does not have to guess.

Hence, DuPont remains in violation of the expert disclosure requirements. Resources have been irreparably exhausted fighting to obtain what 3 orders have commanded. ***A 4th order requiring DuPont to follow the Rule will not undo the prejudice from the willful violations at bar.*** Given the number of times DuPont has violated the Orders, its misrepresentations about legal standards, and the undisputed prejudice to Little Hocking as a result of these ongoing violations, this Court should exclude the subject testimony and award costs to Little Hocking.

Respectfully Submitted,

s/ D. David Altman
D. David Altman (0021457), *Trial Attorney*
Justin D. Newman (0080968)
Amy M. Hartford (0074836)
D. DAVID ALTMAN CO., L.P.A.
15 East 8th Street, Suite 200W
Cincinnati, Ohio 45202
(513) 721-2180

**CERTIFICATE OF SERVICE**

I hereby certify that on June 10, 2013 I caused a true and correct copy of the foregoing LITTLE HOCKING'S REPLY IN SUPPORT OF ITS MOTION FOR SANCTIONS RELATING TO DUPONT'S VIOLATIONS OF COURT ORDERS REQUIRING DUPONT TO PROVIDE EXPERT DISCLOSURES to be filed electronically. Notice of this filing will be sent to all parties in this case by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Justin D. Newman
*Attorney for the Plaintiffs*