IN THE UNITED STATES DISRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


THE LITTLE HOCKING
WATER ASSOCIATION, INC.,
          Plaintiff,


     v.                               Case No. 2:09-CV-1081
                                      JUDGE SMITH
                                      MAGISTRATE JUDGE KING
E.I. DUPONT DE NEMOURS
AND COMPANY,
          Defendant.


<u>OPINION AND ORDER</u>

     This matter is before the Court for consideration of the
Plaintiff's *Motion to Broaden Sanctions Discovery*, Doc. No. 226.   For
the reasons that follow, the motion is denied without prejudice to
renewal, if warranted, following defendant's production of additional
information as specified herein.

**I.**

     Plaintiff Little Hocking Water Association ["Little Hocking"]
commenced this action under the Resources Conservation and Recovery
Act ["RCRA"], 42 U.S.C. § 6972, claiming violations by Defendant E.I.
DuPont DeNemours & Co. ["DuPont"] with respect to its waste disposal
practices. The parties have engaged in extensive discovery in this
case.  The present motion concerns Little Hocking's request to expand
the scope of Court-ordered discovery with regard to DuPont's alleged
failure to preserve and alleged destruction of certain well-production
data.

On May 10, 2013, Little Hocking conducted the deposition of John T. Myers, a DuPont Rule 30(b)(6) designee, "related to [DuPont's] failure to preserve or the destruction of the pre-2006 pumping records maintained on back-up tapes as well as on the Vantage system and/or VAX computer . . . ." *Motion to Broaden Sanctions Discovery*, Doc. No. 226, at 4. According to Little Hocking, the deposition revealed "additional information related to the preservation and/or destruction of the well pumping data . . . ." *Id.* at 5. Specifically, Little Hocking argues that, according to Myers, at least twenty (20) CDs containing well pumping data "are missing or have been destroyed." *Id.* at 9. In addition, "Myers confirmed that DuPont disposed of VAX literature in a 'dumpster' as part of the process of shutting down the VAX computer system (during this litigation)." *Id.*, citing *Myers Deposition* at 213-17, attached as Exhibit 5 to *Motion to Broaden Sanctions Discovery*, Doc. No. 226. According to Little Hocking, these facts, when combined with other evidence,[1] "demonstrate[] that DuPont has failed to preserve and [has] destroyed evidence." *Id.* at 9.

Little Hocking seeks leave to conduct "full discovery on when the duty to preserve the well data and the VAX/Vantage machine (and related literature) attached." *Id.* Little Hocking also seeks leave to inquire into the scope of hold orders issued in this case and in

---

[1] In particular, Little Hocking asserts that Myers' desktop work station, which housed well data, cannot be located and refers to the purported dismantling of the VAX/Vantage computer during this litigation and the testimony of another Rule 30(b)(6) deponent regarding the well-pumping data. *Motion to Broaden Sanctions Discovery*, Doc. No. 226, p. 9.

prior C8-related litigation,[2] as well as "who received such hold orders, whether such hold orders were, in fact, followed, and [] the circumstances that caused the CDs and zipped data to either be covered by the hold order(s) or to have escaped the hold order(s)." *Id.* at 9-10.  In addition, Little Hocking seeks leave to conduct discovery of "whether DuPont's document retention policy requires or required the preservation of well data or whether a duty to preserve well data flows from statutory or regulatory obligations." *Id.* at 10.

DuPont opposes the motion, arguing that Little Hocking simply seeks to elicit the same discovery sought prior to the Myers deposition and which this Court prohibited.  According to DuPont, it has engaged in "extensive efforts to locate, extract, and convert [well pumping] data to a readable [and] usable format . . . ." *Memorandum contra*, Doc. No. 236, p. 4.  DuPont has spent nearly six hundred (600) hours relative to the identification, extraction and conversion of the historic well pumping data (*See Catanzaro Declaration*, Exhibit 6 to *Memorandum contra*, at ¶¶ 18, 19) and has produced documents eleven times on this subject.  *Id.* at 5.

