IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION


THE LITTLE HOCKING WATER ASSN., INC.,

      Plaintiff,


    vs.                       Civil Action 2:09-cv-1081
                                 Judge Smith
                                 Magistrate Judge King


E.I. DU PONT DE NEMOURS & CO.,

      Defendant.


<u>OPINION AND ORDER</u>


      This matter is before the Court on plaintiff *Little Hocking's Motion for Sanctions Relating to DuPont's Violations of Court Orders Requiring DuPont to Provide Expert Disclosures*, Doc. No. 209 ("*Motion for Sanctions*").

I.    **BACKGROUND**

      On September 8, 2010, the Court established dates by which expert disclosures were to be made. *Continued Preliminary Pretrial Order*, Doc. No. 35. The Court also specified that the disclosure of specially retained experts must "conform[] to F. R. Civ. P. 26(a)(2), unless otherwise agreed to by the parties or ordered by the Court." *Id*. at 2. Addressing experts who are not specially retained, the Court directed that "the party must provide (1) the identity of the expert, (2) an articulation of the substance of the testimony expected to be provided by the expert and (3) the bases of any opinion expected

1

to be offered by the expert." *Id*. Since then, the expert disclosure dates have been extended on a number of occasions. *See*, *e.g.*, *Order*, Doc. No. 50; *Order*, Doc. No. 86. On June 1, 2012, the Court again extended those dates and specified that "[t]he reports" of all experts must conform to "the provisions of Fed. R. Civ. P. 26(a)(2). . . ." *Order*, Doc. No. 93, p. 1. *See also Order*, Doc. No. 142, p. 1.

On February 15, 2013, DuPont identified and designated two witnesses pursuant to Fed. R. Civ. P. 26(a)(2)(B). *Exhibit 2*, PAGEID#: 6413-6414, attached to *Motion for Sanctions* ("DuPont's February 15th disclosures"). DuPont also identified seven other experts who were not specially retained, including the following three individuals:

> 1. Cathie Barton, current DuPont employee. It is anticipated that Ms. Barton may offer testimony related to air emissions and dispersions, as well as certain properties of PFOA as relevant to the measurement of PFOA in the atmosphere.
>
> *       *       *       *
>
> 3. Andrew Hartten, current DuPont employee. It is anticipated that Mr. Hartten may offer testimony about environmental conditions around Washington Works, about PFOA emissions and data on and offsite around Washington Works and about fate and transport issues.
>
> *       *       *       *
>
> 5. Robert W. Rickard, Ph.D., current DuPont employee. It is anticipated that Dr. Rickard may offer testimony about toxicology, epidemiology and related scientific testimony surrounding PFOA exposure and/or the absence of scientific evidence demonstrating causal connection between PFOA exposure and any adverse health effects, including the state of DuPont's knowledge on these subjects over time.

*Id*. at PAGEID#: 6414-6415.

Following DuPont's February 15th disclosures, a dispute arose when Little Hocking advised DuPont that these disclosures were deficient. *See Declaration of Justin D. Newman*, ¶¶ 10-12, attached as *Exhibit 1* to *Motion for Sanctions* ("*Newman Declaration*").  On March 18, 2013, the Court clarified the disclosure requirements:

> As it relates to non-specially retained experts, Rule 26(a)(2) has been amended to require the disclosure of the information required by this Court in its September 8, 2010 *Continued Preliminary Pretrial Order*. Fed. R. Civ. P. 26(a)(2)(C).  Although the Court, in its most recent orders, referred to "reports" of non-specially retained experts, it has never been the intention of the Court to require of non-specially retained experts the reports required by Fed. R. Civ. P. 26(a)(2)(B) of specially retained experts. Rather, in connection with its non-specially retained experts, defendant must disclose to plaintiff "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; . . . and a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).  However, the Court also expects defendant to make this disclosure by the date established by the Court.

*Order*, Doc. No. 190, p. 2.

According to Little Hocking, DuPont did not cure alleged deficiencies in its February 15th disclosures.  *Newman Declaration*, ¶ 14.  On March 26, 2013, the Court ordered, *inter alia*, DuPont "to produce, no later than April 2, 2013, the disclosures relevant to its non-specially retained experts, consistent with the provisions of Fed. R. Civ. P. 26(a)(2)(C)."  *Order*, Doc. No. 196, p. 1.

