**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **THE LITTLE HOCKING WATER** | : | |
| **ASSOCIATION, INC.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No. 2:09-CV-1081** |
| **v.** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| **E.I. du PONT de NEMOURS and** | : | |
| **COMPANY,** | : | **Magistrate Judge King** |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

This matter is before the Court on Plaintiff's Objections, (Doc. 306), to the Magistrate

Judge's December 27, 2013 Opinion and Order, (Doc. 303), denying Plaintiff's Motion for

Sanctions Relating to DuPont's Violations of Court Orders Requiring DuPont to Provide Expert

Disclosures. (209). Upon independent review by the Court, and for the reasons set forth below,

Plaintiff's Objection is hereby **SUSTAINED** in part and **OVERRULED** in part.

### I.       BACKGROUND

This is a suit brought under the Resources Conservation and Recovery Act ("RCRA"), 42

U.S.C. § 6972(a)(1)(B) and Ohio common law and statutory law, claiming Defendant's waste

disposal practices at its manufacturing facility contaminated Plaintiff's wellfield, which provides

potable water to the surrounding community. The Defendant's facility is located approximately

1,300 feet down river from Plaintiff's wellfield. As described in the Magistrate Judge's Opinion

and Order, the procedural history leading to Plaintiff's Motion for Sanctions is as follows.

On September 8, 2010, the Court established dates by which expert disclosures were to

be made. (Doc. 35). The Court also specified that the disclosure of specially retained experts

1

must "conform[] to F. R. Civ. P. 26(a)(2), unless otherwise agreed to by the parties or ordered by the Court." *Id.* at 2.  Addressing experts who are not specially retained, the Court directed that "the party must provide (1) the identity of the expert, (2) an articulation of the substance of the testimony expected to be provided by the expert and (3) the bases of any opinion expected to be offered by the expert."  *Id.*  The expert disclosure dates were extended on a number of occasions. (Doc. 86).  On June 1, 2012, the Court again extended those dates and specified that "[t]he reports" of all experts must conform to "the provisions of Fed. R. Civ. P. 26(a)(2). . . ."  (Doc. 142).

On February 15, 2013, DuPont identified and designated two witnesses pursuant to Fed. R. Civ. P. 26(a)(2)(B). (Doc. 209-2).  DuPont also identified seven other experts who were DuPont employees, and so were classified as not specially retained, including the following three individuals:

> 1.      Cathie Barton, current DuPont employee.  It is anticipated that Ms. Barton may offer testimony related to air emissions and dispersions, as well as certain properties of PFOA as relevant to the measurement of PFOA in the atmosphere.
>
> 3.      Andrew Hartten, current DuPont employee.  It is anticipated that Mr. Hartten may offer testimony about environmental conditions around Washington Works, about PFOA emissions and data on and offsite around Washington Works and about fate and transport issues.
>
> 5.      Robert W. Rickard, Ph.D., current DuPont employee.  It is anticipated that Dr. Rickard may offer testimony about toxicology, epidemiology and related scientific testimony surrounding PFOA exposure and/or the absence of scientific evidence demonstrating causal connection between PFOA exposure and any adverse health effects, including the state of DuPont's knowledge on these subjects over time.

*Id.*

Following DuPont's February 15, 2013 disclosures, a dispute arose when Little Hocking

advised DuPont that these disclosures were deficient.  (Doc. 209-1).  On March 18, 2013, the

Court clarified the disclosure requirements:

> As it relates to non-specially retained experts, Rule 26(a)(2) has been amended to
> require the disclosure of the information required by this Court in its September 8,
> 2010 *Continued Preliminary Pretrial Order*.  Fed. R. Civ. P. 26(a)(2)(C).
> Although the Court, in its most recent orders, referred to "reports" of non-
> specially retained  experts, it has never been the intention of the Court to require
> of non-specially retained experts the reports required by Fed. R. Civ. P.
> 26(a)(2)(B) of specially retained experts. Rather, in connection with its non-
> specially retained experts, defendant must disclose to plaintiff "the subject matter
> on which the witness is expected to present evidence under Federal Rule of
> Evidence 702, 703, or 705; . . . and a summary of the facts and opinions to which
> the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).  However, the
> Court also expects defendant to make this disclosure by the date established by
> the Court.

(Doc. 190).

According to Little Hocking, DuPont did not cure alleged deficiencies in its February 15,

2013 disclosures. (Doc. 209-1).  On March 26, 2013, the Court ordered, *inter alia*, DuPont "to

produce, no later than April 2, 2013, the disclosures relevant to its non-specially retained experts,

consistent with the provisions of Fed. R. Civ. P. 26(a)(2)(C)." (Doc. 196).

On April 2, 2013, DuPont provided supplemental disclosures of its Rule 26(a)(2)(C)

designees, including Catherine A. Barton, Ph.D., Robert Rickard, Ph.D., and Andrew Hartten

(collectively, "DuPont's three experts").[1] Little Hocking advised DuPont that these disclosures

---

[1] **Catherine A. Barton, Ph.D. (DuPont employee)**
  Dr. Barton is currently employed by DuPont and has been since 1988.  During her employment with DuPont,
she worked in the DuPont Engineering and Research Technology department as an environmental engineer and was
responsible for performing air modeling, air dispersion, and assessment of air emissions for the Washington Works facility.
Dr. Barton is a Registered Professional Engineer.  She received her Ph.D. in Environmental Engineering from the
University of Delaware, and a Master of Science in Environmental Engineering and Bachelor of Science in Civil
Engineering from Virginia Polytechnic Institute and State University.
  As a part of her job responsibilities, Dr. Barton used and interpreted models related to the air dispersion of
chemicals and the deposition of those chemicals on land from air emissions.  Additionally, Dr. Barton designed protocol
and conducted air sampling to determine the identity and levels of PFOA that may be present in air surrounding the
Washington Works facility.
  Dr. Barton has been deposed by Plaintiff and will likely be asked to provide many of the same opinions she
provided during the deposition.  Dr. Barton may provide testimony and opinions related to air dispersion modeling, and air
monitoring that was conducted regarding the Washington Works facility, including air sampling of PFOA at Washington

Works.  Dr. Barton may provide her opinion that those efforts were reasonable and accurate to a reasonable degree of scientific certainty.  Additionally, Dr. Barton's testimony may also relate to her opinions regarding modeling of land deposition of PFOA from air emissions conducted at the Washington Works facility.  As a part of her testimony, she may testify about generally-accepted principles governing air dispersion, deposition modeling, and air sampling.  Furthermore, she may give her opinions about properties of PFOA that may be relevant to the measurement of PFOA in the atmosphere, and air modeling and dispersion as it relates to the Little Hocking Well Fields and facilities.

