# Exhibit No. 4

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THE LITTLE HOCKING WATER ASSN., INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> E. I. DU PONT DE NEMOURS AND COMPANY, ) <br> ) <br> Defendant. ) <br> ) | Case No. 2:09-cv-1081 <br><br> Judge Smith <br><br> Magistrate Judge King |

### DEFENDANT E. I. DU PONT DE NEMOURS AND COMPANY'S SECOND SUPPLEMENTAL DISCLOSURE OF RULE 26(A)(2)(C) DESIGNEES

Pursuant to the September 8, 2010 Continued Preliminary Pretrial Order (Dkt. No. 35), the October 12, 2012 Scheduling Order (Dkt. No. 142), and the March 27, 2013 Order (Dkt. No. 196) entered by Magistrate Judge King, Defendant E. I. du Pont de Nemours and Company ("DuPont"), by counsel, hereby identifies and designates the following witnesses under Rule 26(a)(2)(C) of the Federal Rules of Civil Procedure.

1.  **Andrew Hartten (DuPont employee)**

Mr. Hartten is currently employed by DuPont and has been since 1988. He is currently Project Director in the Corporate Remediation Group and manages environmental investigation, assessment, and remediation projects at the Washington Works facility ("Washington Works"). Mr. Hartten is a hydrogeologist and received his Bachelor of Science in Geology from the University of Maryland. Mr. Hartten first began work at Washington Works in 1990 and has

been involved in the environmental monitoring program at Washington Works since that time. He has been involved in PFOA-related issues since approximately 1991.

Mr. Hartten has been responsible for supervising the collection and compilation of data related to the sampling of water supplies in and around the Ohio River and Washington Works, studying the hydrogeology of the area in and around the Washington Works facility, including but not limited to the location of groundwater and groundwater flow. Mr. Hartten monitors the discharge of water to the Ohio River and other off-site locations, and has knowledge of the remediation and/or mitigation of PFOA released into water and soil.

The subject matter on which Mr. Hartten may provide testimony and a summary of the facts and opinions on which he is expected to testify is as follows:

    a) Mr. Hartten may opine that it is not scientifically reasonable that PFOA in the Little Hocking wellfields ("Wellfields") arrived there via water migration of emissions from Washington Works. Mr. Hartten may testify that the any PFOA in the Wellfields that might have come from Washington Works would have likely been transmitted via aerial dispersion. Mr. Hartten may opine that the migration of any such PFOA releases would not have occurred through underground water migration. Mr. Hartten may opine that DuPont followed generally accepted scientific methods and practices to accurately and fully assess the hydrogeology around Washington Works to determine that any PFOA detected in the Wellfields was not caused by underground water migration. Mr. Hartten may support this opinion with the following facts:

        1. Identification of the environmental conditions surrounding Washington Works, including but not limited to the science of

2

hydrogeology and the hydrogeology of the area at and around Washington Works;

2. Description of the geography of the Ohio River, its sediment, and the surrounding area;

3. Factual information identified in the November 3, 2005 Memorandum of Understanding (MOU) between DuPont and the United States Environmental Protection Agency (EPA), and the Phase II and Phase III Status Reports filed pursuant to the MOU;

4. Factual information provided in the Revised Groundwater Flow Model (dated January 2003), including factual information related to site setting, geology, hydrogeology, primary sources, model set-up, and model results;

5. Factual information provided in the Washington Works 1990 Preliminary Hydrogeological Assessment dated March 1991, including those related to geology, hydrogeology, and groundwater flow;

6. Air is the primary pathway for dispersion of PFOA to Little Hocking;

7. The landfills and ponds are not pathways for water migration of PFOA to the Wellfields;

8. Sediment in the Ohio River is not a potential pathway of migration of PFOA to the Wellfields;

9. There is no subriver pathway from Washington Works to the Wellfields; and

3

10. Travel time for PFOA migration through soil and groundwater, including soil permeability, does not permit the migration of PFOA to the Wellfields in the manner described by Little Hocking.

b) Mr. Hartten may opine that PFOA has not leached through the soil to the groundwater to form a pathway for PFOA from Washington Works to the Wellfields. Mr. Hartten may opine that leachate from the Riverbank Landfill has not led to offsite migration of PFOA from Washington Works. Mr. Hartten may support this opinion with the following facts:

1. Factual information identified in the November 3, 2005 Memorandum of Understanding (MOU) between DuPont and the United States Environmental Protection Agency (EPA), and the Phase II and Phase III Status Reports filed pursuant to the MOU;

2. Factual information provided in the Revised Groundwater Flow Model (dated January 2003), including those related to site setting, geology, hydrogeology, primary sources, model set-up, and model results;

3. Factual information provided in the Washington Works 1990 Preliminary Hydrogeologic Assessment dated March 1991, including those related to geology, hydrogeology, and groundwater flow; and

