**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **THE LITTLE HOCKING WATER** | : | |
| **ASSOCIATION, INC.,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No. 2:09-CV-1081** |
| **v.** | : | |
| | : | **JUDGE ALGENON L. MARBLEY** |
| **E.I. du PONT de NEMOURS and** | : | |
| **COMPANY,** | : | **Magistrate Judge King** |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

This matter is before the Court on Plaintiff's motion regarding expert disclosure

sufficiency and for preclusion. Plaintiff brings this motion pursuant to this Court's March 11,

2015 motion which ordered Defendant to supplement its non-specially retained expert

disclosures pursuant to Fed. R. Civ. P. 26(a)(2)(C).[1]

---

[1] Under Rule 26(a)(2), which governs the disclosure of expert testimony, "a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule Evidence 702, 703, or 705." Fed.R.Civ.P. 26(a)(2)(A). Rule 26(2) divides experts into two categories with different reporting requirements: Under Rule 26(a)(2)(B), the expert must provide a written report if the expert was "retained or employed specially to provide testimony or one whose duties as the party's employee regularly involve giving expert testimony;" and, under Rule 26(a)(2)(C), any expert who does not need to provide a written report under Rule 26(a)(2)(B), must provide a disclosure. Rule 26(a)(2)(C), the provision at issue in this case, states:

> (C) *Witnesses Who Do Not Provide a Written Report.* Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:
>
> > (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
> > (ii) a summary of the facts and opinion to which the witness is expected to testify.

For the reasons set forth below, Plaintiff's motion is **GRANTED** in part and **DENIED** in part.

## I.  BACKGROUND

This is a suit brought under the Resources Conservation and Recovery Act ("RCRA"), 42 U.S.C. § 6972(a)(1)(B) and Ohio common law and statutory law, claiming Defendant's waste disposal practices at its manufacturing facility contaminated Plaintiff's wellfield, which provides potable water to the surrounding community. The Defendant's facility is located approximately 1,300 feet down river from Plaintiff's wellfield. The procedural history leading to Plaintiff's Motion for Sanctions is as follows.

The procedural facts giving rise to this discovery dispute are fully briefed in this Court's March 11, 2015 Order. (See Doc. 441). In essence, that Order addresses Plaintiff's arguments regarding the insufficiency of Defendant's non-specially retained expert's disclosures pursuant to Fed. R. Civ. P 26(a)(2)(C).

By way of background, on February 15, 2013, DuPont first identified and designated two witnesses pursuant to Fed. R. Civ. P. 26(a)(2)(B). (Doc. 209-2).  DuPont also identified seven other experts who were DuPont employees, and so were classified as not specially retained, including the following three individuals:

> 1.    Cathie Barton, current DuPont employee.  It is anticipated that Ms. Barton may offer testimony related to air emissions and dispersions, as well as certain properties of PFOA as relevant to the measurement of PFOA in the atmosphere.

---

> Failure to follow the expert disclosure requirements may have severe consequences. Rule 37 allows a court to preclude use of that expert and that expert's information at trial, "unless the failure was substantially justified or is harmless."Fed.R.Civ.P. 37(c) (1).Rule 37 also entitles a court to enter additional or substitute sanctions or any just orders as the court sees fit. Fed. R. Civ. P. 37(b)(2)(A)(i)(vi).

Fed. R. Civ. P 26(a)(2)(C).

3.　　　Andrew Hartten, current DuPont employee.  It is anticipated that Mr. Hartten may offer testimony about environmental conditions around Washington Works, about PFOA emissions and data on and offsite around Washington Works and about fate and transport issues.

5.　　　Robert W. Rickard, Ph.D., current DuPont employee.  It is anticipated that Dr. Rickard may offer testimony about toxicology, epidemiology and related scientific testimony surrounding PFOA exposure and/or the absence of scientific evidence demonstrating causal connection between PFOA exposure and any adverse health effects, including the state of DuPont's knowledge on these subjects over time.

*Id*.

Following DuPont's February 15, 2013 disclosures, a dispute arose when Little Hocking advised DuPont that these disclosures were deficient.  (Doc. 209-1).  On March 18, 2013, the Court clarified the disclosure requirements:

As it relates to non-specially retained experts, Rule 26(a)(2) has been amended to require the disclosure of the information required by this Court in its September 8, 2010 *Continued Preliminary Pretrial Order*. Fed. R. Civ. P. 26(a)(2)(C). Although the Court, in its most recent orders, referred to "reports" of non-specially retained  experts, it has never been the intention of the Court to require of non-specially retained experts the reports required by Fed. R. Civ. P. 26(a)(2)(B) of specially retained experts. Rather, in connection with its non-specially retained experts, defendant must disclose to plaintiff "the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; . . . and a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C).  However, the Court also expects defendant to make this disclosure by the date established by the Court.

(Doc. 190).

According to Little Hocking, DuPont did not cure alleged deficiencies in its February 15, 2013 disclosures. (*Plaintiff's Motion for Sanctions Relating to DuPont's Violations of Court Orders Requiring DuPont to Provide Expert Disclosures*, Doc. 209-1). On March 26, 2013, the Court ordered, *inter alia*, DuPont "to produce, no later than April 2, 2013, the disclosures

relevant to its non-specially retained experts, consistent with the provisions of Fed. R. Civ. P. 26(a)(2)(C)." (Doc. 196).

On April 2, 2013, DuPont provided supplemental disclosures of its Rule 26(a)(2)(C) designees, including Catherine A. Barton, Ph.D., Robert Rickard, Ph.D., and Andrew Hartten (collectively, "DuPont's three experts").[2] Little Hocking advised DuPont that these disclosures

---

[2] **Catherine A. Barton, Ph.D. (DuPont employee)**

Dr. Barton is currently employed by DuPont and has been since 1988. During her employment with DuPont, she worked in the DuPont Engineering and Research Technology department as an environmental engineer and was responsible for performing air modeling, air dispersion, and assessment of air emissions for the Washington Works facility. Dr. Barton is a Registered Professional Engineer. She received her Ph.D. in Environmental Engineering from the University of Delaware, and a Master of Science in Environmental Engineering and Bachelor of Science in Civil Engineering from Virginia Polytechnic Institute and State University.

As a part of her job responsibilities, Dr. Barton used and interpreted models related to the air dispersion of chemicals and the deposition of those chemicals on land from air emissions. Additionally, Dr. Barton designed protocol and conducted air sampling to determine the identity and levels of PFOA that may be present in air surrounding the Washington Works facility.