DuPont also takes issue with Little Hocking's characterization of Myers' deposition testimony.  According to DuPont, the "VAX literature" that was "destroyed" consisted merely of an instruction manual for the computer system, which was outdated.  *See Myers Testimony*, Exhibit 2, at 216-17, attached as Exhibit 2 to *Memorandum contra*, Doc. No. 236.  DuPont represents that many of the allegedly

---

[2]Little Hocking refers to the *Tennant* case, the *Leach* case, a Department of Justice grand jury subpoena, and state court litigation involving Little Hocking.  *Motion to Broaden Sanctions Discovery*, Doc. No. 226, at 9 n.9.

"missing" CDs are duplicates and argues that their non-production is not tantamount to spoliation of evidence. *Id.* at 98.

## II.

Before addressing the merits of the present motion, the Court briefly reviews the pertinent procedural history. Little Hocking earlier sought to compel production of documents related to the alleged destruction of well pumping data (pre-2006) as well as documents related to the alleged destruction of technology used to read this historical data (specifically, the Vantage system and/or VAX computer).[3] This Court concluded that such information is discoverable under Fed. R. Civ. P. 26(b)(1). *Opinion and Order*, Doc. No. 169, at 66. In an earlier *Motion to Compel*, Doc. No. 161, Little Hocking sought discovery of the details related to DuPont's preservation, or lack thereof, of historical data and related technology in order to determine whether a basis for sanctions exists. This Court granted Little Hocking's request "to the extent that [Little Hocking] seeks discovery related to the failure to preserve or the destruction of the pre-2006 pumping records maintained on back-up tapes as well as the Vantage system and/or VAX computer . . . ." *Opinion and Order*, March 25, 2013, Doc. 194, p. 28. The Court later ordered DuPont to provide Rule 30(b)(6) testimony regarding media that might contain the data sought by Little Hocking and which was located in "storage." *Order*, April 26, 2013, Doc. No. 208, p. 9.

---

[3] As previously explained, from the mid-1980s through early 2012, DuPont used an internal software system known as "Vantage", which operated only on a VAX computer, which computer has not been produced since the 1990s. Vantage stored back-up data on digital tapes in VAX form and stored limited data on the VAX hard drive. *See Opinion and Order*, Doc. 194, at 22-23, citing *Declaration of Mr. Myers*, at ¶¶ 9-12.

Prior to the Myers deposition, the Court conferred with counsel as to Little Hocking's desire "to inquire into DuPont's duty to preserve [the pre-2006 pumping records] including the circumstances surrounding holds that were issued (or should have been issued) in connection with DuPont's governmental filing obligations or with other litigation involving DuPont." *Order*, Doc. No. 214. The Court concluded that these lines of inquiry went "far beyond" the scope of discovery previously authorized by the Court and would not be permitted. *Id.*

In its present *Motion to Broaden Sanctions Discovery*, Doc. No. 226, Little Hocking highlights certain information elicited during the Myers deposition. First, Little Hocking points to Myers' experience with one particular "old" tape (from the 1980s) containing well-pumping data which, at some point in the early 2000s, Myers attempted to read using a particular piece of equipment. *Myers Testimony*, Exhibit 5, pp. 163-64, attached to *Motion to Broaden Sanctions Discovery*, Doc. No. 226. This tape is referred to as the "degraded" tape. Little Hocking implies that spoliation has occurred because, in an earlier declaration, Myers referred to the degradation of "tapes." *Motion to Broaden Sanctions Discovery* , Doc. No. 226, p. 6. Myers testified on deposition, however, that "multiple" tapes were never found to be degraded and back-up tapes were not needed to retrieve well-pumping data because CDs had been used for over ten years to store data. *Myers Testimony*, Exhibit 5, pp. 166-70. Myers also testified that the CDs were burned on a CD-ROM attached to his computer. *Id.* at 173, 176.