On April 2, 2013, DuPont provided supplemental disclosures of its Rule 26(a)(2)(C) designees, including Catherine A. Barton, Ph.D., Robert Rickard, Ph.D, and Andrew Hartten (collectively, "DuPont's three experts").  *Exhibit 6*, attached to *Motion for Sanctions* ("DuPont's April 2nd disclosures").  Little Hocking advised DuPont that

these disclosures were again deficient. *Exhibit* 7, attached to *Motion for Sanctions*. Shortly thereafter, Little Hocking filed the *Motion for Sanctions*, seeking sanctions in the form of attorneys' fees and costs under Fed. R. Civ. P. 37(b)(2) and the exclusion of expert testimony under Fed. R. Civ. P. 37(c)(1) in connection with DuPont's alleged failure to comply with the Court's order and disclosure requirements. DuPont opposes the *Motion for Sanctions*, *E.I. Du Pont de Nemours and Company's Response in Opposition to Little Hocking's Motion for Sanctions (Dkt. No. 209)*, Doc. No. 221 ("*DuPont's Opposition*"), and Little Hocking has filed a reply, *Little Hocking's Reply in Support of Its Motion for Sanctions Relating to DuPont's Violations of Court Orders Requiring DuPont to Provide Expert Disclosures*, Doc. No. 228 ("*Reply*").

## II.     STANDARD

Rule 37(b) of the Federal Rules of Civil Procedure authorizes the imposition of sanctions in connection with a party's "fail[ure] to obey an order to provide or permit discovery." Fed. R. Civ. P. 37(b)(2)(A). A court may issue such orders as are just, including, *inter alia*, orders excluding evidence. Fed. R. Civ. P. 37(b)(2)(A)(ii). In determining the appropriate sanction, the United States Court of Appeals for the Sixth Circuit has directed trial courts to consider four factors:

> (1) whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the [] party's failure to cooperate in discovery; (3) whether the [] party was warned that failure to cooperate could lead to the [sanction]; and (4) whether less drastic sanctions were imposed or considered[.]

4

*Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 366-67 (6th Cir. 1997) (internal quotation marks omitted).

Under Rule 26(a)(2) of the Federal Rules of Civil Procedure, a party must disclose the identity of any expert witness whose testimony may be offered at trial. Fed. R. Civ. P. 26(a)(2). Moreover, a party must supplement its disclosures and other discovery responses "in a timely manner." Fed. R. Civ. P. 26(e). Failure to comply with Rule 26(a) or (e) may result in the imposition of sanctions under Rule 37(c)(1) unless the violation was harmless or substantially justified. Fed. R. Civ. P. 37(c)(1). *See also Vaughn v. City of Lebanon*, Nos. 99-6670, 99-6672, 99-6673, 99-6675, 99-6676, 18 F. App'x 252, at *263 (6th Cir. Aug. 16, 2001) (citations omitted). The burden of proving harmlessness or substantial justification rests on the potentially sanctioned party. *Roberts ex rel. Johnson v. Galen of Va., Inc.*, 325 F.3d 776, 782 (6th Cir. 2003) (citations omitted). Harmlessness "is key under Rule 37, not prejudice." *Sommer v. Davis*, 317 F.3d 686, 692 (6th Cir. 2003). "[T]he advisory committee's note to Rule 37(c) 'strongly suggests that "harmless" involves an honest mistake on the part of a party coupled with sufficient knowledge on the part of the other party.'" *Vaughn*, 18 F. App'x at *264 (quoting *Vance v. United States*, 182 F.3d 920 (6th Cir. 1999)).

Finally, Rule 37 permits a party to file a discovery-related motion provided that the party includes a certification that the movant has in good faith conferred or attempted to confer with the noncompliant party. Fed. R. Civ. P. 37(a)(1). Similarly, the local rules of this Court provide that "[o]bjections, motions, applications,

and requests relating to discovery shall not be filed in this Court, under any provision in Fed. R. Civ. P. 26 or 37, unless counsel have first exhausted among themselves all extrajudicial means for resolving the differences." S. D. Ohio Civ. R. 37.1. In the case *sub judice*, Little Hocking represents that "it is clear that, despite extensive extrajudicial attempts by Little Hocking, DuPont does not intend to cure its violations of multiple court orders and Rule 26." *Newman Declaration*, ¶ 20. DuPont disagrees, contending that the *Motion for Sanctions* is premature in light of the parties' extrajudicial communications. *DuPont's Opposition*, pp. 2, 7-9 (citing, *inter alia*, *Exhibit 3*, attached thereto). In support, DuPont argues that, had Little Hocking pursued discussions prior to filing its motion, "Little Hocking would have known that DuPont was considering a second supplemental disclosure. Little Hocking, however, attempted to take that decision away from DuPont by moving for sanctions." *Id*. at 8-9 (citing *Exhibit 4* (unsigned second supplemental disclosures), attached thereto). After considering the parties' arguments and reviewing the related filings, it is apparent that the parties have reached impasse on this matter. The Court will therefore consider the merits of the *Motion for Sanctions*.