Dr. Barton will base her opinions on her education, training, experience, research and publications, her review of scientific literature, public information, including information generated or available from government entities, and documents made available to her through the normal course of her employment at DuPont.

**Robert W. Rickard, Ph.D. (DuPont employee)**

Dr. Rickard is currently employed by DuPont and has been since 1979.  His current position is DuPont Distinguished Scientist, Health & Environmental Sciences, DuPont Safety, Health & Environment & Sustainability Excellence Center.  He has held this position since January 2007.  He received his Ph.D. in Toxicology from the University of Kentucky, a Master of Science in Microbiology, and a Bachelor of Science in Zoology from Clemson University.  Since 1983, he has been certified as a Diplomat of the American board of Toxicology and is also a member of the Society of Toxicology.  He currently serves on the Executive Committee and Board of Directors of The Hamner Institutes for Health Research, and the Board of Trustees of the International Life Sciences Institute – Health and Environmental Science Institute and is on the board of European Centre for Ecotoxicology and Toxicology of Chemicals.  He is also on the Leadership Council for the National Conversation for Public Health and Chemical Exposure which is hosted by the Centers for Disease Control and Prevention (CDC) and the Agency for Toxic Substances and Disease Registry (ATSDR).

Dr. Rickard has oversight for DuPont's global scientific competency in health and environmental sciences and is responsible for DuPont's policies, standards, and global strategy for toxicology and environmental sciences.

Dr. Rickard has been deposed by Plaintiff for two days and will likely be asked to provide many of the same opinions he provided during those depositions.  Dr. Rickard may testify about what DuPont knew and understood scientifically about PFOA during the relevant timeframes at issue in this action.  Dr. Rickard may testify about the opinions he formed while reviewing published literature and scientific data regarding potential health and environmental effects of exposure to PFOA.  Dr. Rickard may testify about DuPont's investigation into various issues related to PFOA (including its potential toxicity, human health effects from exposure, and effects on the environment and that it is his opinion that DuPont acted reasonably and appropriately and that decisions were made regarding PFOA to a reasonable degree of scientific certainty.

Dr. Rickard may also testify and provide opinions derived from historical and contemporary  epidemiological, health, and toxicological studies regarding PFOA, including studies conducted by DuPont, the Science Panel, and other research and studies conducted about PFOA throughout the scientific community.  Additionally, Dr. Rickard may testify about the calculation of regulatory risk assessment and the safety factors associated with such calculations.  Furthermore, he may testify about exposure pathways for PFOA, exposure assessments of PFOA, and the pha1macokinetic properties of PFOA.  In order to fully testify regarding these subjects,  Dr. Rickard may testify generally about toxicology and epidemiology and their associated concepts, such as (but not limited to) association, causation, the distinction between an association and causation, dose-response relationships, the strength of observed associations, consistency of any observed associations across studies, biological plausibility, and other scientifically accepted criteria to evaluate causation.

Dr. Rickard's testimony will be based on his professional experience and background, scientific literature on PFOA, data collected related to the exposure of the Little Hocking water customers, and environmental data collected at or around DuPont's Washington Works facility and Little Hocking's Well Fields.

**Andrew Hartten (DuPont employee)**

Mr. Hartten is currently employed by DuPont and has been since 1988. He is currently Project Director in the Corporate Remediation Group and manages environmental investigation, assessment, and remediation projects at Washington Works. Mr. Hartten is a hydrogeologist and received his Bachelor of Science in Geology from the University of Maryland.  Mr. Hartten first began work at Washington Wo rks in 1990 and has been involved in the environmental monitoring program at the Washington Works facility since that time.  He has been involved in issues related to PFOA since approxin1ately 1991.

As a part of Mr. Hartten's job responsibilities, he has been responsible for supervising the collection and compilation of data related to the sampling of water supplies in and around the Ohio River and Washington Works. He has also been responsible for  studying the hydrogeology of the area in and around the Washington Works facility, including but not limited to the location of groundwater and groundwater flow.  Additionally, he monitors wells, the discharge of water to the Ohio River and other off-site locations, and he also has knowledge of the remediation or mitigation of PFOA released into water and soil.

Mr. Hartten has been deposed by Plaintiff for multiple days and will likely be asked to provide many of the  same opinions he  provided during those depositions.  Mr. Hartten may provide testimony and opinions regarding the environmental conditions surrounding the Washington Works  facility, including but  not limited to,  the science of hydrogeology and the hydrogeology of  the area at and  around the Washington Works facility.  He may  also testify regarding  the  alleged  leaching of PFOA  through the soil to the groundwater. Mr. Hartten may provide his opinion that  it  is  not  scientifically reasonable that  the  PFOA in  the  Little  Hocking Well Fields arrived  there  via  water

4

were again deficient. (Doc. 209-7). Shortly thereafter, Little Hocking filed the *Motion for Sanctions*, seeking sanctions in the form of attorneys' fees and costs under Fed. R. Civ. P. 37(b)(2) and the exclusion of expert testimony under Fed. R. Civ. P. 37(c)(1) in connection with DuPont's alleged failure to comply with the Court's order and disclosure requirements.

### A. Rule 26 Standards and Consequences for Failure to Disclose

Under Rule 26 (a)(2), which governs the disclosure of expert testimony, "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule Evidence 702, 703, or 705." Fed.R.Civ.P. 26(a)(2)(A). Rule 26(2) divides experts into two categories with different reporting requirements: Under Rule 26(a)(2)(B), the expert must provide a written report if the expert was "retained or employed specially to provide testimony or one whose duties as the party's employee regularly involve giving expert testimony;" and, under Rule 26(a)(2)(C), any expert who does not need to provide a written report under Rule 26(a)(2)(B), must provide a disclosure:

> (B) *Witnesses Who Must Provide a Written Report.* Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report— prepared and signed by the witness—if the witness is one retained or specially

---

migration from emissions of the Washington Works facility. Further, Mr. Hartten may testify that the majority of any PFOA in the Little Hocking Well Fields which might have come from the Washington Works facility would have been transmitted via air dispersion (rather than through or under the Ohio River).