4. Ponds were engineered to be leak-proof, having bentonite bottoms to reduce leaching, and there is no evidence of any leakage that would lead to any leachate reaching the Wellfields.

c) Mr. Hartten may opine that DuPont's efforts to investigate the site and identify and assess the presence and extent of PFOA in drinking water, groundwater,

4

surface water, and environmental media at and around Washington Works and the Wellfields were reasonable and accurate to a reasonable degree of scientific certainty. Mr. Hartten may testify that DuPont has followed the generally-accepted principles of environmental decision-making and that DuPont's efforts to investigate PFOA were reasonable and the information reported in DuPont's investigation was accurate to a reasonable degree of scientific certainty. Mr. Hartten may support this opinion with the following facts:

1. Factual information identified in the November 3, 2005 Memorandum of Understanding (MOU) between DuPont and the United States Environmental Protection Agency (EPA), and the Phase II and Phase III Status Reports filed pursuant to the MOU;

2. Factual information provided in the Revised Groundwater Flow Model (dated January 2003), including those related to site setting, geology, hydrogeology, primary sources, model set-up, and model results;

3. Factual information provided in the Washington Works 1990 Preliminary Hydrogeologic Assessment dated March 1991, including those related to geology, hydrogeology, and groundwater flow; and

4. DuPont's Corporate Remediation Group's investigation and analysis of releases of PFOA through various environmental media, including surface water, groundwater, and soil, to determine the presence, extent, and movement of PFOA at or around Washington Works and the Wellfields.

    d)    Mr. Hartten may give an opinion that the Granular Activated Carbon facility is effectively removing PFOA from the water provided to Little Hocking's customers. Mr. Hartten may support this opinion with the following facts:

        1.    Sampling results of pre- and post-GAC treatment of the water pumped from the Wellfields; and

        2.    Published GAC results, the Memorandum of Understanding quarterly updates, and the testing results shared with Little Hocking.

Mr. Hartten will base his opinion on his education, training, experience, research, information in publically available scientific literature, governmental agencies, and other sources of publicly available information, and documents produced in this litigation by DuPont and Little Hocking.

## 2. Robert W. Rickard, Ph.D. (DuPont employee)

Dr. Rickard has been employed by DuPont since 1979. His current position is DuPont Distinguished Scientist, Health & Environmental Sciences, DuPont Safety, Health & Environment & Sustainability Excellence Center. He has held this position since January 2007. He received his Ph.D. in Toxicology from the University of Kentucky, a Master of Science in Microbiology, and a Bachelor of Science in Zoology from Clemson University. Since 1983, Dr. Rickard has been certified as a Diplomat of the American Board of Toxicology and is also a member of the Society of Toxicology. He currently serves on the Executive Committee and Board of Directors of The Hamner Institutes for Health Research, the Board of Trustees of the International Life Sciences Institute – Health and Environmental Science Institute, and the board of European Centre for Ecotoxicology and Toxicology of Chemicals. Dr. Rickard is also on the

Leadership Council for the National Conversation for Public Health and Chemical Exposure which is hosted by the Centers for Disease Control and Prevention (CDC) and the Agency for Toxic Substances and Disease Registry (ATSDR).

Dr. Rickard has oversight for DuPont's global scientific competency in health and environmental sciences and is responsible for DuPont's policies, standards, and global strategy for toxicology and environmental sciences.

The subject matter on which Dr. Rickard may provide testimony and a summary of the facts and opinions on which he is expected to testify is as follows:

a) Dr. Rickard may opine that DuPont acted reasonably and appropriately in reviewing, assessing, and responding to the literature and scientific data regarding potential health and environmental effects of exposure to PFOA. Dr. Rickard may also opine that DuPont's decisions regarding PFOA were made to a reasonable degree of scientific certainty. Dr. Rickard may support this opinion with the following facts:

   1. Knowledge and analysis of historical and contemporary epidemiological, health, and toxicological studies regarding PFOA, including studies conducted by DuPont, the C-8 Science Panel, and other research and studies conducted about PFOA that are publicly available and known throughout the scientific community; and

   2. Knowledge and study of the exposure pathways for PFOA, exposure assessments of PFOA, and the pharmacokinetic properties of PFOA, including toxicology and epidemiology and their associated concepts, such as (but not limited to) association, causation, the distinction

7

between an association and causation, dose-response relationships, the strength of observed associations, consistency of any observed associations across studies, biological plausibility, and other scientifically accepted criteria to evaluate causation.

Dr. Rickard's testimony will be based on his professional experience and background, scientific literature on PFOA, data collected related to the exposure of Little Hocking's customers, and environmental data collected at or around Washington Works and the Wellfields.