Dr. Barton has been deposed by Plaintiff and will likely be asked to provide many of the same opinions she provided during the deposition. Dr. Barton may provide testimony and opinions related to air dispersion modeling, and air monitoring that was conducted regarding the Washington Works facility, including air sampling of PFOA at Washington Works. Dr. Barton may provide her opinion that those efforts were reasonable and accurate to a reasonable degree of scientific certainty. Additionally, Dr. Barton's testimony may also relate to her opinions regarding modeling of land deposition of PFOA from air emissions conducted at the Washington Works facility. As a part of her testimony, she may testify about generally-accepted principles governing air dispersion, deposition modeling, and air sampling. Furthermore, she may give her opinions about properties of PFOA that may be relevant to the measurement of PFOA in the atmosphere, and air modeling and dispersion as it relates to the Little Hocking Well Fields and facilities.

Dr. Barton will base her opinions on her education, training, experience, research and publications, her review of scientific literature, public information, including information generated or available from government entities, and documents made available to her through the normal course of her employment at DuPont.

**Robert W. Rickard, Ph.D. (DuPont employee)**

Dr. Rickard is currently employed by DuPont and has been since 1979. His current position is DuPont Distinguished Scientist, Health & Environmental Sciences, DuPont Safety, Health & Environment & Sustainability Excellence Center. He has held this position since January 2007. He received his Ph.D. in Toxicology from the University of Kentucky, a Master of Science in Microbiology, and a Bachelor of Science in Zoology from Clemson University. Since 1983, he has been certified as a Diplomat of the American board of Toxicology and is also a member of the Society of Toxicology. He currently serves on the Executive Committee and Board of Directors of The Hamner Institutes for Health Research, and the Board of Trustees of the International Life Sciences Institute – Health and Environmental Science Institute and is on the board of European Centre for Ecotoxicology and Toxicology of Chemicals. He is also on the Leadership Council for the National Conversation for Public Health and Chemical Exposure which is hosted by the Centers for Disease Control and Prevention (CDC) and the Agency for Toxic Substances and Disease Registry (ATSDR).

Dr. Rickard has oversight for DuPont's global scientific competency in health and environmental sciences and is responsible for DuPont's policies, standards, and global strategy for toxicology and environmental sciences.

Dr. Rickard has been deposed by Plaintiff for two days and will likely be asked to provide many of the same opinions he provided during those depositions. Dr. Rickard may testify about what DuPont knew and understood scientifically about PFOA during the relevant timeframes at issue in this action. Dr. Rickard may testify about the opinions he formed while reviewing published literature and scientific data regarding potential health and environmental effects of exposure to PFOA. Dr. Rickard may testify about DuPont's investigation into various issues related to PFOA (including its potential toxicity, human health effects from exposure, and effects on the environment and that it is his opinion that DuPont acted reasonably and appropriately and that decisions were made regarding PFOA to a reasonable degree of scientific certainty.

Dr. Rickard may also testify and provide opinions derived from historical and contemporary epidemiological, health, and toxicological studies regarding PFOA, including studies conducted by DuPont, the Science Panel, and other research and studies conducted about PFOA throughout the scientific community. Additionally, Dr. Rickard may testify about the calculation of regulatory risk assessment and the safety factors associated with such calculations. Furthermore, he may testify about exposure pathways for PFOA, exposure

were again deficient. (Doc. 209-7). Shortly thereafter, Little Hocking filed the *Motion for Sanctions*, seeking sanctions in the form of attorneys' fees and costs under Fed. R. Civ. P. 37(b)(2) and the exclusion of expert testimony under Fed. R. Civ. P. 37(c)(1) in connection with DuPont's alleged failure to comply with the Court's order and disclosure requirements. (Doc.

---

assessments of PFOA, and the pha1macokinetic properties of PFOA. In order to fully testify regarding these subjects, Dr. Rickard may testify generally about toxicology and
epidemiology and their associated concepts, such as (but not limited to) association, causation, the distinction between an association and a causation, dose-response relationships, the strength of observed associations, consistency of any observed associations across studies,
biological plausibility, and other scientifically accepted criteria to evaluate causation.

     Dr. Rickard's testimony will be based on his professional experience and background, scientific literature on PFOA, data collected related to the exposure of the Little Hocking water customers, and environmental data collected at or around DuPont's Washington Works facility and Little Hocking's Well Fields.

**Andrew Hartten (DuPont employee)**

Mr. Hartten is currently employed by DuPont and has been since 1988. He is currently Project Director in the Corporate Remediation Group and manages environmental investigation, assessment, and remediation projects at Washington Works. Mr. Hartten is a hydrogeologist and received his Bachelor of Science in Geology from the University of Maryland. Mr. Hartten first began work at Washington Wo rks in 1990 and has been involved in the environmental monitoring program at the Washington Works facility since that time. He has been involved in issues related to PFOA since approxin1ately 1991.

     As a part of Mr. Hartten's job responsibilities, he has been responsible for supervising the collection and compilation of data related to the sampling of water supplies in and around the Ohio River and Washington Works. He has also been responsible for studying the hydrogeology of the area in and around the Washington Works facility, including but not limited to the location of groundwater and groundwater flow. Additionally, he monitors wells, the discharge of water to the Ohio River and other off-site locations, and he also has knowledge of the remediation or mitigation of PFOA released into water and soil.

     Mr. Hartten has been deposed by Plaintiff for multiple days and will likely be asked to provide many of the same opinions he provided during those depositions. Mr. Hartten may provide testimony and opinions regarding the environmental conditions surrounding the Washington Works facility, including but not limited to, the science of hydrogeology and the hydrogeology of the area at and around the Washington Works facility. He may also testify regarding the alleged leaching of PFOA through the soil to the groundwater. Mr. Hartten may provide his opinion that it is not scientifically reasonable that the PFOA in the Little Hocking Well Fields arrived there via water migration from emissions of the Washington Works facility. Further, Mr. Hartten may testify that the majority of any PFOA in the Little Hocking Well Fields which might have come from the Washington Works facility would have been transmitted via air dispersion (rather than through or under the Ohio River).

     Mr. Hartten may testify and give his opinions regarding DuPont's efforts to investigate the site and identify and assess the presence and extent of PFOA in drinking water, groundwater, surface water, and environmental media at and around the Washington Works facility and the Little Hocking Well Fields. Mr. Hartten may opine that all such efforts to investigate, identify, and assess PFOA were reasonable and accurate to a reasonable degree of scientific certainty. Additionally, Mr. Hartten may testify regarding DuPont's Corporate Remediation Group's investigation and analysis of releases of PFOA through various environmental media, including surface water, groundwater, and soil, to determine the presence, extent, and movement of PFOA at or around the Washington Works facility and Little Hocking Well Fields. Mr. Hartten may provide his opinion that the migration of any such PFOA releases would not have occurred through underground water migration.