Little Hocking also points to a 2005 letter to the Department of Justice in which DuPont offered ten years of CDs containing data as far back as 1996. *See* Exhibit 6, *Denvir letter*, attached to *Motion to Broaden Sanctions Discovery*, Doc. No. 226. According to Little Hocking, since Myers testified that he created CDs through at least 2010 (both original and duplicates), at least thirty CDs with well pumping data must have existed at some point in time. *Motion to Broaden Sanctions Discovery*, Doc. No. 226, p. 7.

Little Hocking also points to Myers' testimony that he carried only 10 to 13 of his CDs in a "bag" to a new work station upon his reassignment. *Myers Testimony*, Exhibit 5, pp. 100-101.  Thus, Little Hocking argues, "at least 20 CDs are unaccounted for." *Motion to Broaden Sanctions Discovery*, Doc. No. 226, p. 7.  Little Hocking also points to Myers' testimony that he developed a way to provide "zipped sets" of well pumping data to a computer, and this zipped data did not require a VAX machine or Vantage system to be read. *Myers Testimony*, Exhibit 5 attached to *Motion to Broaden Sanctions Discovery*, Doc. No. 226, pp. 110-14.

In opposition, DuPont points out that Little Hocking has been aware of the existence of Myers' CDs since it obtained the DuPont letter to the Department of Justice in June 2011. *Exhibit 5* attached to *Memorandum contra*, Doc. No. 236, ¶¶ 14-19. As noted *supra*, DuPont maintains that the only VAX literature that was "destroyed" was an instruction manual. *Memorandum contra*, Doc. No. 236, pp. 7-8.  DuPont also disputes the need for further discovery on the issue of CDs and zip files because many of the CDs are duplicates and because the

process for conversion and translation of data to a usable format has taken hundreds of hours to accomplish. *Id.* at 8. Little Hocking points out, however, that well pumping data for the years 1981-1993 and 2002-2003 have still not been produced. *See Status Report*, Doc. No. 233, p. 2. According to Little Hocking, conversion of data from CDs to a usable format can be done in about two hours, as DuPont's designee testified. *See* Exhibit 5, pp. 167-68, attached to *Motion to Broaden Sanctions Discovery*, Doc. No. 226.

### III.

Citing *Major Tours, Inc. v. Colorel*, No. 05-3091, 2009 WL 2413631 (D.N.J. August 4, 2009), Little Hocking argues that Myers' testimony constitutes a "preliminary showing" of spoliation by DuPont. DuPont takes issue with Little Hocking's reliance on *Major Tours*, arguing that it "has not been accepted by the Sixth Circuit and . . . [it] did not articulate the factors or standard that would substantiate a 'preliminary' showing of spoliation and [it] provides no guidance on the appropriate analysis for this case." *Memorandum contra*, Doc. No. 236, p. 9.

The court in *Major Tours* considered whether the plaintiff in that case had made a preliminary showing of spoliation sufficient to require the production of litigation hold letters. The court observed the rule that, although hold letters are generally privileged, such letters become a proper subject of discovery if spoliation occurs. *Id.*, 2009 WL 2413631 at *2, citing *Keir v. UnumProvident Corp.*, No. 02-cv-8781, 2003 WL 21997747 (S.D.N.Y. August 22, 2003); *Zubulake v. UBS Warburg, LLC*, 229 F.R.D. 422 (S.D.N.Y. 2004); *Cache LaPoudre*

*Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614 (D. Colo. 2007).  In concluding that a preliminary showing of spoliation had been made in that case, the court focused on the Rule 30(b)(6) testimony of a defense witness who stated that, although he had probably been instructed by attorneys to preserve email communications regarding claims of alleged racial discrimination, he did not in fact preserve anything.  Another Rule 30(b)(6) witness testified that she did not know what a hold letter was.  In the court's view, such evidence established that the defendants "did not fulfill their role of preserving all relevant documents." *Major Tours*, 2009 WL 2413631 at *4.  Based on that preliminary showing of spoliation, the court ordered the production of hold letters.