## III. DISCUSSION

Little Hocking argues that DuPont's April 2nd disclosures are deficient under Rule 26(a)(2)(C) as to non-specially retained experts Dr. Barton, Dr. Rickard and Mr. Hartten. As an initial matter, Rule 26 of the Federal Rules of Civil Procedure distinguishes between the disclosure requirements for specially retained and non-specially

retained experts.  More specifically, a witness who is "retained or specially employed to provide expert testimony" must provide "a written report – prepared and signed by the witness[.]"  Fed. R. Civ. P. 26(a)(2)(B).  This report must contain the following information:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

*Id.*

Parties expecting to proffer an expert witness who is not "retained or specially employed to provide expert testimony" must provide the following:

> (i)  the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
>
> (ii)  a summary of the facts and opinions to which the witness is expected to testify.

Fed. R. Civ. P. 26(a)(2)(C).

As Little Hocking seems to concede, *see*, *e.g.*, *Motion for Sanctions*, pp. 1-6, 8-9; *Reply*, pp. 2-5, 9,[1] Rule 26(a)(2)(C) applies

---

[1] Little Hocking insists in a footnote that it "does not concede" that these experts are "exempt from the [full] reporting requirement[,]" *see Motion for Sanctions*, p. 3 n.1. *See also Reply*, pp. 9-10 (asserting that the positions

to defense experts Drs. Barton and Rickard and Mr. Hartten.  Rule 26(a)(2)(B) applies only to experts who are retained or specially employed for the purpose of providing expert opinion testimony.  Noting that the April 2nd disclosures reflect that its three experts expect to "testify regarding limited, historic PFOA-related matters[,]" DuPont argues that this opinion testimony arises from the experts' involvement in events giving rise to the litigation and not from their role as specially retained experts.  *DuPont's Opposition*, pp. 3-4.  This Court agrees that Rule 26(a)(2)(C) applies to defense experts Drs. Barton and Rickard and Mr. Hartten.

The parties' substantive dispute boils down to the degree of detail required of the disclosures relating to non-specially retained experts.  Little Hocking takes the position that Rule 26(a)(2)(C) requires "a 'precise description' of the opinions, rather than 'vague generalizations,' and a statement of the facts upon which the opinions are based."  *Motion for Sanctions*, p. 3 (quoting *Meredith v. Int'l Marine Underwriters*, No. JKB-1-837, 2011 WL 1466436, at *7 (D. Md. April 18, 2011)).  Little Hocking goes on to argue that *Meredith* is "consistent with decisions from this District" and "simply applies the text of the Rule [26(a)(2)(C)]."  *Reply*, pp. 2-3 (citing *Burgess v. Fischer*, No. 3:10-cv-24, 2012 WL 1856586, at *1 (S.D. Ohio Mar. 2, 2012); *Bishop v. Children's Ctr. For Dev. Enrichment*, No. 2:08-cv-766, 2011 WL 6752421, at *3-4 (S.D. Ohio Dec. 23, 2011)).  According to Little Hocking, this precedent and other decisions require that "*both*

---

of Drs. Barton and Rickards related to reasonableness "relate to the standard of care" and "should have been the subject of a full 26(a)(2)(B) report"). However, Little Hocking does not develop this argument.

the facts *and* opinions be provided." *Id.* (citing, *inter alia*, *Jennings v. Dow Corning Corp.*, No. 12-12227, at *1-2 (E.D. Mich. Feb. 20, 2013); *Tyler v. Pacific Indemnity Co.*, No. 10-cv-13782, 2013 WL 183931 (E.D. Mich. Jan. 17, 2013)).