Mr. Hartten may testify and give his opinions regarding DuPont's efforts to investigate the site and identify and assess the presence and extent of PFOA in drinking water, groundwater, surface water, and environmental media at and around the Washington Works facility and the Little Hocking Well Fields. Mr. Hartten may opine that all such efforts to investigate, identify, and assess PFOA were reasonable and accurate to a reasonable degree of scientific certainty. Additionally, Mr. Hartten may testify regarding DuPont's Corporate Remediation Group's investigation and analysis of releases of PFOA through various environmental media, including surface water, groundwater, and soil, to determine the presence, extent, and movement of PFOA at or around the Washington Works facility and Little Hocking Well Fields. Mr. Hartten may provide his opinion that the migration of any such PFOA releases would not have occurred through underground water migration.

Mr. Hartten may further testify that DuPont followed generally accepted scientific methods and practices to accurately and fully assess the hydrogeology around the Washington Works site and fully assess the leaching of chemicals through soil to a reasonable degree of scientific certainty to determine that any PFOA emissions in the Little Hocking Well Fields did not occur via underground water migration. Additionally, Mr. Hartten may testify that the Granular Activated Carbon facility is effectively removing PFOA from Little Hocking's drinking water. Furthermore, Mr. Hartten may testify that DuPont has followed the generally-accepted principles of environmental decision-making and that DuPont's efforts to investigate PFOA were reasonable and the information reported in DuPont's investigation was accurate to a reasonable degree of scientific certainty.

Mr. Hartten will base his opinion on his education, training, experience, research, information in publically available scientific literature, governmental agencies, and other sources of publicly available information, and documents produced in this litigation by DuPont and Little Hocking.

employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
> (ii) the facts and data considered by the witness in forming them;
> (iii) any exhibits that will be used to summarize or support them;
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by depositions; and
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

(C) *Witnesses Who Do Not Provide a Written Report.* Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:

> (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
> (ii) a summary of the facts and opinion to which the witness is expected to testify.
> Failure to follow the expert disclosure requirements may have severe consequences. Rule 37 allows a court to preclude use of that expert and that expert's information at trial, "unless the failure was substantially justified or is harmless."Fed.R.Civ.P. 37(c) (1).Rule 37 also entitles a court to enter additional or substitute sanctions or any just orders as the court sees fit. Fed.R.Civ.P. 37(b)(2)(A)(i)(vi).

Fed.R.Civ.P 26(a)(2)(B)-(C).

The Advisory Committee's Note provides that Subdivision (a)(2)(C) was added in the 2010 Amendment to Rule 26 to "resolve[] a tension that has sometimes prompted courts to require reports under Rule 26(a)(2)(B) even from witnesses exempted from the report requirement." The effect of Rule 26(a)(2)(C) is to "mandate summary disclosures of the opinions to be offered by expert witnesses who are not required to provide reports under Rule 26(a)(2)(B) and of the facts supporting those opinions." "Frequent examples" of such witness who are not required to provide a report under Rule 26(a)(2)(B) but who may "both testify as a fact witness

and also provide expert testimony under Evidence Rule 702, 703, or 705 . . . include physicians or other health care professionals and employees of a party who do not regularly provide expert testimony."

The Note distinguishes the reporting requirements under Rule 26(a)(2)(B) from Rule 26(a)(2)(C) by explaining that the Rule 26(a)(2)(C) "disclosure is considerably less extensive than the report required by Rule 26(a)(2)(B). Courts must take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have." The Note also explains that "the Rule 26(a)(2)(C) disclosure obligation does not include facts unrelated to the expert opinions the witness will present." In contrast, under Rule 26(a)(2)(B) the "facts or data" an expert must disclose in his or her report "extends to any facts or data 'considered' by the expert in forming the opinions to be expressed, not only those relied upon by the expert."

Under Rule 37, failure to comply with Rule 26(a) empowers a court to preclude use of that expert and that expert's information at trial, "unless the failure was substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1). "Rule 37 also entitles a court to enter additional or substitute sanctions or any just orders as the court sees fit. Fed.R.Civ.P. 37(b)(2)(A)(i)(vi)." *Saline River Properties, LLC v. Johnson Controls, Inc.*, No. CIV.A. 10-10507, 2011 WL 6031943, at *5 (E.D. Mich. Dec. 5, 2011). Under Rule 37(c) "the sanction is mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless." *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.*, 596 F.3d 357, 370 (6th Cir. 2010).

### B.  Plaintiff's Motion for Sanctions

In its Motion for Sanctions, Plaintiff argued that the Defendant's April 2, 2013 disclosures for the three experts designated as non-specially retained failed to meet the plain

7

language of the Rule 26(a)(2)(C). In a footnote, Plaintiff added that according to the case *Meredith v. Int'l Marine Underwriters*, No. JKB-1-837, 2011 WL 1466436,

> DuPont has the burden of demonstration that its experts are exempt from the requirement to provide a full report [under Rule 26(a)(2)(B)], e.g., that the experts did not form their opinions in anticipation of litigation. . . . Due to the fact that DuPont has failed to provide specific facts on this issue, DuPont has not met this burden. Therefore, LHWA does not concede that the three witnesses are exempt from the [Rule 26(a)(2)(B)] requirement.

In terms of whether the disclosures met the Rule 26(a)(2)(C) standard, Plaintiff argued that the plain language of Rule 26(a)(2)(C) requires "a 'precise description' of the opinions, rather than 'vague generalizations,' and a statement of the facts upon which the opinions are based." (quoting *Meredith v. Int'l Marine Underwriters*, No. JKB-1-837, 2011 WL 1466436, at *7 (D. Md. April 18, 2011)). Plaintiff contended that far from a precise description of opinions, or statement of facts, Defendant's disclosures failed to do more than provide a summary of topics, which met subsection (a)(2)(C)(i) of Rule 26, but failed to meet subsection (a)(2)(C)(ii), requiring a "summary of the facts and opinions." For instance, instead of stating Dr. Barton's opinions, Defendant's disclosure stated things like Dr. Barton may provide "opinions related to air dispersion modeling," or "may give her opinions about properties of PFOA that may be relevant to the measurement of PFOA in the atmosphere." Rather than providing a summary of facts, the disclosure stated that Dr. Barton will base her opinions on "research and publications, her review of scientific literature, public information, including information generated or available from government entities . . . ." Plaintiff argued that such responses left Plaintiff "to guess" what Defendant's experts opinions would be, and what the actual facts were on which those opinions relied.