### 3. Catherine A. Barton, Ph.D. (DuPont employee)

Dr. Barton has been employed by DuPont since 1988. Dr. Barton has worked in the DuPont Engineering and Research Technology department as an environmental engineer and was responsible for performing air modeling, air dispersion, and assessing air concentrations in the air surrounding Washington Works.

Dr. Barton is a Registered Professional Engineer. Dr. Barton received her Ph.D. in Environmental Engineering from the University of Delaware, and a Master of Science in Environmental Engineering and Bachelor of Science in Civil Engineering from Virginia Polytechnic Institute and State University.

As a part of her job duties, Dr. Barton used and interpreted models related to the aerial dispersion of chemicals and the deposition of those chemicals on land from air emissions. Additionally, Dr. Barton designed protocol and conducted air sampling to determine the identity and levels of PFOA that may be present in air surrounding Washington Works.

The subject matter on which Dr. Barton may provide testimony and the summary of the facts and opinions on which she is expected to testify is as follows:

8

a)     Dr. Barton may opine that the air modeling performed by DuPont for Washington Works, including air sampling and modeling of PFOA, was conducted reasonably, reliably, and in a scientifically acceptable and appropriate manner. Dr. Barton may support this opinion with the following facts:

     1.     Air sampling and modeling was done using EPA recommended models and EPA recommended protocol. Additionally, the sampling followed stringent Quality Assurance protocols. Over 200 air samples were collected during three campaigns between November 2003 and October 2005 at the Washington Works site. While two proven air sampling techniques were tested, it was determined the high volume sampling method using cascade impactors was preferred because it allowed for lower detection limits at less than 1 ng/m3. The Tisch Model 235 High Volume Cascade Impactor was used, and sampling protocols adhered to the Operations Manual provided by the manufacturer (Tisch Environmental, 2004). Detailed Work Plans and Quality Assurance plans were submitted to EPA prior to beginning work (EPA-HQ-OPPT-0012-0616; EPA-HQ-OPPT-2004-0113-0004 and 0005). To ensure sample integrity, Quality Control samples, including equipment blanks, trip and field blanks and duplicate analyses from co-located samples were taken. Analytical methodology went through third-party validation by Exygen Research of State College PA. The methods and conclusions from air sampling were published in *The Journal of Air and Waste Management (2006, **56**, 48-55)* and *The Journal of Environmental Monitoring (2007,*

9

Case: 2:09-cv-01081-ALM-NMK Doc #: 221-4 Filed: 05/24/13 Page: 11 of 12 PAGEID #: 3624

     *9(8) 530-541)* and therefore were subjected to rigorous academic peer-review prior to being accepted; and

2.    Two EPA recommended models were used to predict PFOA air concentrations surrounding Washington Works. These models were well-suited because they are designed to assess near-field air quality impacts for non-reactive compounds from manufacturing sites. PFOA does not hydrolyze, photolyze or biodegrade (*Banks et al., Organofluorene Chemistry, NY, 1994*) and is therefore considered non-reactive. Modeling was conducted in accordance with EPA's "Guideline on Air Quality Models," codified in the Federal Register *(EPA, 2005, Fed Reg, Vol 70, No. 216, Nov 9, 2005)*. The methods and results from air modeling were published in the Journal of Air and Waste management *(2010, 60(4) 402-411)* and therefore were subjected to rigorous academic peer-review prior to being accepted.

Furthermore, Dr. Barton may opine on the properties of PFOA that may be relevant to the measurement of PFOA in the atmosphere, and air modeling and dispersion as it relates to Little Hocking's Wellfields and facilities.

Dr. Barton will base her opinions on her education, training, experience, research and publications, her review of scientific literature, public information, including information generated or available from government entities, and documents made available to her through the normal course of her employment at DuPont.

**By counsel,**

_____

Niall A. Paul (*pro hac vice*)
Timothy D. Houston (*pro hac vice*)
Nathan B. Atkinson (*pro hac vice*)
SPILMAN THOMAS & BATTLE, PLLC
Post Office Box 273
Charleston, West Virginia 25321-0273
304.340.3800 / 304.340.3801 (*facsimile*)
npaul@spilmanlaw.com
thouston@spilmanlaw.com
natkinson@spilmanlaw.com

C. Craig Woods (0010732)
Aaron T. Brogdon (0081858)
SQUIRE SANDERS (US) LLP
2000 Huntington Center
41 South High Street
Columbus, Ohio 43215
614.365.2700 / 614.365.2499 (*facsimile*)
Craig.Woods@squiresanders.com
Aaron.Brogdon@squiresanders.com

Libretta P. Stennes (*pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
202.429.3000 / 202.429.3902 (*facsimile*)
lstennes@steptoe.com

*Counsel for Defendant*
*E. I. du Pont de Nemours and Company*

11