     Mr. Hartten may further testify that DuPont followed generally accepted scientific methods and practices to accurately and fully assess the hydrogeology around the Washington Works site and fully assess the leaching of chemicals through soil to a reasonable degree of scientific certainty to determine that any PFOA emissions in the Little Hocking Well Fields did not occur via underground water migration. Additionally, Mr. Hartten may testify that the Granular Activated Carbon facility is effectively removing PFOA from Little Hocking's drinking water. Furthermore, Mr. Hartten may testify that DuPont has followed the generally-accepted principles of environmental decision-making and that DuPont's efforts to investigate PFOA were reasonable and the information reported in DuPont's investigation was accurate to a reasonable degree of scientific certainty.

     Mr. Hartten will base his opinion on his education, training, experience, research, information in publically available scientific literature, governmental agencies, and other sources of publicly available information, and documents produced in this litigation by DuPont and Little Hocking.

209). Then, in Response to that Motion, Defendant filed its third version of the disclosures on May 24, 2013. (*See* Doc. 221-4).

The Magistrate Judge denied Plaintiff's motion for sanctions on December 27, 2013. (Doc. 303). The Judge explained in her Opinion that the "parties' substantive dispute boils down to the degree of detail required of the disclosures relating to non-specially retained experts." Relying on prior district court cases, she determined that disclosures pursuant to Rule 26(a)(2)(C) did not require a "precise description" or "undue detail" of the opinions of non-specially retained expert. Thus, after reviewing each April 2013 disclosure[3], the Court found the disclosures sufficient.

This Court declined to follow the cases on which the Magistrate Judge relied to determine the contours of Rule 26(a)(2)(C). (*March 11, 2015 Opinion and Order,* Doc. 441). Relying on an alternative line of cases and statutory interpretation, the Court laid out a more comprehensive rule regarding the requirements under Rule 26(a)(2)(C):

> [T]his Court finds that a summary of opinions under Rule 26(a)(2)(C) means a brief account of the main opinions of the expert, and that the opinions must state a view or judgment regarding a matter that affects the outcome of the case. A mere statement of the topics of the opinions is insufficient. Further, this Court finds that a summary of facts supporting those opinions under Rule 26(a)(2)(C) means a brief account of facts—only those on which the expert actually relied in forming his or her opinions—that states the main points derived from a larger body of information; merely stating the topic matters of facts relied upon does not suffice. Similarly, it does not suffice to reference large bodies of material as sources of facts, without stating a brief account of the main points from those large bodies of material on which the expert relies.

(Doc. 441 at p. 16-17). Pursuant to this holding, the Court found that large portions of Defendant's May 2013 disclosures were insufficient. Although it found violations of Rule 26(a)(2)(C), it also found that little guidance existed in the Circuit regarding Rule 26(a)(2)(C) prior to the Court's order. Accordingly, the Court held that Defendant's repeated failures did not

---

[3] The Magistrate Judge did not rule on the May 2013 disclosures.

merit full sanctions, and found, additionally, that Plaintiff suffered no prejudice as a result of insufficient disclosures because no trial date had been set, and so no harm or delay was irreparable.

Accordingly, the Court ordered the following to remedy the deficiencies:

> [T]his Court holds that the appropriate course is to provide Defendant one week to supplement the disclosures according to the analysis of Rule 26(a)(2)(C) set out by this Court, and the analysis of the disclosures this Court provides below. After that, Plaintiff will have seven days to file a motion, limited to five (5) pages in length: (1) challenging the sufficiency of the disclosures; and/or (2) notifying this Court whether and why it believes that based on the supplemental disclosures, it was notified of new information that requires further deposition testimony of the three employee experts, without which, Plaintiff would be prejudiced. Defendant is to respond to such a motion within one week, with a brief limited to five (5) pages in length. If this Court approves of further deposition testimony, the Defendant will be required to pay for the expenses of such depositions.

(*Id.* at p. 17-18). In the remaining portion of the Order, this Court ruled on the sufficiency of the disclosure paragraph by paragraph, indicating to Defendant, with precision, which paragraphs required supplementation, and providing examples of sufficient summaries of facts and opinions. (*Id.* at 18-20).

On March 18, 2015, Defendant filed its Third Supplemental Disclosure of Rule 26(a)(2)(C), totaling 39 pages, which included disclosures for Hartten, Barton, and Rickard. (Doc. 442). On March 25, 2015, Plaintiff filed its Motion for Discovery Relief Regarding Expert Disclosures. (Doc. 445). Defendant responded in opposition to Plaintiff's Motion on April 1, 2015. (Doc. 446).

## II.    STANDARD OF REVIEW

Under Rule 37, failure to comply with Rule 26(a) empowers a court to preclude use of that expert and that expert's information at trial, "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). "Rule 37 also entitles a court to enter additional or

substitute sanctions or any just orders as the court sees fit. Fed. R. Civ. P. 37(b)(2)(A)(i)(vi)." *Saline River Properties, LLC v. Johnson Controls, Inc.*, No. CIV.A. 10-10507, 2011 WL 6031943, at *5 (E.D. Mich. Dec. 5, 2011). Under Rule 37(c) "the sanction is mandatory unless there is a reasonable explanation of why Rule 26 was not complied with or the mistake was harmless." *Bessemer & Lake Erie R.R. Co. v. Seaway Marine Transp.,* 596 F.3d 357, 370 (6th Cir. 2010).

## III.    ANALYSIS

Plaintiff argues that each of the three expert disclosures contain deficiencies that fail to comply with this Court's March 11, 2015 Order. In addition, Plaintiff contends that Defendant adds new rebuttal opinions to the third supplemental disclosure in an apparent effort to fill in holes in DuPont's defenses. Plaintiff moves this court to impose mandatory Rule 37(a) preclusion of all opinions where factual summaries do not comply with the Order, as well as preclusion of all opinions that transform witnesses from primary to rebuttal witnesses. Plaintiff adds that prejudice to it is substantial. The Court will take Plaintiff's arguments regarding the insufficiency of the disclosure seriatim.

### A.  Objections to the Hartten Disclosure

### 1.  Whether Hartten's Disclosure Comports with Rule 26(a)(2)(C)(ii)

Plaintiff argues that portions of Hartten's Opinions (a), (c), (f), (h), and (i) fail to comply with this Court's March 11, 2015 Order clarifying disclosure requirements under Fed. R. Civ. P. 26(a)(2)(C)(ii). Accordingly, it seeks preclusion of those facts and opinions under Rule 37(c). For any portion of the Disclosure for which mandatory preclusion is not appropriate, Plaintiff asks this Court should grant it 14 hours of deposition time with Hartten to obtain expert

discovery of the unrevealed bases for his opinions, including the methodology used in developing his opinions.