As DuPont points out, whether a "preliminary showing" of spoliation has been made is necessarily a fact-based inquiry.  "As in any case raising issues of spoliation, the court's determination of the scope of the duty to preserve is a highly fact-bound inquiry that involves considerations of proportionality and reasonableness." *Tracy v. NVR, Inc.*, No. 04-cv-6541L, 2012 WL 1067889 at *9 (W.D.N.Y. March 26, 2012) (citations omitted).  DuPont argues that, given the millions of documents that have already been produced and the nature of this case, DuPont's actions have been reasonable and proportional. *Memorandum contra*, Doc. No. 236, p. 10.

Based on the present record, the Court is not convinced that a preliminary showing of spoliation has been made.  Rather, Little Hocking's contention that information relevant to the issues in this case has been destroyed is speculative at best.  First, with respect

8

to VAX literature purportedly disposed of in a "dumpster," DuPont represents that this literature was simply the VAX instruction manual. *Myers Testimony*, Exhibit 2, pp. 216-17, attached to *Memorandum contra*, Doc. No. 236.  There is no evidence to contradict this representation.  Second, with respect to the alleged "degraded nature" of the tapes used to preserve well-pumping data, Myers testified that only one tape was in fact degraded and that the damage occurred when the tape broke.  According to Myers, the reason that information was transitioned to CDs for storage was because of the problem that he encountered when that single tape broke.  *Id.* at 96, 166.

Finally, with respect to the alleged missing CDs, DuPont represents that many of the CDs were duplicates.  The fact that duplicate CDs exist does not necessarily lead to the inference advanced by Little Hocking, *i.e.*, that other CDs have been destroyed. There is no testimony in the record of destruction of CDs and Little Hockings' suspicions in that regard are not supported by evidence. Therefore, the Court concludes that Little Hocking has not made a preliminary showing of spoliation.

The critical issue, which remains unanswered, is whether DuPont can produce primary or secondary well-pumping data for the years 1981-1993 and 2002-2003.  The Court has already ruled that this information is discoverable and must be produced.  It is only after a determination of what information actually can be produced will this Court ever be in a position to determine whether spoliation occurred. On the present record, the Court declines to broaden sanctions-related discovery.

Clearly, many hours of effort have been expended on the production of well pumping data; however, more work remains to be done.  DuPont must specify whether data exist for the years identified *supra* and, if so, on what media such data are stored. Information and documents that cannot be accounted for must be specifically identified; duplicate files or documents must be identified as such.  In addition, DuPont must provide, by affidavit or declaration, a statement of its ability, including an estimate of man-hours required, to translate into a readable format remaining well pumping data not yet produced.

As for the alleged missing CDs and information that may be stored on zip files, the record awaits further development.  At this juncture, Little Hocking's motion is denied without prejudice to renewal pending further production by DuPont in accordance with the foregoing.

**IV.**

Little Hocking's *Motion to Broaden Sanctions Discovery,* **Doc. No. 226** is **DENIED** without prejudice to renewal, if warranted, following DuPont's production of additional information in compliance with the foregoing.

DuPont is **DIRECTED** to file, within **seven (7) days** of the date of this *Opinion and Order*, a statement reflecting whether it can produce primary or secondary well-pumping data for the years 1981-1993 and 2002-2003.  DuPont shall specify whether data exists for these years and, if so, the medium or media on which such data are stored. DuPont shall also identify data or documents that remain unaccounted

10

for; duplicates of information or documents shall be identified as such. DuPont shall also provide, by affidavit or declaration, a statement of its ability, including an estimate of man-hours required, to translate into a readable format data not yet produced.

**IT IS SO ORDERED.**

September 20, 2013                              *s/  Norah McCann King*
                                               Norah McCann King
                                               United States Magistrate Judge

11