DuPont disagrees that "precise" details are required, arguing that *Meredith* is an anomaly that is inconsistent with "[t]he prevailing view in the [United States Court of Appeals for the] Sixth Circuit" and decisions from other circuits. *DuPont's Opposition*, pp. 4-6. DuPont contends that "'the simple statement of who was going to testify as to what'" is sufficient under Rule 26(a)(2)(C). *Id.* at 4-5 (quoting *Saline River Prop.*, 2011 WL 6031943, at *7; citing *Chesney v. Tennessee Valley Auth.*, Nos. 3:09-cv-09, 3:09-cv-48, 3:09-cv-54, 3:09-cv-64, 2011 WL 2550721 (E.D. Tenn. June 21, 2011)). Therefore, DuPont argues, *Meredith* improperly mandates exhaustive detail that "is more in line with the fact and opinion and disclosure requirements for a detailed expert report under Rule 26(a)(2)(B)(i) and (ii)." *Id.* at 5-7.

After reviewing the arguments of the parties and cited authority, the Court concludes that the parameters established in *Chesney* and *Saline River*, decisions from within this circuit, more clearly conform with the plain language of Rule 26(a)(2)(C). That rule requires the disclosing party to state (1) "the subject matter" of the testimony; and (2) "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)(i), (ii). The advisory committee note accompanying this provision explains the level of detail required of disclosures made pursuant to Rule 26(a)(2)(C):

This disclosure is considerably less extensive than the report required by Rule 26(a)(2)(B). Courts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have.

This amendment resolves a tension that has sometimes prompted courts to require reports under Rule 26(a)(2)(B) even from witnesses exempted from the report requirement. An (a)(2)(B) report is required only from an expert described in (a)(2)(B).

Fed. R. Civ. P. 26(a)(2)(C) advisory committee's note (2010 amendments).

At least two district courts within this circuit have addressed the requirements of Rule 26(a)(2)(C) and have not required "undue detail" of such witnesses. For example, in *Chesney*, the plaintiffs moved to exclude the testimony of several experts, arguing that the defendant's disclosures, including the following, failed to comply with Rule 26(a)(2)(C):

> • Cassandra L. Wylie, Manager of TVA's Atmospheric Modeling and Analysis Group, 400 West Summit Hill Drive, Knoxville, Tennessee 37902. In accordance with Rule 26(a)(2)(C), TVA states that Ms. Wylie may be called to testify about air monitoring activities conducted as a result of the Kingston coal ash release. She also may be called to testify about the results of air monitoring for particulate matter (PM) at Kingston compared to regional PM levels and to the Environmental Protection Agency PM standards. Finally, she may be called to testify about the correlation between regional PM and power generation at TVA's Kingston Fossil Plant and Bull Run Fossil Plant.
>
> • David L. Bowling, Jr., Manager of TVA's River Forecast Center, 400 West Summit Hill Drive, Knoxville, Tennessee 37902. In accordance with Rule 26(a)(2)(C), TVA states that Mr. Bowling may be called to testify about water flows and elevations in the Emory, Clinch, and Tennessee River portions of the Watts Bar Reservoir at various locations and times.

*Chesney*, 2011 WL 2550721, at *3 n.3 (internal quotation marks omitted). In denying a request to exclude witnesses based on these

and other similar disclosures, the United States District Court for the Eastern District of Tennessee concluded that "these disclosures provide summaries of the expected expert and factual testimony from each witness and that they comply with Rule 26(a)(2)(C)." *Id*. at *3. *See also Saline River*, 2011 WL 6031943, at *10 (relying on *Chesney* and stating that "the simple statement of who was going to testify as to what was sufficient"). Considering that Rule 26(a)(2)(C) does not require "undue detail," Little Hocking's argument that this subsection demands "a precise description" of the opinions of non-specially retained experts is therefore not well-taken.

Little Hocking's suggestion that requiring "a precise description" "is consistent with decisions from this District[,]" *Reply*, p. 2 (citing *Burgess v. Fischer*, No. 3:10-cv-24, 2012 WL 1856586 (S.D. Ohio Mar. 2, 1012); *Bishop v. Children's Ctr. For Dev. Enrichment*, No. 2:08-cv-766, 2011 WL 6752421 (S.D. Ohio Dec. 23, 2011)), is likewise unpersuasive. In *Burgess*, for example, the plaintiffs' disclosures relating to treating physicians stated only that each physician examined or treated plaintiff and that each physician "may be called to testify regarding Mr. Burgess' injuries and damages." *Burgess*, 2012 WL 1856586, at *1. Characterizing these disclosures as insufficient under Rule 26(a)(2)(C), the *Burgess* court ordered plaintiffs to provide supplemental disclosures that "include the facts and opinions to which each treating physician is expected to testify." *Id*. *Burgess* does not stand for the proposition that Rule 26(a)(2)(C) requires a "precise description" of the anticipated testimony.