Little Hocking goes on to argue that *Meredith* is "consistent with decisions from this District" and "simply applies the text of the Rule [26(a)(2)(C)]." (citing *Burgess v. Fischer*, No. 3:10-cv-24, 2012 WL 1856586, at *1 (S.D. Ohio Mar. 2, 2012); *Bishop v. Children's Ctr. For Dev. Enrichment*, No. 2:08-cv-766, 2011 WL 6752421, at *3-4 (S.D. Ohio Dec. 23, 2011). According to Little Hocking, this precedent and other decisions require that "*both* the facts *and* opinions be provided." *Id.* (citing, *inter alia*, *Jennings v. Dow Corning Corp.*, No. 12-12227, at *1-2 (E.D. Mich. Feb. 20, 2013); *Tyler v. Pacific Indemnity Co.*, No. 10-cv-13782, 2013 WL 183931 (E.D. Mich. Jan. 17, 2013)).

DuPont responded that "'the simple statement of who was going to testify as to what'" is sufficient under Rule 26(a)(2)(C). *Id.* at 4-5 (quoting *Saline River Prop.*, 2011 WL 6031943, at *7; citing *Chesney v. Tennessee Valley Auth.*, Nos. 3:09-cv-09, 3:09-cv-48, 3:09-cv-54, 3:09-cv-64, 2011 WL 2550721 (E.D. Tenn. June 21, 2011)). Therefore, DuPont argued, *Meredith* improperly mandates exhaustive detail that "is more in line with the fact and opinion and disclosure requirements for a detailed expert report under Rule 26(a)(2)(B)(i) and (ii)." *Id.* at 5-7. Notwithstanding its arguments in opposition to Plaintiff's motion, in its Reply brief to Plaintiff's Motion for Sanctions, (Doc. 221), Defendant included a supplemental Rule 26(a)(2)(C) disclosure, (Doc. 221-4), attached hereto and incorporated herein.

### C. Magistrate Judge's Opinion & Order

The Magistrate Judge explained that "parties' substantive dispute boils down to the degree of detail required of the disclosures relating to non-specially retained experts." The Magistrate Judge agreed with Defendant and held that:

> the parameters established in *Chesney* and *Saline River*, decisions from within this circuit, more clearly conform with the plain language of Rule 26(a)(2)(C) [than *Meredith*]. That rule requires the disclosing party to state (1) 'the subject matter'

9

of the testimony; and (2) 'a summary of the facts and opinions to which the witness is expected to testify.'  Fed. R. Civ. P. 26(a)(2)(C)(i), (ii).

Citing to the Advisory Committee Note, the Magistrate concluded that considering 26(a)(2)(C) does not require "undue detail", it therefore does not require a "precise description" of the opinions of non-specially retained expert. The Magistrate Judge noted the low bar established in this Circuit by *Chesney*[2] and *Saline* for meeting the statutory requirements of 26(a)(2)(C). *Chesney*, 2011 WL 2550721, at *3 n.3; *See also Saline River*, 2011 WL 6031943, at *10 (following *Chesney*, which it interpreted as finding "the simple statement of who was going to testify as to what was sufficient" under Rule 26(a)(2)(C)).  The Magistrate Judge then distinguished the cases on which Plaintiff relied, including *Burgess*, *Bishop*, *Jennings* and *Tyler*. While the Magistrate Judge conceded that such cases stood for the proposition that Rule 26(a)(2)(C) disclosures must state both "a summary of the facts and opinions to which the witness is expected to testify" and also "the subject matter," it disagreed that such cases required "precise descriptions or undue detail" regarding facts and opinions. Thus, after reviewing each disclosure, the Court found the disclosures sufficient.

The Magistrate Judge also noted that Little Hocking insisted in a footnote of its Motion for Sanctions that it "does not concede" that these experts are "exempt from the [full] reporting requirement[,]" of Rule 26(a)(2)(B), and that Little Hocking briefly argued in its Reply brief that since the positions of Drs. Barton and Rickards "relate to the standard of care" they should have

---

[2] " Cassandra L. Wylie, Manager of TVA's Atmospheric Modeling and Analysis Group, 400 West Summit Hill Drive, Knoxville, Tennessee 37902. In accordance with Rule 26(a)(2)(C), TVA states that Ms. Wylie may be called to testify about air monitoring activities conducted as a result of the Kingston coal ash release. She also may be called to testify about the results of air monitoring for particulate matter (PM) at Kingston compared to regional PM levels and to the Environmental Protection Agency PM standards. Finally, she may be called to testify about the correlation between regional PM and power generation at TVA's Kingston Fossil Plant and Bull Run Fossil Plant.

David L. Bowling, Jr., Manager of TVA's River Forecast Center, 400 West Summit Hill Drive, Knoxville, Tennessee 37902. In accordance with Rule 26(a)(2)(C), TVA states that Mr. Bowling may be called to testify about water flows and elevations in the Emory, Clinch, and Tennessee River portions of the Watts Bar Reservoir at various locations and times." *Chesney*, 2011 WL 2550721, at *3 n.3

been the subject of a full 26(a)(2)(B) report. The Magistrate Judge determined, however, that it would construe Little Hocking's failure to develop these arguments as a concession that Rule 26(a)(2)(C) applied exclusively to the three non-specially retained experts.

## II.     STANDARD OF REVIEW

A magistrate judge's decision on a non-dispositive matter will be reversed by the district court if it is "clearly erroneous or is contrary to the law." Fed.R.Civ.P. 72(a); 28 U.S.C. § 636(b)(1)(A). Review under Rule 72(a) provides "considerable deference to the determinations of magistrates." *In re Search Warrants Issued Aug. 29, 1994,* 889 F.Supp. 296, 298 (S.D.Ohio 1995) (quotation omitted). With respect to a magistrate judge's legal conclusions, however, "this Court must exercise its independent judgment," and it may "overturn any conclusions which contradict or ignore applicable precepts of law, as found in the Constitution, statutes, or case precedent." *Siegler v. City of Columbus*, No. 2:12-CV-00472, 2014 WL 1096159, at *1-2 (S.D. Ohio Mar. 19, 2014) (Marbley, J) (citing *Gandee v. Glasser,* 785 F.Supp. 684, 686 (S.D.Ohio 1992), *aff'd,*19 F.3d 1432 (6th Cir.1994) (quotation omitted)). It is ordinarily the case that the District Judge need not consider any argument not presented to the Magistrate Judge. *Carter v. Wilkinson,* 200999 WL 891748, *5 (S.D.Ohio March 30, 2009) (Marbley, J.).