### a.   Objections to subparagraphs in Opinion (a)

First, Plaintiff takes issue with select factual bases in support of Opinion (a)(1), which states:

> Mr. Hartten may opine that it is not scientifically reasonable that PFOA in the Little Hocking wellfields ("Wellfields") arrived there via water migration of discharges from Washington Works or via a groundwater or sub-river pathway. Mr. Hartten has been deposed extensively by Little Hocking's attorney's (seven days of depositions) regarding this opinion. Mr. Hartten may support this opinion with the following facts: (1) The environmental conditions surrounding Washington Works, including the hydrogeology of the area at and around Washington Works, prohibit groundwater or sub-river migration into Little Hocking's wells:

### i.   Subparagraph (a).1.viii

To begin, Plaintiff contends that subparagraph (a).1.viii flouts this Court's Order because it points to seven figures in the Memorandum of Understanding (MOU) but provides no summary of the main points derived from those tables in support of Hartten's opinion. Subparagraph (a).1.viii states:

> Additional evidence and visual representations of the data collected supporting Mr. Hartten's opinions are contained in MOU Figures 3.1 and 3.2 (multimedia sampling locations), 3.3 (background sampling), 3.4 and 3.5 (soil results) and 3.7 well samples.

DuPont responds that (a).1.viii simply is a reference to the figures and data collections that support the analysis contained within the other 30+ subparagraphs describing Mr. Hartten's Opinion (a). Thus, Defendant insists that Little Hocking extracts a few subparagraphs to which to object, while ignoring the vast majority of the document, in order to claim prejudice falsely.

As best this Court can discern, subparagraph (a).1.viii is a catch-all reference to figures, and it fails to provide a summary of facts in compliance with Rule 26(a)(2)(C)(ii). A figure can be read multiple ways, and so to have notice of the bases of Hartten's testimony, the disclosure must state a summary of facts gleaned from such figures. In contrast, in subparagraphs (a).1.ii-vii, the Defendant refers to the same Figures 3.1-3.6 and 3.8, but provides a summary of the facts gleaned from those figures, including facts showing that PFOA concentrations measures in biota from 10 to 85 miles from the site were low or non-detectable.

Thus, as a plain reading of (a).1.viii fails to provide any summary of facts to put Plaintiff on notice of potential testimony rooted in Figures 3.1-.8, and subparagraphs at (a).1.ii-vii refer to the same Figures with an adequate summary of facts, (a).1.viii is superfluous. Accordingly, pursuant to Rule 37, this Court precludes Hartten from referring to Figures 3.1-.6 and 3.8 (3.7 not referenced) except in reference to facts summarized at (a).1.ii-vii.

### ii.     Subparagraph (a).1.x

Next this Court addresses Plaintiff's objections to subparagraph (a).1.x which states:

> Multiple analyses of the on-site Washington Works capture zone have been conducted and are based on real time physical measurements. Each of these data compilations and groundwater models support Mr. Hartten's opinions as explained below.

Then, in subparagraphs (a).1.x.A-F, Defendant lists the names of six studies which have measured the capture zone near Washington Works and the Wellfield at different periods of time; those subparagraphs, however, provide no further explanation regarding what these studies show. Plaintiff contends that since these subparagraphs do nothing more than tell Plaintiff that the respective studies have identified certain capture zones, but fail to explain how each

identified capture zones supports Mr. Hartten's opinions, these subparagraphs fail to comply with this Court's Order.

Defendant responds that (a).1.x.A-F refers Plaintiff to figures within studies that identify capture zones far different than the one Plaintiff's expert depicts. Defendant urges the Court to find that DuPont supported its opinions with extensive factual cites to specific sampling, tables containing the relevant data, physical measurements, visual representations of the data, and the PFOA detected (or lack of PFOA) in particular areas around the facility.

It is true that a.1.x directs the Plaintiff only to the different capture zones identified by the six different studies. While Defendant's disclosure is not the model of clarity, read within the context of the disclosure as a whole, it is clear that Defendant refers Plaintiff to six specific models of capture zones that allegedly show contaminated water dumped into the River at Washington Works cannot enter the Wellfield through "groundwater" or "sub-river" pathways. Thus, by referring to the six specific capture zones on which Hartten will rely, Defendant discloses a sufficient summary of a sub-set of facts in support Opinion (a).

### iii.    Subparagraph (a).1.xi

Moving to Plaintiff's last objection concerning Opinion (a), Plaintiff argues that subparagraph (a).1.xi points to the lengthy MOU, and Phase I and III Data Assessment Reports, but fails to provide any summary of facts from the reports on which Hartten intends to rely, in violations of this Court's Order. Subparagraph (a).1.xi states:

> Factual information identified in the November 3, 2005 Memorandum of Understanding (MOU) between DuPont and the United States Environmental Protection Agency (EPA), and the Data Assessment Reports (Phase II and Phase III) filed pursuant to the MOU supports this opinion. The Data Assessment Report presents PFOA results and discusses data quality related to the identification of PFOA environmental releases, sources of those environmental releases from the site and the presence of PFOA in environmental releases from the site and the

presence of PFOA in environmental media at and around the site. Mr. Hartten was intimately involved in the negotiation of the Nov. 3, 2005 Memorandum of Understanding with the US EPA. In turn, in his duties for DuPont, he was responsible for the implementation of all Phase II and Phase III field investigations that were conducted to satisfy the MOU requirements. He was personally involved in the preparation and finalization of all status reports submitted to US EPA. Mr. Hartten was responsible for implementation of all of the field data collection programs conducted in Phase II and III, all of which have been available to Little Hocking, including the Ohio River water sampling events conducted in 2002 and 2011, the soil and groundwater investigation conducted on the Little Hocking well field, the 5 mile radius sampling of surface soil, groundwater, and garden vegetables, and the beef and fodder samples collected from local farms. EPA has established a public record at Docket Control Number OPPT 2004-0113 for this MOU. EPA has made available an electronic version of the OPPT 2004-0013 public docket at http://www.epa.gov/edocket. The data contained therein support Mr. Hartten's opinions.

Defendant responds that it is unreasonable for Plaintiff to complain that this singular subparagraph provides no summary of the MOU and thus provides a basis for preclusion. It explains that this subparagraph is part of a longer narrative description within the context of Opinion (a), intended to: (1) describe the documents generally; and (2) describe Mr. Hartten's involvement with the preparation of the reports and how the data was collected. Defendant adds that this subparagraph is buttressed by 12 pages of specific facts.