Moreover, *Bishop* is factually distinguishable from this litigation.  In that case, the defendants failed to disclose an expert witness, Dr. Rebecca Morrison, in accordance with the court's scheduling order.  *Bishop*, 2011 WL 6752241, at *2.  The first time that the defendants alerted the plaintiffs that the defendants intended to use Dr. Morrison as an expert witness was nine months after the disclosure deadline when the defendants provided a proposed pretrial order that "contained a statement of Rebecca Morrison's qualifications as an expert witness."  *Id.*  The *Bishop* court concluded that the defendants had failed to comply with Rule 26(a)(2)(C), which "requires the disclosure of the subject matter on which Dr. Morrison is expected to testify and a summary of the facts and opinions to which she is expected to testify."  *Id.* at *3.  *Bishop*, which merely tracks the language of Rule 26(a)(2)(C), cannot be read as imposing a duty to provide a "precise description" of the anticipated testimony.

Little Hocking's assertion that other decisions from district courts within this circuit "interpret[] Rule 26(a)(2)(C) as the court did in *Meredith*" is similarly unavailing.  *Reply*, pp. 3-4 (citing, *inter alia*, *Jennings v. Dow Corning Corp.*, 2013 WL 625591 (E.D. Mich. Feb. 20, 2013); *Tyler v. Pacific Indemnity Co.*, No. 10-cv-13782, 2013 WL 183931 (E.D. Mich. Jan. 17, 2013)).  In *Jennings*, the plaintiff had added six additional treating physicians to his expert disclosures six weeks after such disclosures were due and two weeks prior to the close of discovery.  *Jennings*, 2013 WL 625591, at *1.  That untimely supplemental disclosure stated merely that the physicians "are all treaters of the Plaintiff.  It is assumed that they will testify to

the treatment of the Plaintiff. . . . [The physicians will] rebut allegations made by the Defendant as they relate to the Plaintiff's injuries, disabilities, or perceived disabilities." *Id*. (internal quotation marks omitted). The plaintiff then listed the physicians' names, addresses, and telephone numbers. *Id*. In striking the belated disclosures, the *Jennings* court determined that, although those disclosures satisfied the "subject matter" requirement of Rule 26(a)(2)(C)(i), the supplemental disclosures did not satisfy the obligation established by Rule 26(a)(2)(C)(ii) to provide "'a summary of the facts and opinions to which the witness is expected to testify.'" *Id*. at *2 (quoting Rule 26(a)(2)(C)(ii)). Nothing in *Jennings* persuades this Court that Rule 26(a)(2)(C)requires the type of detail sought by Little Hocking.

Little Hocking's reliance on *Tyler* is likewise misplaced. In *Tyler*, the plaintiff indicated immediately before the final pretrial order was filed that he intended to elicit testimony from a witness regarding the defendant's loss estimate. *Tyler*, 2013 WL 183931, at *2. The extent of the plaintiff's "disclosure" was apparently a collection of information. *Id*. at *3 (referring to interrogatories, certain documents produced in response to a specific inquiry and the defendant's loss estimate provided to the plaintiff). The *Tyler* court's decision to preclude the testimony of this witness under these circumstances does nothing to advance Little Hocking's position.

Having found that Rule 26(a)(2)(C) does not require precise descriptions or undue detail, the Court now considers the contested disclosures.

**A.    Catherine Barton, Ph.D.**

On April 2, 2013, DuPont identified Dr. Barton as a witness under Rule 26(a)(2)(C) and produced the following disclosure:

**1.    Catherine A. Barton, Ph.D. (DuPont employee)**

Dr. Barton is currently employed by DuPont and has been since 1988.  During her employment with DuPont, she worked in the DuPont Engineering and Research Technology department as an environmental engineer and was responsible for performing air modeling, air dispersion, and assessment of air emissions for the Washington Works facility.  Dr. Barton is a Registered Professional Engineer.  She received her Ph.D. in Environmental Engineering from the University of Delaware, and a Master of Science in Environmental Engineering and Bachelor of Science in Civil Engineering from Virginia Polytechnic Institute and State University.