## III.     ANALYSIS

### A.  Rule 26(a)(2)(C) Disclosure Standard

This Court agrees with the Magistrate Judge that Rule 26(a)(2)(C) disclosures must state nothing more than the "subject matter" and "a summary of the facts and opinions to which the witness is expected to testify," and that such summaries of facts and opinions do not require "undue detail," according to the Advisory Committee Note. This Court does not agree, however, that all of the summaries of facts and opinions in Defendant's April 2, 2013 disclosures met the

11

Rule 26(a)(2)(C) standard. Specifically, this Court finds that the alleged "opinions" in Defendant's disclosures, which merely state the topics of the opinions to which the expert will testify, without stating any view or judgment on such topics—e.g., an actual opinion—do not satisfy (a)(2)(C). For example, it is not a summary of an opinion to say "Dr. Barton may provide testimony and opinions related to air dispersion modeling, and air monitoring that was conducted regarding the Washington Works facility, including air sampling of PFOA at Washington Works." Such a statement may meet the "subject matter" prong—(a)(2)(C)(i)—but does not satisfy the separate summary of opinion prong—(a)(2)(C)(ii). However, it is a summary of an opinion to say "Dr. Barton may provide her opinion that those efforts were reasonable and accurate to a reasonable degree of scientific certainty," as such a statement expresses a judgment. Further, this Court finds that Defendant's reference to large bodies of material as sources of facts, some thousands of pages long, without stating a brief account of the main points from those large bodies of material on which the expert relied in forming her opinions, fails to meet the standard of providing a "summary of the facts."

In reaching these conclusions, this Court declines to follow *Chesney* and *Saline*, which held that "the simple statement of who was going to testify as to what [is] sufficient" to meet Rule 26(a)(2)(C). *Saline River Prop.*, 2011 WL 6031943, at *7 (citing *Chesney*, 2011 WL 2550721). In *Chesney*, the Court found it satisfied Rule 26(a)(2)(C) to disclose that one employee expert would testify "about air monitoring activities conducted…and the results of air monitoring compared to regional PM levels and EPA PM standards…" and that another would testify as to "water flows and elevations in the Emory, Clinch, and Tennessee River portions of the Watts Bar Reservoir at various locations and times." *Chesney*, 2011 WL 2550721, at *3 n.3. This Court finds that the holding in *Chesney*, in light of the disclosures it considered, improperly

failed to grant due meaning to the plain language of Rule 26(a)(2)(C), which requires a statement both of the "subject matter" of the testimony, and a statement of the "summary of facts and opinions" to which the expert will testify. *See United States v. Wagner,* 382 F.3d 598, 606–607 (6th Cir.2004) (finding that the statutory-interpretation analysis begins by examining "the language of the statute itself to determine if its meaning is plain. . . . Plain meaning is examined by looking at the language and design of the statute as a whole.").  A fair reading of *Chesney* shows that the *Chesney* Court construed a disclosure's statement of the "subject matter" alone as meeting Rule 26(a)(2)(C) requirements, in contravention of the plain meaning of the Rule.

This Court follows, instead, the reasoning in *Jennings*, a case from this Circuit, which clearly distinguished a statement of the "subject matter" from a "summary of facts and opinions," and required both. 2013 WL 625591, at *1. In that case, the Court considered a Rule 26(a)(2)(C) disclosure for six treating physicians which stated:

> '[t]he following individuals were included on the initial disclosures. They are all treaters of the Plaintiff. It is assumed that they will testify to the treatment of the Plaintiff.' Def.'s Mot. Ex. B, at 1. Plaintiff's supplement then lists six additional individuals he plans to call 'to rebut allegations made by the Defendant as they relate to the Plaintiff's injuries, disabilities, or perceived disabilities.'

*Id.*

The *Jennings* Court held that such disclosures did not comply with Rule 26(a)(2)(C). Instead, the Court found that "[w]hile Plaintiff's supplemental expert disclosures could be stretched to satisfy the Rule's requirement to disclose the subject matter the witnesses will testify about, there [was] nothing to construe as 'a summary of the facts and opinions to which the witness is expected to testify.'" *Id.* at *2. Thus, the holding in *Jennings* shows that Rule 26(a)(2)(C) requires a separate statement of the "subject matter" and the "summary of the facts and opinions," a ruling which is consistent with other jurisdictions. *See*, *e.g. Pineda v. City & Cnty. of San Francisco*, 280 F.R.D. 517, 523 (N.D. Cal. 2012) (finding (a)(2)(C) disclosures

13

failed to provide a summary of facts and opinions by stating only that expert "will present factual and opinion testimony on causation, diagnosis, prognosis, [and] extent of [Pineda's] disability" based on the expert's treatment or radiological review of Pineda's medical records," and, "St. Luke's Hospital Billing Department ... will discuss the reasonableness of healthcare costs generated for medical treatment and medical testing rendered to Plaintiff."); *Davis v. GEO Grp.,* No. 10-CV-02229-WJM-KMT, 2012 WL 882405, at *2 (D. Colo. Mar. 15, 2012) (finding disclosure stating only subject matter of testimony but no recitation of actual facts or opinions failed to meet Rule 26(a)(2)(C)); *Skyeward Bound Ranch v. City of San Antonio*, No. SA-10-CV-0316 XR, 2011 WL 2162719, at *3 (W.D. Tex. June 1, 2011) (same).

This Court notes that the disclosure that the *Jennings* Court found inadequate is indistinguishable in form from the report *Chesney* found adequate. In both cases, the disclosures provided notice of general topics of testimony—testimony about air monitoring and their results, and water flow in *Chesney,* versus testimony about treatment, injuries, and disabilities in *Jennings*—and in neither do the disclosures include an opinion or a fact. Although both disclosures could be construed to be a summary of the topics on which the experts will render opinions, as *Jennings* holds, this is not what Rule 26(a)(2)(C) requires.