This Court agrees that this subparagraph (a).1.xi refers broadly to all factual information within the MOU and the Data Assessment Reports (Phase II and Phase III), and does not summarize the main points derived from these very large bodies of information in compliance with Rule 26. As Defendant explains, however, in other subparagraphs it provides 12 pages of specific facts, many of which are derived from these larger bodies of facts. Accordingly, Hartten is precluded from providing testimony in support of Opinion (a) through reference to the MOU and Phase II and III Data Assessment Reports unless his testimony is based on properly disclosed summaries of facts in other subparagraphs which are derived from those larger documents. In other words, Hartten may not refer to facts derived from the MOU and Phase II

12

and III Data Assessments simply because he states in subparagraph (a).1.xi that he will rely on "factual information identified" in them.

The only testimony which may be derived from (a).1.xi are facts disclosed in the subparagraph regarding Hartten's involvement with the implementation and negotiation of the MOU and Phase II and III. This determination is consistent with Defendant's suggestion that its purpose in adding (a).1.xi was to state nothing more than that Hartten participated in the collection of this data, and is familiar with the methodology.

### b. Opinion (c)

Plaintiff next takes issue with the alleged "facts" supporting Opinion (c):

(c) Mr. Hartten may opine that DuPont followed generally accepted scientific methods and practices to accurately and fully assess the hydrogeology around Washington Works to determine that any PFOA detected in the Wellfields was not caused by underground water migration. Mr. Hartten may support this opinion with the following facts:

> 1. All Groundwater investigations conducted at Washington Works since 1990 have followed standard practice guidelines established by US EPA. All work plans, practices and procedures for these investigations were reviewed, commented on, and approved by scientific experts at US EPA and WVDEP. The key investigations have included the 1991/1992 RCRA Verification investigation, the 1998-1999 RCRA Facility Investigation, the 2001-2001 Groundwater Investigation Steering Team study under the WVDEP Multi-Media Consent Order, and the 2008 Data Assessment-OPPT PFOA Site Related Environmental Assessment, DuPont Washington Works.

Plaintiff contends that the "facts" in support of Opinion (c) are insufficient because DuPont fails to identify which specific "generally accepted scientific methods and practices" DuPont followed in its assessment of the hydrogeology around Washington Works to determine that PFOA detected in the Wellfields was not caused by underground water migration. Defendant fails to respond to this contention.

It is true that subparagraph (c).1 fails to label the scientific methods and practices utilized in the key investigations identified in (c).1. Subparagraph (c).1 does, however, point the Plaintiff to four specific groundwater investigations, all of which Defendant alleges were reviewed, commented on, and approved by the US EPA and WVDEP. Accordingly, Hartten is restricted to depending on the allegedly approved methods and practices used in conducting these four studies--which this Court assumes are contained within the four corners of those documents--in support of Opinion (c). Hartten cannot rely on any other proof to support his opinion that DuPont followed generally accepted scientific methods and practices accurately and fully to assess the hydrogeology around Washington Works.

### c.  Opinion (f)

Plaintiff also takes issue with the first three factual bases in support of Opinion (f). Opinion (f) states that "Mr. Hartten may opine that PFOA has not leached through the soil to the groundwater to form a pathway for PFOA from Washington Works to the Wellfields, and that leachate from the Riverbank Landfill has not led to offsite migration of PFOA from Washington Works."

### i.  Subparagraph (f).1

Plaintiff argues the subparagraph (f).1 does not comply with Rule 26(a)(2)(C)(ii) because it points to the lengthy MOU and Phase II and III Data Assessment Reports but provides no summary of the facts from the reports upon which Hartten intends to rely in support of his Opinion (f).  Subparagraph (f).1 states, verbatim, the same thing as stated in subparagraph (a).1.xi. Defendant provides no response.

Unlike in Opinion (a) and its supporting factual bases, none of the other paragraphs providing factual support for Opinion (f) provides a summary of facts relating to the MOU and Phase II and III Data Assessment Reports. Thus, even though (f).1 states facts regarding Hartten's involvement with the implementation and negotiation of the MOU and Phase II and III Data Assessment Reports, such facts are meaningless because they do not support the veracity or credibility of other summaries of facts disclosed.

Therefore, because (f).1 does not provide a summary of facts derived from the MOU and Phase II and III Data Assessment reports, and no other subparagraph of Opinion (f) provides a summary of facts relating to these documents, this Court finds that (f).1 violates this Court's order. This Court clearly instructed Defendant--particularly relating to the MOU document--that reference to a large body of information does not suffice under Rule 26(a)(2)(C)(ii) as a summary of facts.

Accordingly, pursuant to Rule 37, Defendant may not rely on any facts derived from the MOU or Phase II and III Data Assessment report in support of Opinion (f). Defendant received clear instruction from the Court to avoid this type of Rule 26 violation in the March 2015 Order. This late in the litigation, with trial pending in only a few months, it would prejudice Plaintiff to provide Defendant an fourth opportunity to supplements its disclosures.

### ii.  Subparagraph (f).2

Plaintiff also challenges the sufficiency of subparagraph (f).2, which states:

Factual information provided in the Revised Groundwater Flow Model (dated January 2003), including those related to site setting, geology, hydrogeology, primary sources, model set-up, and model results as stated herein in support of Opinions 1-5. The site setting, including geology and hydrogeology was compiled through a scientifically iterative process that began in 1990 during Mr. Hartten's preparation of the Preliminary Hydrogeologic Assessment. It was during this report preparation that Mr. Hartten reviewed all geological data available for the

> Washington Works site. This included the hundreds of geotechnical soil brings drilled on the site and the soil borings and monitoring wells that were installed to support development of the production water well system.

Plaintiff contends that (f).2 merely points to the 2003 Groundwater Model sources, but provides no summary of key points derived from those voluminous sources in support of Opinion (f). Plaintiff adds that the electronic files for the 2003 Groundwater Flow Model contain 80,000 bates-stamped pages in over 1,600 files. Defendant does not respond to this argument.

This Court agrees that (f).2 fails to provide a summary of facts, but merely references a large body of information. Although Defendant refers the Plaintiff to Opinions 1-5 for further facts derived from the Groundwater Model, such a broad reference does not put the Plaintiff on notice regarding which facts derived from the Groundwater Model Hartten will use in support Opinion (f).