As a part of her job responsibilities, Dr. Barton used and interpreted models related to the air dispersion of chemicals and the deposition of those chemicals on land from air emissions.  Additionally, Dr. Barton designed protocol and conducted air sampling to determine the identity and levels of PFOA that may be present in air surrounding the Washington Works facility.

Dr. Barton has been deposed by Plaintiff and will likely be asked to provide many of the same opinions she provided during the deposition.  Dr. Barton may provide testimony and opinions related to air dispersion modeling, and air monitoring that was conducted regarding the Washington Works facility, including air sampling of PFOA at Washington Works.  Dr. Barton may provide her opinion that those efforts were reasonable and accurate to a reasonable degree of scientific certainty.  Additionally, Dr. Barton's testimony may also relate to her opinions regarding modeling of land deposition of PFOA from air emissions conducted at the Washington Works facility.  As a part of her testimony, she may testify about generally-accepted principles governing air dispersion, deposition modeling, and air sampling.  Furthermore, she may give her opinions about properties of PFOA that may be relevant to the measurement of PFOA in the atmosphere, and air modeling and dispersion as it relates to the Little Hocking Well Fields and facilities.

Dr. Barton will base her opinions on her education, training, experience, research and publications, her review of scientific literature, public information, including information generated or available from government

entities, and documents made available to her through the
normal course of her employment at DuPont.

*Exhibit 6*, PAGEID# 6428-6429, attached to *Motion for Sanctions*.

Little Hocking first complains that DuPont failed to disclose any
"precise" opinion or facts supporting Dr. Barton's opinion, arguing
that the disclosure identifies only general topics. *Motion for
Sanctions*, p. 6; *Reply*, p. 2. For the reasons discussed *supra*, Little
Hocking's challenges are not well-taken. The disclosure relating to
Dr. Barton identifies the subject matter of her expected testimony and
summarizes the facts and opinions of that testimony, albeit without
undue detail, in compliance with Rule 26(a)(2)(C). *E.g., Exhibit 6*,
PAGEID#: 6429 ("Dr. Barton may provide testimony and opinions related
to air dispersion modeling, and air monitoring that was conducted
regarding the Washington Works facility, including air sampling of
PFOA at Washington Works. Dr. Barton may provide her opinion that
those efforts were reasonable and accurate to a reasonable degree of
scientific certainty.")

Little Hocking also complains that Dr. Barton's disclosure
reveals only that she "**may**" testify as to certain topics. *Motion for
Sanctions*, p. 6 (citing to *Exhibit 7*, p. 2, attached thereto)
(emphasis in the original). However, stating that a witness "may"
testify along certain lines does not warrant the exclusion of that
witness under Rule 26(a)(2)(C). *Cf. Chesney*, 2011 WL 2550721, at *3.
Certainly, however, the witness' testimony will not be permitted to go
beyond those lines. Accordingly, as it relates to the disclosures
relating to Dr. Barton, the *Motion for Sanctions* is not well-taken.

**B.    Robert Rickard, Ph.D.**

Little Hocking also argues that the following disclosure relating to Dr. Rickard does not comply with Rule 26(a)(2)(C):

**3.    Robert W. Rickard, Ph.D. (DuPont employee)**

Dr. Rickard is currently employed by DuPont and has been since 1979.  His current position is DuPont Distinguished Scientist, Health & Environmental Sciences, DuPont Safety, Health & Environment & Sustainability Excellence Center.  He has held this position since January 2007.  He received his Ph.D. in Toxicology from the University of Kentucky, a Master of Science in Microbiology, and a Bachelor of Science in Zoology from Clemson University.  Since 1983, he has been certified as a Diplomat of the American board of Toxicology and is also a member of the Society of Toxicology.  He currently serves on the Executive Committee and Board of Directors of The Hamner Institutes for Health Research, and the Board of Trustees of the International Life Sciences Institute – Health and Environmental Science Institute and is on the board of European Centre for Ecotoxicology and Toxicology of Chemicals.  He is also on the Leadership Council for the National Conversation for Public Health and Chemical Exposure which is hosted by the Centers for Disease Control and Prevention (CDC) and the Agency for Toxic Substances and Disease Registry (ATSDR).

Dr. Rickard has oversight for DuPont's global scientific competency in health and environmental sciences and is responsible for DuPont's policies, standards, and global strategy for toxicology and environmental sciences.