According to the Advisory Committee Note, a Rule 26(a)(2)(C) disclosure "is considerably less extensive than the report required by Rule 26(a)(2)(B)," and courts "must take care against requiring undue detail." Such qualifications in the detail of the disclosures, however, nowhere communicates that a disclosure of the "summary of facts and opinions" can be omitted entirely or subsumed into the separate requirement that the disclosure provide "the subject matter" of the testimony. Such a reading goes against the plain language of the statute, and would render both prongs of the Rule 26(a)(2)(C) requirement meaningless, especially

14

considering the existing requirements of Rule 26(a)(1)(i). *Mitchell v. Chapman,* 343 F.3d 811, 825 (6th Cir.2003) ("Under accepted canons of statutory interpretation, we must interpret statutes as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous."). Rule 26(a)(1)(i) already requires parties to provide the name and contact information of each individual likely to have discoverable information—"along with the subjects of that information." Such a requirement ostensibly includes disclosing non-retained, employee expert witnesses who have knowledge of facts pertinent to the case, and the subject matters of discoverable information that they possess. Aside from providing the signal that such an employee expert will actually testify, a narrow reading that Rule 26(a)(2)(C) requires little more than a simple statement of "who is to testify and as to what" provides no information that is not already required under Rule 26(a)(1)(A)(i).

Further, this Court finds that the Advisory Committee Note sheds lights onto the appropriate amount of detail required under Rule 26(a)(2)(C), particularly the clarification that while Rule 26(a)(2)(B) reports must include "facts and data" that the expert "considered" but did not actually use, "the (a)(2)(C) disclosure obligation does not include facts unrelated to the expert opinions the witness will present." Such a distinction communicates that while a difference in degree of detail in the facts is anticipated between a Rule 26(a)(2)(B) report and a Rule 26(a)(2)(C) disclosure—such as an omission in a disclosure of facts on which the expert did not directly rely—facts directly related to the non-retained expert's opinion should be disclosed, albeit in summary form. A "summary of facts" does not mean, however, a mere reference to a voluminous treatise or file. Instead, a "summary is defined as a brief account that states the main points of a larger body of information," and, thus, "a prodigious volume of material does not

15

constitute a summary of the facts to which the witness will testify" under Rule 26(a)(2)(C).

*Nicastle v. Adams Cnty. Sheriff's Office* No. 10-CV-00816-REB-KMT, 2011 WL 1674954, at *1

(D. Colo. May 3, 2011) (holding that a statement in a Rule 26(a)(2)(C) disclosure that certain

opinions were supported by a file containing 936 pages was "far too general to satisfy the

requirements of Rule 26(a)(2)(C).")

In addition, this Court finds that a comparison of the plain language of Rule 26(a)(2)(B)

and Rule 26(a)(2)(C) provides guidance in determining the appropriate amount of detail required

in a Rule 26(a)(2)(C) disclosure. *Wagner,* 382 F.3d at 606–607. While Rule 26(a)(2)(B)(i)-(ii)

requires "a complete statement of all opinions the witness will express and the basis and reasons

for them," as well as "the facts or data considered by the witness in forming them," (a)(2)(C)(i)-

(ii) requires only a disclosure of the "subject matter," and "a summary of the facts and opinions

to which the witness is expected to testify." Thus, (a)(2)(C)(i)-(ii) does not require a "complete

statement of all the opinions," and, most importantly, does not require an explanation of the

"basis and reasons" for them. Instead, (a)(2)(C)(i)-(ii) merely a requires a summary of the facts

on which the summarized opinions actually rely.

In light of the foregoing, this Court finds that a summary of opinions under Rule

26(a)(2)(C) means a brief account of the main opinions of the expert, and that the opinions must

state a view or judgment regarding a matter that affects the outcome of the case. A mere

statement of the topics of the opinions is insufficient. Further, this Court finds that a summary of

facts supporting those opinions under Rule 26(a)(2)(C) means a brief account of facts—only

those on which the expert actually relied in forming his or her opinions—that states the main

points derived from a larger body of information; merely stating the topic matters of facts relied

upon does not suffice. Similarly, it does not suffice to reference large bodies of material as

16

sources of facts, without stating a brief account of the main points from those large bodies of material on which the expert relies.

Although this Court has found that the plain reading of Rule 26(a)(2)(C) mandates this Court's preceding interpretation of the amount of detail required for Rule 26(a)(2)(C) disclosures, this Court acknowledges that little guidance exists in this Circuit regarding Rule 26(a)(2)(C), and that this Court's holding rejects the guidance which did exist at the time this matter arose. Accordingly, this Court does not find that Defendant's repeated failure to meet the standard set out by this Court for Rule 26(a)(2)(C) disclosures was unreasonable, and thus it does not merit the full sanctions which Plaintiff seeks. In addition, this Court does not find that any prejudice suffered by the Plaintiff as a result of insufficient disclosures to date is irreparable, as no trial date has been set in this case.

Further, this Court finds that although the Magistrate Judge analyzed the sufficiency of the April 2, 2013 disclosures, for practical reasons, this Court will analyze the sufficiency of the second supplemental disclosures submitted with Defendant's Reply to Plaintiff's Motion for Sanctions on May 24, 2013. (Doc. 221-4). Under the circumstances, this Court holds that the appropriate course is to provide Defendant one week to supplement the disclosures according to the analysis of Rule 26 (a)(2)(C) set out by this Court, and the analysis of the disclosures this Court provides below. After that, Plaintiff will have seven days to file a motion, limited to five (5) pages in length: (1) challenging the sufficiency of the disclosures; and/or (2) notifying this Court whether and why it believes that based on the supplemental disclosures, it was notified of new information that requires further deposition testimony of the three employee experts, without which, Plaintiff would be prejudiced. Defendant is to respond to such a motion within

one week, with a brief limited to five (5) pages in length. If this Court approves of further

deposition testimony, the Defendant will be required to pay for the expenses of such depositions.

### 1. Mr. Hartten

This Court finds that subparagraphs (a), (b), (c), and (d) of Mr. Hartten's disclosure

include sufficient summaries of opinions on the four topics Mr. Hartten will cover in his

testimony. Each opinion within each summary of opinions includes a view or judgment that Mr.