Thus, this Court finds that (f).2 violates this Court's order. This Court clearly instructed Defendant, particularly relating to the MOU document, that reference to an entire body of information does not suffice under Rule 26(a)(2)(C)(ii) as a summary of facts. Accordingly, pursuant to Rule 37, Defendant may not rely on any facts derived from the 2003 Groundwater Model and "Primary Data" in support of Opinion (f). This late in the litigation, with trial pending in only a few months, it would prejudice Plaintiff to provide Defendant an fourth opportunity to supplements its disclosures.

### iii.  Subparagraph (f).3

Finally, Plaintiff objects to subparagraph (f).3, which states:

> Mr. Hartten has extensive knowledge of the primary data sources used for the Revised Groundwater Flow Model. As displayed on Table I of the report, the primary data sources included key past reports that Mr. Hartten prepared himself, or was actively involved in preparing, including the 1999 RCRA Facility Investigation and the 1990 Preliminary Hydrogeologic Investigation. The actual

16

> data collected to support the Revised Groundwater Flow Model, including the Synoptic Water Level collection events in February and August 2002, were completed under Mr. Hartten's direction. Mr. Hartten has been deposed by Little Hocking's attorneys extensively over seven days of depositions on these issues.

Plaintiff argues that this subparagraph provides no summary of facts, but points merely to "Primary Data" for the model. Defendant offers no response.

This Court finds that subparagraph (f).3 provides a summary of facts, but those facts relate only to Hartten's knowledge of and involvement in the collection of data which forms the basis of the Groundwater Flow Model. As this Court has excluded reference to the Groundwater Model in support of Opinion (f), such facts provided at (f).3 largely are irrelevant. The following subparagraphs, (f).4(i)-(x), however, provide sufficient summaries of facts derived from the 1990 Preliminary Hydrogeologic Investigation; thus, Hartten may refer to facts in subparagraph (f).3 to show that he was actively involved in preparing that Investigation.

### d. Opinion (h)

Plaintiff challenges the sufficiency of all alleged facts in support of Opinion (h). Opinion (h) and its supporting subparagraphs state:

> Mr. Hartten may testify that DuPont's efforts to investigate the site and identify and assess the presence and extent of PFOA in drinking water, groundwater, surface water, and environmental media at and around Washington Works and the Wellfields followed generally accepted scientific principles and were reasonable and accurate to a reasonable degree of scientific certainty. Mr. Hartten may support this opinion with the following facts, each of which is described in detail herein and above:
>
> i.  Data identified in the November 3, 2005 [MOU] between DuPont and the United States [EPA], and the Data Assessment Phase II and Phase III Reports filed pursuant to the MOU:
>
> ii. Data information provided in the Revised Groundwater Flow Model (dated January 2003), including those related to site setting, geology, hydrogeology, primary sources, model set-up, and model results;

        iii.    Data provided in the Washington Works 1990 Preliminary Hydrogeologic Assessment dated March 1991, including those related to geology, hydrogeology, and groundwater flow; and

        iv.    DuPont's Corporate Remediation Group's investigation and analysis of releases of PFOA through various environmental media, including surface water, groundwater, and soil, to determine the presence, extent, and movement of PFOA at or around Washington Works and the Wellfields.

Plaintiff argues that the above subparagraphs fail to provide any factual bases for the opinion, i.e., fail to identify which "generally accepted scientific principles" Defendant followed to investigate the site and identify and assess the presence of PFOA. Further, Plaintiff contends that the purported facts to which Defendant cites simply are references to large data sets, with no summaries of the main points derived from those data sets, in violation of this Court's Order.

This Court agrees that the subparagraphs do not refer to "facts" but to large data sets. That said, Defendant clarifies that the content of each of these data sets is described in detail in the preceding portions of the disclosure. Such a statement is insufficient, however, to put Plaintiff on notice of the precise "generally accepted scientific principles" and reasonable practices to which Defendant refers. Considering that Defendant points to what it alleges are sufficient summaries of facts derived from those four, voluminous sources in other portions of the disclosure, but then fails to refer to them explicitly in support of Opinion (h), this Court finds that Plaintiff is permitted to depose Hartten regarding the factual bases of this opinion. The deposition questions are restricted to Hartten directing Plaintiff to other portions of the disclosure in support of this opinion. Further, Hartten is restricted to testimony in support of Opinion (h) at trial that can be traced to sufficiently disclosed summaries of facts in the preceding portions of the disclosure.

### e.  Opinion (i)

Finally, Plaintiff challenges the sufficiency of all alleged facts in support of Opinion (i). Opinion (i) and its supporting subparagraphs state:

> Mr. Hartten may give an opinion the Granular Activated Carbon facility is effectively removing PFOA from the water provided to Little Hocking's customers. Mr. Hartten may support this opinion with the following facts: (1) Sampling results of pre- and post-GAC treatment of the water pumped from the Wellfields; and (2) Published GAC results, the Memorandum of Understanding quarterly updates, and the testing results shared with Little Hocking.

Plaintiff argues that the above, purported facts cited are simply references to large data sets, with no summaries of the main points. Defendant provides no response.

This Court agrees that subparagraphs (1) and (2) do not meet the definition of summary of facts pursuant to this Court's Order. This failure does not prejudice Plaintiff, however, since both parties agreed at Summary Judgment that the GAC removes PFOA from the water to non-detectable levels. Thus, no sanctions are necessary.

### 2.  Whether Hartten's Disclosure Circumvents Scheduling Orders by Offering Rebuttal Opinions

Plaintiff contends that DuPont attempts in the March 18, 2015 disclosure to expand Hartten's testimony beyond subjects noticed in the prior disclosure, particularly with the goal to present a "super-rebuttal" case as to all scientific areas in dispute. First, Plaintiff argues that (a).1.ii-vii, which provides a summary of the facts concerning PFOA concentrations measures in biota near and around the site, have no bearing on Opinion (a). Thus, Plaintiff asks this Court to "preclude DuPont's attempt to introduce untimely rebuttal biota-related evidence through an unqualified expert." In addition, he seeks preclusion of opinion (a) in its entirety because new "supporting fact" number 4 (the 2003 Groundwater Model) was supported by information

19

regarding the model, but Hartten testified in April 2013 that he had no knowledge of that model. Plaintiff also seeks preclusion of Opinions (b), (d), (e), and (g) as inappropriate rebuttal opinions because they rely on entirely new information, and other expert's opinions not mentioned in the 2013 Hartten disclosure, to rebut the River Pathway as the predominant pathway. In the alternative, where the Court finds preclusion inappropriate, the Plaintiff seeks a deposition on all such new opinions and bases pursuant to the March 2015 Order.