Dr. Rickard has been deposed by Plaintiff for two days and will likely be asked to provide many of the same opinions he provided during those depositions.  Dr. Rickard may testify about what DuPont knew and understood scientifically about PFOA during the relevant timeframes at issue in this action.  Dr. Rickard may testify about the opinions he formed while reviewing published literature and scientific data regarding potential health and environmental effects of exposure to PFOA.  Dr. Rickard may testify about DuPont's investigation into various issues related to PFOA (including its potential toxicity, human health effects from exposure, and effects on the environment and that it is his opinion that DuPont acted reasonably and appropriately and that decisions were made regarding PFOA to a reasonable degree of scientific certainty.  Dr. Rickard may also testify and provide opinions derived from historical and contemporary

16

epidemiological, health, and toxicological studies
regarding PFOA, including studies conducted by DuPont, the
Science Panel, and other research and studies conducted
about PFOA throughout the scientific community.
Additionally, Dr. Rickard may testify about the calculation
of regulatory risk assessment and the safety factors
associated with such calculations. Furthermore, he may
testify about exposure pathways for PFOA, exposure
assessments of PFOA, and the pha1macokinetic properties of
PFOA. In order to fully testify regarding these subjects,
Dr. Rickard may testify generally about toxicology and
epidemiology and their associated concepts, such as (but
not limited to) association, causation, the distinction
between an association and causation, dose-response
relationships, the strength of observed associations,
consistency of any observed associations across studies,
biological plausibility, and other scientifically accepted
criteria to evaluate causation.

Dr. Rickard's testimony will be based on his
professional experience and background, scientific
literature on PFOA, data collected related to the exposure
of the Little Hocking water customers, and environmental
data collected at or around DuPont's Washington Works
facility and Little Hocking's Well Fields.

*Exhibit 6*, PAGEID#: 6432-6434, attached to *Motion for Sanctions*.

Little Hocking complains that this disclosure fails to identify

"Dr. Rickard's precise opinions and even a single fact supporting the

opinions." *Motion for Sanctions*, p. 7. *See also Reply*, p. 2. Again,

Little Hocking's argument is not well-taken for the reasons discussed

*supra*. *See, e.g., Exhibit 6*, PAGEID#: 6433 ("Dr. Rickard may testify

about DuPont's investigation into various issues related to PFOA

(including its potential toxicity, human health effects from exposure,

and effects on the environment and that it is his opinion that DuPont

acted reasonably and appropriately and that decisions were made

regarding PFOA to a reasonable degree of scientific certainty.") As

it relates to the Dr. Rickard disclosure, the *Motion for Sanctions* is

not well-taken.

**C.    Andrew Hartten**

DuPont's disclosure relating to Mr. Hartten consists of the following:

**2.    Andrew Hartten (DuPont employee)**

Mr. Hartten is currently employed by DuPont and has been since 1988.  He is currently Project Director in the Corporate Remediation Group and manages environmental investigation, assessment, and remediation projects at Washington Works.  Mr. Hartten is a hydrogeologist and received his Bachelor of Science in Geology from the University of Maryland.  Mr. Hartten first began work at Washington Works in 1990 and has been involved in the environmental monitoring program at the Washington Works facility since that time.  He has been involved in issues related to PFOA since approximately 1991.

As a part of Mr. Hartten's job responsibilities, he has been responsible for supervising the collection and compilation of data related to the sampling of water supplies in and around the Ohio River and Washington Works.  He has also been responsible for studying the hydrogeology of the area in and around the Washington Works facility, including but not limited to the location of groundwater and groundwater flow.  Additionally, he monitors wells, the discharge of water to the Ohio River and other off-site locations, and he also has knowledge of the remediation or mitigation of PFOA released into water and soil.

Mr. Hartten has been deposed by Plaintiff for multiple days and will likely be asked to provide many of the same opinions he provided during those depositions.  Mr. Hartten may provide testimony and opinions regarding the environmental conditions surrounding the Washington Works facility, including but not limited to, the science of hydrogeology and the hydrogeology of the area at and around the Washington Works facility.  He may also testify regarding the alleged leaching of PFOA through the soil to the groundwater.  Mr. Hartten may provide his opinion that it is not scientifically reasonable that the PFOA in the Little Hocking Well Fields arrived there via water migration from emissions of the Washington Works facility.  Further, Mr. Hartten may testify that the majority of any PFOA in the Little Hocking Well Fields which might have come from the Washington Works facility would have been transmitted via air dispersion (rather than through or under the Ohio River).