Hartten holds, and each of the four summaries of opinions puts Plaintiff on notice of the range of

opinions Mr. Hartten holds on the four major topics of his testimony. For instance, it is sufficient

under Rule 26(a)(2)(C) to say, "Mr. Hartten may opine that it is not scientifically reasonable that

PFOA in the wellfield arrived there via water migration of emissions from Washington Works,"

and then to add a series of other brief opinions which are related to his overall opinion

concerning water migration of PFOA as it relates to material facts at issue in this case.

This Court finds, however, that the facts cited in support of the summaries of opinions do

not meet the requirements of Rule 26(a)(2)(C)(ii). Although the May 24, 2013 disclosure

provides more detail regarding the sources of facts on which Mr. Hartten's opinions rely, they

almost universally do not state a brief summary of the main points derived from larger bodies of

information. Of specific concern is reference to the Memorandum of Understanding, a document

that is over one thousand pages long, without any brief summary of the main facts from the

report on which the expert relies for each of the four areas of his opinions. Further, regarding

subparagraphs (a)(6)-(11), which include summary statements of material disputed facts, but not

underlying facts supporting them, this Court holds such statements are better categorized as

opinions. For example, the statement "Travel time for PFOA migration through soil and

groundwater, including soil permeability, does not permit the migration of PFOA to the wellfield

18

in the manner described by Little Hocking," is an opinion of Little Hocking's opinion, not a fact. In contrast, a statement summarizing measurements of soil permeability and water-flow measurements would suffice as a summary of facts supporting such an opinion. For purposes of example, this Court finds that a sufficient summary of facts can be found at subparagraph (b)(4). In support of the opinion that PFOA has not leached from the holding ponds, (b)(4) states: "Ponds were engineered to be leak-proof, having bentonite bottoms to reduce leaching, and there is no evidence of any leakage that would lead to any leachate reaching the Wellfields."

Thus, the Defendant has one week to supplement Mr. Hartten's disclosure consistent with this Court's ruling.

### 2.  Dr. Rickard

This Court finds that subparagraph (a) of Dr. Rickard's disclosure includes a sufficient summary of opinions regarding Defendant's knowledge of and response to scientific discoveries regarding PFOA.  Each opinion within the summary of opinions includes a view or judgment that Dr. Rickard holds on that topic, and the summary of opinions puts Plaintiff on notice of the range of opinions Dr. Rickard holds on the major topic of his testimony.

This Court finds, however, that the facts cited, which support the summary of opinions, do not meet the requirements of Rule 26(a)(2)(C)(ii). This Court finds that while subparagraph (a)(1) provides the sources of facts on which the opinions in subparagraph (a) rely, they do not state a brief summary of the main points derived from larger bodies of information–such as facts derived from toxicological studies regarding PFOA, including studies conducted by DuPont, the C-8 Science Panel, and other publicly available sources. In addition, this Court holds that while subparagraph (a)(2) summarizes topics of facts that underlie Dr. Rickard's opinions, that subparagraph similarly does not include a brief summary of the actual facts on which Dr.

19

Rickard's opinions rely. To state that Dr. Rickard will support his opinion with the "pharmacokinetic properties of PFOA," without a brief, summary statement of the actual pharmacokinetic properties that support his opinion, is not to state a fact, but a topic of facts.

Thus, the Defendant has one week to supplement Dr. Rickard's disclosure consistent with this Court's ruling.

### 3.  Dr. Barton

This Court finds that subparagraph (a) of Dr. Barton's disclosure includes a sufficient summary of her opinion that the air modeling performed by DuPont was conducted reasonably, reliably, and in a scientifically acceptable and appropriate manner.  The opinion includes a view or judgment that Dr. Barton holds on the topic of the validity of air sampling and modeling, and the summary of her opinion puts Plaintiff on notice of the range of opinions Dr. Barton holds on that topic of her testimony. This Court also finds, however, that the final paragraph of Dr. Barton's disclosure contains a summary of the topic of Dr. Barton's other opinions, but does not contain a summary of any actual opinion. The disclosure states: "Dr. Barton may opine on the properties of PFOA that may be relevant to the measurement of PFOA in the atmosphere, and air modeling and dispersion as it relates to Little Hocking's wellfields and facilities." Such a statement includes a subject matter of testimony, but no view or judgment, and, as such, contains no admissible opinions.

The Court does find, however, that subparagraphs (a)(1)-(2) contain sufficient summaries of the facts on which Dr. Barton relies  to support the preceding opinion that the air sampling models were performed accurately. Dr. Barton summarizes Quality Assurance protocols followed, the exact type of methodology used, work plans submitted, and a citation to a publication of the data collected.

Thus, the Defendant has one week to supplement Dr. Barton's consistent with this Court's ruling.

## B.  Application of Rule 26(a)(2)(B)

Plaintiff argues that it was contrary to law for the Magistrate Judge to conclude that Plaintiff conceded that Rule 26(a)(2)(C) and not 26(a)(2)(B) applies to the three non-retained or specially employed witnesses at issue. Relying on *Meredith v. Int'l Marine Underwriters*, No. JKB-1-837, 2011 WL 1466436, at *7 (D. Md. April 18, 2011), Plaintiff argues that the burden is on the Defendant to show that Rule 26(a)(2)(C) applies to the three experts by showing that they were not specifically employed to provide expert testimony in this case, that their duties do not regularly involve giving expert testimony, or that the opinions they will testify to were not formulated in anticipation of litigation.  Plaintiff reiterates what it argued in its Reply brief in support of its Motion for Sanctions, that it was not until Defendant submitted its second set of supplemental disclosures in its Response brief to Plaintiff's Motion for Sanctions, (Doc. 221-4), that Plaintiff could discern that some of Drs. Rickard's and Barton's opinions relate to a standard of care, and, thus, likely were formed in anticipation of litigation. Plaintiff contends that under *Meredith*, opinions formed in anticipation of litigation, even by non-retained or specially employed hybrid witnesses, should be the subject of a full Rule 26(a)(2)(B) report. 2011 WL 1466436, at *4. It was not until Plaintiff's Objection to the Magistrate Judge's Opinion & Order, (Doc. 306), that the Plaintiff added the argument that the three experts' duties involve regularly giving expert testimony, and thus their entire testimony should fall under Rule 26(a)(2)(B). Specifically, Plaintiff argues that these three "in-house experts" operate in the "science-advocacy" arm of DuPont, and have been tasked with testifying in PFOA-related litigation,

including in four recent cases, as well as testifying in other PFOA-related legal actions and in front of regulatory bodies.