Defendant respond broadly to Little Hocking's request to preclude Opinion (a), arguing that the sampling to which Little Hocking refers is not new. It insists that it was described in detail in the documents Mr. Hartten brought to the 30(b)(6) depositions and upon which Little Hocking's attorney deposed him extensively for days. (*See* Doc. 446 Exhibit 6 (fish sampling), Exhibit 7 (beef sampling), Exhibit 8 (river sampling), Exhibit 9 (geologic boring logs), Exhibit 10 (landfill cap), and Exhibit 11 (monitoring and production wells)).

As stated in this Court's March 11, 2015 Order, the purpose of Plaintiff's motion before this Court is to: (1) challenge the sufficiency of the disclosures pursuant to this Court's holding relating to Fed. R. Civ. P. 26(a)(2)(C); (2) and/or (2) notify this Court whether and why it believes that based on the supplemental disclosures, it was notified of new information that requires further deposition testimony of the three employee experts, without which, Plaintiff would be prejudiced. The purpose of this motion is not to argue for exclusion of expert opinion testimony, which is better raised in a separate motion to exclude. Thus, Plaintiff's arguments that DuPont misuses the employee expert rule because Hartten plans to testify beyond the scope of what he has learned and done through his employment--i.e. by referencing other expert opinions, or providing opinions and facts in response to litigation--provide a valid basis for a motion to exclude. Accordingly, the Court will review Plaintiff's arguments only as they relate to the

sufficiency of the supplemental disclosures pursuant to Fed. R. Civ. P. 26(a)(2)(C), and directs the Plaintiff to file a motion to exclude at a later date.

### a.  Opinion (a)

First, Plaintiff's arguments relating to (a).1.ii-vii pertain only to preclusion and not to the sufficiency of the disclosure pursuant to Rule 26(a)(2)(C). Plaintiff does not argue that the summary of the facts is insufficient, or that such information is "new" requiring further deposition. Instead, it asks this Court to "preclude DuPont's attempt to introduce untimely rebuttal biota-related evidence through an unqualified expert." This argument is better raised in a later motion to exclude this aspect of Hartten's anticipated expert testimony.

Regarding Plaintiff's objections to the supporting facts to Opinion (a) at 4 (i)-(v), which in summary fashion describe the 2003 Groundwater Model--specifically how it was created, using which methodologies, the creation of the site setting, etc.--similarly are better raised in a motion to exclude. This Court has reviewed the 2013 Hartten deposition excerpts upon which Plaintiff relies to argue that Hartten testified that he had limited knowledge of how the model was constructed. (See Doc. 445-4). These facts do not necessitate granting Plaintiffs further deposition time with Mr. Hartten to clarify how he plans to testify to facts about which he previously testified he had limited knowledge; the more logical remedy is to move this Court to exclude or limit such testimony.

### b.  Opinion (b) and (d)

Second, Plaintiff contends that Opinion (b) inappropriately relies on Dr. Barton's air modeling work and soil groundwater data to rebut Plaintiff's expert Dr. Schwartz's opinion that the River is the predominant pathway. As stated above, arguments pertaining to excluding

inappropriately raised rebuttal opinions, or placing inappropriate reliance on an a fellow expert's opinions, are better raised in a motion to exclude. Otherwise, Plaintiff does not contend such facts are new or insufficiently stated under Rule 26.

Similarly, Plaintiff states that Hartten's Opinion (d) relies on the work of Defendant's rebuttal expert Dr. Russell, as well as on river sampling data. Plaintiff insists that such opinions should be precluded because the 2013 Hartten Disclosure does not mention river sampling data and did not mention the May 2014 work of Dr. Russell.

In response, Defendant points to portions of Hartten's deposition testimony in which he discusses the river water sampling. Thus, this Court finds that the Plaintiff clearly was aware that Hartten may rely on such sampling and had an opportunity to question Hartten regarding it. Concerning the Dr. Russell opinions, which did not exist at the time of deposition, on the one hand Plaintiff's arguments are better raised in a motion to exclude because Plaintiff argues that Hartten should not be permitted to rely on other experts' opinions in support of his employee testimony; on the other hand, Plaintiff is entitled to deposition time in which to question Hartten's understanding of Dr. Russell's opinions because without a deposition, Plaintiff would be prejudiced in its ability to prepare for any such pre-trial motion. This Court grants such deposition time.

### c.  Opinion (e)

Next, Plaintiff contends that Opinion (e)--that travel time for PFOA migration through soil and groundwater, considering soil permeability, does not permit the migration of PFOA to the Wellfields in the manner described by Little Hocking--is supported by new facts of which Plaintiff did not have prior knowledge; thus, Plaintiff unfairly did not have the opportunity to question Hartten concerning them. Those new facts include capture zone analyses, time stop

particle tracking analyses, and chemical properties of PFOA, all of which, Plaintiff contends, are offered to show C8 cannot migrate to the Wellfield via the River Pathway.

Defendant does not raise any argument to show that Plaintiff had prior knowledge of these facts in support of Hartten's opinions. Accordingly, this Court will permit deposition testimony on these "new facts" in support of Hartten's Opinion (e). Any argument pertaining to the total exclusion of this opinion and/or facts supporting it should be raised at a later date in a motion to exclude.

### d. Opinion (g)

Finally, Plaintiff argues that many of the factual bases for Opinion (g)--that the landfills and ponds are not pathways for water migration of PFOA and there is no evidence that PFOA leached through the soil--are also new. Specifically, Plaintiff contends that the following new, supporting facts are used to rebut the River Pathway and sediment opinions: Ohio River water sampling events, geological boring logs, the landfill cap, the collection system, and data from monitoring wells.

In response, Defendant points to deposition excerpts in which Hartten discusses each of these bases for his opinions. Accordingly, the Plaintiff was aware that Hartten may rely on such sampling and data and had an opportunity to question Hartten regarding them.

Any argument pertaining to the total exclusion of this opinion and/or facts supporting because it constitutes improper rebuttal testimony should be raised in a motion to exclude.

### 3.  Conclusion

In conclusion, at trial, Hartten will be barred from referring to certain documents in support of his opinions, or constrained in his ability to refer to certain sources in support of his opinions, in accordance with this Court's above determinations, because certain portions of his disclosure violate Rule 26.

Further, Plaintiff is permitted to depose Mr. Hartten for a total of five (5) hours, but only regarding the following subject areas:

1.  Plaintiff may ask Mr. Hartten to point to other sufficiently disclosed facts in his disclosure in support of his Opinion (h).

2.  Plaintiff may ask Mr. Hartten questions regarding his understanding of Dr. Russell's opinions in support of Mr. Hartten's Opinion (d).