18

Mr. Hartten may testify and give his opinions regarding DuPont's efforts to investigate the site and identify and assess the presence and extent of PFOA in drinking water, groundwater, surface water, and environmental media at and around the Washington Works facility and the Little Hocking Well Fields. Mr. Hartten may opine that all such efforts to investigate, identify, and assess PFOA were reasonable and accurate to a reasonable degree of scientific certainty. Additionally, Mr. Hartten may testify regarding DuPont's Corporate Remediation Group's investigation and analysis of releases of PFOA through various environmental media, including surface water, groundwater, and soil, to determine the presence, extent, and movement of PFOA at or around the Washington Works facility and Little Hocking Well Fields. Mr. Hartten may provide his opinion that the migration of any such PFOA releases would not have occurred through underground water migration.

Mr. Hartten may further testify that DuPont followed generally accepted scientific methods and practices to accurately and fully assess the hydrogeology around the Washington Works site and fully assess the leaching of chemicals through soil to a reasonable degree of scientific certainty to determine that any PFOA emissions in the Little Hocking Well Fields did not occur via underground water migration. Additionally, Mr. Hartten may testify that the Granular Activated Carbon facility is effectively removing PFOA from Little Hocking's drinking water. Furthermore, Mr. Hartten may testify that DuPont has followed the generally-accepted principles of environmental decision-making and that DuPont's efforts to investigate PFOA were reasonable and the information reported in DuPont's investigation was accurate to a reasonable degree of scientific certainty.

Mr. Hartten will base his opinion on his education, training, experience, research, information in publically available scientific literature, governmental agencies, and other sources of publicly available information, and documents produced in this litigation by DuPont and Little Hocking.

*Exhibit 6*, PAGEID#: 6430-6432, attached to *Motion for Sanctions*.

Little Hocking seeks to exclude Mr. Hartten's testimony because

this disclosure provides only "vague generalizations" and "no precise

description of what the full opinion actually is[.]" *Motion for*

*Sanctions*, pp. 7-8. *See also Reply*, p. 2. However, DuPont need not provide undue detail in its disclosures relating to non-specially retained experts. The Court concludes that the disclosure complies with Rule 26(a)(2)(C) because it identifies the subject matter upon which Mr. Hartten will testify and summarizes the facts and opinions of his expected testimony. *See* PAGEID#: 6431-32.

### D. DuPont's Request for Fees

Finally, although not filed as a separate motion, DuPont seeks fees and expenses incurred in responding to the allegedly premature *Motion for Sanctions* in addition "to responding to Little Hocking's demands when DuPont's supplemental disclosure satisfied the Rule [26(a)(2)(C)]." *DuPont's Opposition*, pp. 7-9. In support of this request, DuPont first argues that Little Hocking failed to exhaust extrajudicial means of resolving the dispute, as required by S.D. Ohio Civ. R. 37.1, before filing the *Motion for Sanctions*. *Id*. at 7-8. However, as discussed *supra*, the Court, having considered the parties' arguments and having reviewed the related filings, concludes that the parties have reached impasse on this matter. Accordingly, DuPont's request for fees and expenses on this basis is not well-taken.

DuPont next contends that the *Motion for Sanctions* is "ungrounded" and "baseless" and that "[t]he sheer disparity between the substance required by Rule 26(a)(2) and the exhaustive level of detail demanded by Little Hocking warrants an award of fees and costs in DuPont's favor." *Id*. at 9. Rule 37(a)(5)(B) authorizes an award of fees and expenses incurred in opposing a discovery motion that is denied unless "the motion was substantially justified or other

20

circumstances make an award of expenses unjust."  Here, although the Court ultimately disagreed with Little Hocking's position regarding Rule 26(a)(2)(C), the *Motion for Sanctions* was not baseless. Moreover, Little Hocking relied on legal authority analyzing Rule 26(a)(2)(C) in pursuing its motion.  Because the Court concludes that an award of sanctions would be unjust, DuPont's request for sanctions is denied.

   **WHEREUPON**, *Little Hocking's Motion for Sanctions Relating to DuPont's Violations of Court Orders Requiring DuPont to Provide Expert Disclosures*, Doc. No. 209, is **DENIED**.  DuPont's request for fees and expenses, which is not filed as a separate motion, is likewise **DENIED**.


December 27, 2013       *s/Norah McCann King*
              Norah M^cCann King
            United States Magistrate Judge