Defendant responds, first, that Little Hocking's objection to the Court's ruling on the applicability of Rule 26(a)(2)(C) is untimely. Defendant states that the Magistrate Judge ruled that Rule 26(a)(2)(C) controlled the expert disclosures in its March 2013 order, and again when the Court ordered DuPont to produce disclosures relevant to non-specially retained experts consistent with Rule 26(a)(2)(C) by April 2013. Since Plaintiff failed to object to either order until it placed a footnote in its motion for sanctions in January 2014, Defendant argues that Plaintiff's objection to the Magistrate Judge's conclusion that Plaintiff concedes Rule 26(a)(2)(C) applies comes too late.

Second, Defendant responds that since Plaintiff's challenge to the application of Rule 26(a)(2)(C) rather than (a)(2)(B) to the experts was not raised before the Magistrate Judge, it is not properly before this Court. In support, Defendant states that while Plaintiff briefly mentions in a footnote to its Motion for Sanctions that it did not "concede" Rule 26(a)(2)(C) applies rather than Rule 26(a)(2)(B), such a statement is not an affirmative challenge to DuPont's disclosure of these experts as Rule 26(a)(2)(C) experts. Defendant adds that since the only time Plaintiff provides an affirmative argument that the three witnesses should have produced Rule 26(a)(2)(B) reports was in its Reply brief, (Doc. 228), that argument was not properly in front of the Magistrate Judge. *See Curcio Webb LLC, v. Nat'l Benefit Programs Agency, Inc.*, 367 F. Supp. 2d 1191, 1207 (S.D. Ohio 2005) (Marbley, J) (citing *Firstenergy Corp. Sec. Litig.,* 316 F.Supp.2d 581, 599 (6th Cir.2004) ("It is well-established that a party cannot raise new issues in a reply brief; he can only respond to arguments raised for the first time in opposition.")).

The initial question before this Court, therefore, before analyzing the substance of whether Rule 26(a)(2)(B) or Rule 26(a)(2)(C) applies to the three non-specially retained experts, is whether a challenge to the designation of the witnesses was properly before the Magistrate Judge and is now properly before this Court. This Court notes it was the Defendant that initially designated the three experts at issue as experts under Rule 26(a)(2)(C) in its own discovery disclosures. Thus, the Magistrate Judge's discovery orders, ordering Defendant to supplement the Rule 26(a)(2)(C) disclosures, were in no way rulings that Rule 26(a)(2)(C) and not Rule 26(a)(2)(B) controlled. This Court agrees, however, that Plaintiff's challenge to the designation of the three experts has never been properly raised, and thus it was not unreasonable for the Magistrate Judge to conclude that Plaintiff conceded that Rule 26(a)(2)(C) applies to the non-specially retained experts.

Courts in this Circuit and others have noted that the 2010 amendments, which added a heighted disclosure standard for non-specially retained experts, "did not alter who was required to file an expert report under the rule 26(a)(2)(B)." *Call v. City of Riverside*, No. 3:13-CV-133, 2014 WL 2048194, at *2 (S.D. Ohio May 19, 2014) (citing *Coleman v. Am. Family Mut. Ins. Co.,* 274 F.R.D. 641, 645 (N.D.Ind.2011); *and Kondragunta v. Ace Doran Hauling & Rigging Co.,* No. 1:11–cv–1094, 2013 WL 1189493, at *12 (N.D.Ga. Mar.21, 2013). Such a determination was, and remains, dependent on "the scope, substance, and source of the intended testimony—not on whether the witness is being compensated." *Ulbrick v. UPR Products, Inc.,* No. 08–13764, 2011 WL 500034, at *4 (E.D.Mich. Feb.8, 2011) (noting that a non-specially retained expert mechanic's opinions fell under subsection B, not C, because his opinions were formed to determine the cause of a car accident, not to repair the vehicle, and thus "were presumably formed as a result of a process that any expert witness would undertake; namely, an

'after-the-fact' examination of the vehicle in question"). Thus, prior to 2010, a party that thought the Rule 26(a)(2)(B) reporting requirements should apply to a hybrid witness testifying both to fact and opinion, but who was not specially retained, had to bring a challenge to the opposing party's failure to provide a Rule 26(a)(2)(B) report, and the same is true after the amendment. *See Davis v. GEO Grp.*, No. 10-CV-02229-WJM-KMT, 2012 WL 882405, at *2 (D. Colo. Mar. 15, 2012) (finding that historically the party moving to strike the witness bears the initial burden of showing that the disclosing party failed to produce a written report under Rule 26(a)(2)(B); then, the burden shifts to the disclosing party to demonstrate . . . no report was required.").

This Court is not persuaded by Plaintiff's argument that it failed to make a motion that Rule 26(a)(2)(B) should apply to the experts because it was not until Defendant attached more detailed supplemental disclosures in its Reply brief that it could see that the experts would testify to opinions made in anticipation of litigation. (Doc. 241-4). Further, the April 2, 2013 disclosures did contain some causation-related opinions which could have signaled to the Plaintiff that the scope of the opinions may require Rule 26(a)(2)(B) opinions, but Plaintiff failed to bring a motion arguing that Rule 26(a)(2)(B) should apply at that time. In addition, arguments relating to the extent to which the three experts regularly provide testimony are based on publicly-available information, and do not appear to originate in any content from the Defendant's second supplemental disclosure. Accordingly, such arguments could have been brought at an earlier time. Finally, Plaintiff has not made such an affirmative motion. Instead, Plaintiff's arguments in its Motion, Reply brief, and Objection appear to be attempts, if anything, to preserve the right to bring a motion arguing that Rule 26(a)(2)(B) applies. Accordingly, this Court holds that at this time, Rule 26(a)(2)(C) applies, as a motion moving this Court to find that Rule 26(a)(2)(B) applies is not properly in front of this Court.

### IV.    CONCLUSION

For the above reasons, Plaintiff's Objection is hereby **SUSTAINED** in part and

**OVERRULED** in part.

    **IT IS SO ORDERED.**


    **____/s/ Algenon L. Marbley_____**
    **ALGENON L. MARBLEY**
    **UNITED STATES DISTRICT JUDGE**

**DATED: March 11, 2015**