3.  Plaintiff may ask Mr. Hartten questions regarding the new facts disclosed in support of his Opinion (e), specifically: capture zone analyses, time stop particle tracking analyses, and chemical properties of PFOA.

### B. Dr. Barton's Disclosure

Plaintiff contends that Opinions (b) and (c) in the Barton Disclosure are new opinions with 3 pages of new factual bases, and requests a 7 hour deposition with her.

By way of background, Barton's Opinion (a) and its supporting facts are nearly identical in substance and form to the May 2013 disclosure. In the Court's March 2015 Order, however, this Court found that the closing paragraph of the Barton disclosure--"Dr. Barton may opine on the properties of PFOA and that may be relevant to the measurement of PFOA in the atmosphere, and air modeling and dispersion as it relates to Little Hocking's Wellfields and facilities"--contained no admissible opinions because it contained no view or judgment. Further,

it contained no supporting facts. Accordingly, in the revised disclosure, Defendant created two new opinions: (1) Opinion (b) "that PFOA, when released to the atmosphere, is primarily associated with particles, as opposed to vapor. The vapor/particle portioning of a chemical is relevant to its measurement in air and for modeling its deposition"; and (2) Opinion (c) that "the wet and dry deposition of PFOA was an important mechanism for transporting PFOA in air, emitted from Washington Works, to the earth in the vicinity of Little Hocking and its Wellfields." Further, the Defendant provided a number of bases for factual support for each opinion in the new disclosure.

Plaintiff takes issue with all of the facts in support of Opinions (b) and (c), including references to sampling methods, mathematical formulas, and area wind patterns. Further, Plaintiff takes issue with two documents upon which Plaintiff learned for the first time Barton intends to rely for factual support of Opinions (b) and (c): (1) in support of Opinion (b), an EPA modeling document not produced in discovery, which this Court notes is titled "AERMOD Deposition Algorithms -- Science Document (Revised Draft)"; and (2) in support of Opinion (c), the Corporate Remediation Group's Data Assessment Du Pont Washington Works, October 2, 2008. Thus, Plaintiff argues that without a deposition it would be forced to confront Dr. Barton's opinions and these new facts for the first time at trial, and thus would be deprived of the opportunity to conduct *Daubert* discovery.

Defendant responds that the Plaintiff erroneously claims that the disclosure provides new opinions or "new factual bases," because nearly all of the information provided in the amended disclosure was discussed in Dr. Barton's November 1, 2012 deposition. Specifically, Defendant points to deposition testimony, and Dr. Barton's article, that allegedly support her Opinions (b) and (c). (*See* Doc. 446-2 and 3).

Combing through the deposition testimony, this Court finds that regarding Opinion (b) and the first factual basis in support of it, such information is not new because it merely summarizes findings from Dr. Barton's article, "Characterizing Perflourooctanoate in Ambient Air near the Fence Line of a Manufacturing Facility: Comparing Modeled and Monitored Values." The deposition excerpts indicate that Plaintiff's counsel was familiar with the article and had an extensive opportunity to question Dr. Barton regarding the content of it.

This Court finds differently, however, regarding Plaintiff's request to depose Dr. Barton to discuss two specific sources-- (1) the "AERMOD Deposition Algorithms -- Science Document (Revised Draft)" in support of Opinion (b); and (2) the Corporate Remediation Group's Data Assessment DuPont Washington Works, October 2, 2008, in support of Opinion (c). In combing through the deposition testimony, this Court finds that Plaintiff was made aware of the AERMOD document during the deposition, (See Doc.446-2 at 6), but there is no indication that the Plaintiff was made aware of this document prior to the deposition or understood the importance of it due to the deficiency of the disclosure at the time; Plaintiff's ignorance is evidenced by Plaintiff's failure to question Barton regarding its content. Further, reading through the deposition testimony provided, this Court was not able to locate any reference to the Corporate Remediation Group's Data Assessment.

Accordingly, these sources are "new," and Plaintiff is permitted to depose Dr. Barton for 4 hours only as to her dependence on these two sources in support of Opinions (b) and (c), respectively.

**B. Dr. Rickard's Disclosure**

Regarding Dr. Rickard's disclosure, Plaintiff argues that the 9 pages of new facts in support of his opinions demonstrate that his opinions are: (1) irrelevant after the Court's rulings

on the Dr. Kramer Motion to Exclude and on human health endangerment; (2) inappropriately invade the province of the fact finder; and (3) inappropriately attempt to introduce environmental threat rebuttal testimony through a primary expert. Thus, Plaintiff beseeches this Court either to preclude his disclosure or to permit it to file a motion to exclude.

Plaintiff's argument fails to challenge the sufficiency of Dr. Rickard's disclosure pursuant to Rule 26. As stated *supra* concerning the other disclosures, Plaintiff is instructed to file separately any motion seeking to preclude some or all of any of Defendant's experts' opinions, including Dr. Rickard's.

## IV.    CONCLUSION

Based on the foregoing, Plaintiff's motion is **GRANTED** in part and **DENIED** in part. At trial, Hartten will be barred from referring to certain documents in support of his opinions, or constrained in his ability to refer to certain sources in support of his opinions, in accordance with this Court's above determinations, because certain portions of his disclosure violate Rule 26.

Further, Plaintiff is permitted to depose Mr. Hartten for a total of five (5) hours, but only regarding the following subject areas:

1. Plaintiff may ask Mr. Hartten to point to other sufficiently disclosed facts in his disclosure in support of his Opinion (h).

2. Plaintiff may ask Mr. Hartten questions regarding his understanding of Dr. Russell's opinions in support of Mr. Hartten's Opinion (d).

3. Plaintiff may ask Mr. Hartten questions regarding the new facts disclosed in support of his Opinion (e), specifically: capture zone analyses, time stop particle tracking analyses, and chemical properties of PFOA.

In addition, Plaintiff is permitted to depose Dr. Barton for 4 hours, but only as to her dependence on the AERMOD document in support of her Opinion (b), and the Corporate Remediation Group's Data Assessment DuPont Washington Works, October 2, 2008, in support of her Opinion (c).

Both depositions are to take place within two weeks of this Order. Within two weeks of both depositions, Plaintiffs are to file any motions to exclude any expert testimony in this case.

Finally, this Court orders Defendant to pay Plaintiff costs related to filing and defending this motion. Plaintiff shall file within a week a statement of costs. Similarly, the Defendant shall bear all costs related to the depositions of Hartten and Barton.

**IT IS SO ORDERED.**


                                        **___/s/ Algenon L. Marbley_____**
                                         **ALGENON L. MARBLEY**
                                         **UNITED STATES DISTRICT JUDGE**

**DATED: October 30, 2015**